**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                           :
In re:                                     :    Chapter 11
                                           :
LANDAUER HEALTHCARE HOLDINGS,              :    Case No. 13-12098 (CSS)
INC., *et al.*,[1]                         :
                                           :    (Jointly Administered)
                        Debtors.           :
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## JOINT PLAN OF REORGANIZATION OF
## LANDAUER HEALTHCARE HOLDINGS, INC. AND ITS DEBTOR
## AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

K&L GATES LLP
John A. Bicks
599 Lexington Avenue
New York, New York  10022-6030
Telephone:  (212) 536-3900
Facsimile:  (212) 536-3901

and

Charles A. Dale III
Mackenzie L. Shea
One Lincoln Street
Boston, Massachusetts 02111
Telephone:  (617) 261-3100
Facsimile:  (617) 261-3175

*Counsel to the Debtors and Debtors-in-Possession*

Dated: October 10, 2013

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Michael R. Nestor (No. 3526)
Matthew B. Lunn (No. 4119)
Justin H. Rucki (No. 5304)
Rodney Square
1000 North King Street
Wilmington, Delaware  19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are Landauer Healthcare Holdings, Inc. (9115), Landauer-Metropolitan, Inc. (9291), Miller Medical & Respiratory, Inc. (3261), C.O.P.D. Services, Inc. (0336), American Homecare Supply New York, LLC (7937), American Homecare Supply Mid-Atlantic LLC (0026), Denmark's, LLC (4588); and, Genox Homecare, LLC (7361).  The Debtors' corporate headquarters and the mailing address for each Debtor is One Bradford Road, Mount Vernon, NY 10553.

## INTRODUCTION

Landauer Healthcare Holdings, Inc. ("*LHH*") and its debtor affiliates, including Landauer-Metropolitan, Inc. ("*LMI*") as debtors and debtors in possession (each, a "*Debtor*" and, collectively, the "*Debtors*"), propose this joint plan of reorganization (the "*Plan*")[2] for the resolution of the Claims against and Interests in each of the Debtors pursuant to chapter 11 of the Bankruptcy Code.  This Plan constitutes a separate chapter 11 plan of reorganization for each Debtor and, unless otherwise explained herein, the classifications and treatment of Claims and Interests apply to each individual Debtor.  Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information and projections of future operations, as well as a summary and description of this Plan.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

A.    *Defined Terms*

As used in this Plan, capitalized terms have the meanings ascribed to them below.

1.    *"Administrative Claim"* means any Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises) and (b) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of the Judicial Code.

2.    *"Administrative Claims Bar Date"* means the date by which all requests for payment of Administrative Claims (other than Claims pursuant to section 503(b)(9) of the Bankruptcy Code) must be Filed and served on the Reorganized Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order, which date shall be 20 days after entry of the Confirmation Order.

3.    *"Affiliate"* has the meaning set forth in section 101(2) of the Bankruptcy Code.

4.    *"Allowed"* means with respect to any Claim (including any Administrative Claim) or portion thereof: (a) a Claim that is listed on the Debtors' Schedules, as such Schedule may be amended from time to time in accordance with Bankruptcy Rule 1009 prior to the closing of the Chapter 11 Cases, as neither disputed, contingent nor unliquidated and for which no contrary Proof of Claim has been filed and as to which no objection to allowance thereof, or action to reclassify, subordinate or otherwise limit recovery with respect thereto, shall have been

---

[2]    Capitalized terms used in the Plan and not otherwise defined shall have the meanings ascribed to such terms in Article I.A.

interposed within such period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or Final Order of the Bankruptcy Court; (b) a Claim that is not a Disputed Claim or has been allowed by a Final Order; (c) a Claim that is allowed (i) pursuant to the terms of the Plan or (ii) in any stipulation that is approved by the Bankruptcy Court; and(d) a Claim as to which a Proof of Claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Deadline or action to reclassify, subordinate or otherwise limit recovery with respect thereto has been interposed within such time period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order.  Except for any Claim that is expressly Allowed herein, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed and for which no Proof of Claim has been Filed is not considered Allowed and shall be deemed expunged upon entry of the Confirmation Order.

5.      ***"Assumed Executory Contract and Unexpired Lease List"*** means the list (as may be amended prior to the Confirmation Hearing), as determined by the Debtors, subject to the Secured Lender's consent, of Executory Contracts and Unexpired Leases (including any amendments or modifications thereto) that will be assumed by the Reorganized Debtors pursuant to this Plan and filed prior to the Bankruptcy Court's hearing to consider approval of the Disclosure Statement.

6.      ***"Avoidance Actions"*** means any and all Causes of Action to avoid or recover a transfer of property, or avoid an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code and any other applicable non-bankruptcy law, whether or not litigation has been commenced with respect to such Causes of Action as of the Effective Date.

7.      ***"Bankruptcy Code"*** means chapter 11 of title 11 of the United States Code.

8.      ***"Bankruptcy Court"*** means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of the reference under 28 U.S.C.§ 157, the United States District Court for the District of Delaware.

9.      ***"Bankruptcy Rules"*** means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local and chambers rules of the Bankruptcy Court.

10.      ***"Business Day"*** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

11.      ***"Cash"*** means cash and cash equivalents, including, but not limited to, bank deposits, wire funds, checks and legal tender of the United States of America or equivalents thereof.

12.      ***"Cash Collateral Order"*** means that Final Order (I) Authorizing Debtors to Use Cash Collateral and (II) Granting Adequate Protection [Docket No. 140], as extended, amended or modified.

13.    ***"Cash Collateral Budget"*** means that approved budget attached to the Cash Collateral Order, as such budget may be amended from time to time.

14.    ***"Causes of Action"*** means any action, claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  Causes of Action also include: (a) any right of setoff, counterclaim or recoupment and any claim for breaches of duties imposed by law or in equity; (b) the Avoidance Actions; (c) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (d) any state law fraudulent transfer claim.

15.    ***"Chapter 11 Cases"*** means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court under case number 13-12098 (CSS).

16.    ***"Claim"*** means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor.

17.    ***"Claims Bar Date"*** means the date or dates to be established by the Bankruptcy Court in the Claims Bar Date Order by which Proofs of Claim must be Filed.

18.    ***"Claims Bar Date Order"*** means the Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice, dated October 4, 2013 [Docket No. 230].

19.    ***Claims Objection Deadline"*** means the later of (a) 180 days after the Effective Date or (b) such other period of limitation as may be consented to by the Reorganized Debtor and specifically fixed by an order of the Bankruptcy Court for objecting to Claims; provided, however, that the Reorganized Debtors' consent shall not be required if the GUC Trust has elected to keep the Chapter 11 Cases open as set forth in Article II.

20.    ***"Claims Register"*** means the official register of Claims maintained by the Notice, Claims and Balloting Agent.

21.    ***"Clairvest"*** means, individually and collectively, Clairvest Equity Partners Limited Partnership, Clairvest Group, Inc. and Clairvest Acquisition LLC and each such entity's predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, former or current directors and officers, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accounts, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, each in its respective capacity as such; provided, however, that Clairvest shall not include the Secured Lender or its predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or

funds, former or current directors and officers, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accounts, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, each in its respective capacity as such.

22.      *"Class"* means a class of Claims or Interests as set forth in Article III pursuant to section 1122(a) of the Bankruptcy Code.

23.       *"Confirmation"* means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

24.      *"Confirmation Date"* means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

25.      *"Confirmation Hearing"* means the confirmation hearing held by the Bankruptcy Court pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

26.      *"Confirmation Order"* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

27.      *"Consummation"* means the occurrence of the Effective Date.

28.      *"Convenience Claim"* means any General Unsecured Claim (i) in the amount of $10,000 or less, or (ii) the holder of which has affirmatively elected to reduce such claim to the amount of $10,000 and have it treated as a Class 5 Claim.

29.      *"Creditors' Committee"* means the statutory committee of unsecured creditors appointed on August 26, 2013 by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as may be reconstituted from time to time.

30.      *"Cure Claim"* means a Claim based upon a Debtor's default under an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor pursuant to section 365 of the Bankruptcy Code.

31.      *"D&O Policy"* means any insurance policy issued with respect to acts, omissions, obligations, and liability of the Debtors' former or present officers and directors, including, without limitation, that certain ACE EXPRESS Private Company Management Indemnity Package (Policy No. G25017109 004).

32.      *"Debtor"* means one or more of the Debtors, as debtors and debtors in possession, each in its respective individual capacity as a debtor and debtor in possession in the Chapter 11 Cases.

33.     *"Debtors"* means, collectively: Landauer Healthcare Holdings, Inc., Landauer-Metropolitan, Inc., Miller Medical & Respiratory, Inc., C.O.P.D. Services, Inc., American Homecare Supply New York, LLC, American Homecare Supply Mid-Atlantic LLC, Denmark's, LLC and Genox Homecare, LLC.

34.     *"Disbursing Agent"* means the Reorganized Debtors or the Entity or Entities selected by the Debtors or Reorganized Debtors, as applicable, to make or facilitate distributions contemplated under the Plan other than with respect to Allowed Class 5 Convenience Class Claims and Allowed Class 6 General Unsecured Claims.

35.     *"Disclosure Statement"* means the Disclosure Statement for the Joint Plan of Reorganization of Landauer Healthcare Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, dated October [__], 2013, as amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, and that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules and any other applicable law.

36.     *"Disputed"* means, any Claim that is (a) listed in the Schedules as disputed, contingent or unliquidated and for which a Proof of Claim has not been timely filed, (b) disputed under the Plan, (c) subject, or potentially subject, to a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, (d) improperly asserted, by the untimely or otherwise improper filing of a Proof of Claim as required by order of the Bankruptcy Court , (e) objected to in whole or in part on or before the Claim Objection Deadline, (f) held by a party that is adverse to the Debtors in any litigation or contested matter pending at the time of the Distribution Date and as to which no Final Order resolving such litigation or contested matter has been entered, or (g) disallowed pursuant to section 502(d) of the Bankruptcy Code.  A Claim that is Disputed as to its amount shall not be Allowed in any amount for purposes of distribution until it is no longer a Disputed Claim.

37.     *"Distribution Date"* means, with respect to a Claim that is Allowed as of the Effective Date, the date that is as soon as practicable after the Effective Date.

38.     *"Distribution Record Date"* means the date that is the Confirmation Date.

39.     *"Effective Date"* means the date selected by the Debtors and the Secured Lender that is a Business Day after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date have been met or waived pursuant to Article IX.B and Article IX.C and (b) no stay of the Confirmation Order is in effect.

40.     *"Entity"* means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

41.     *"Estate"* means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

42.     ***"Exculpated Claim"*** means any Claim related to any act or omission derived from, based upon, related to or arising from (a) the Chapter 11 Cases, (b) formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement, the Plan, the Plan Supplement or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, or the Plan Supplement and (c) the filing of the Chapter 11 Cases, (d) any post-petition act taken or omitted to be taken in connection with the Chapter 11 Cases or the restructuring of the Debtors (e) the pursuit of Consummation and (f) the administration and implementation of the Plan, including (i) the issuance of the Secured Note; (ii) the issuance of the New Common Stock, and (iii) the distribution of property or any other consideration under the Plan or any other agreement.

43.     ***"Exculpated Party"*** means each of: (a) the Debtors; (b) the Secured Lender; (c) the Pre-Petition Lenders; (d) the Pre-Petition Agent; (e) the members of the Creditors' Committee in their respective capacities as such; and (f) with respect to the entities in clauses (a) through (e), such entity's predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, current directors, officers, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accounts, investment bankers, consultants, representatives, management companies, fund advisors and other Professionals solely in their respective capacities as such.

44.     ***"Executory Contract"*** means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

45.     ***"Existing Benefits Agreements"*** means the employment, health, vision, dental, retirement and 401(k) related plans, and other similar or related agreements or arrangements in existence as of the Petition Date.

46.     ***"Federal Judgment Rate"*** means the federal judgment rate of interest in effect as of the Petition Date.

47.     ***"Fee Claim"*** means (i) any accrued, contingent and/or unpaid fees and expenses for legal, financial advisory, accounting and other services and reimbursement of expenses that are awarded and allowable under sections 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code or that are awardable and allowable under section 503 of the Bankruptcy Code all (a) to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been Filed for any such amount), (b) after applying any retainer that has been provided to such Professional and (c) to the extent incurred prior to the Effective Date and (ii) any outstanding expenses of any member of the Committee as of the Effective Date. To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses or a Committee member's expenses, then those reduced or denied amounts shall no longer constitute a Fee Claim.

48.     ***"File" or "Filed"*** means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

49.     ***"Final Order"*** means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which

01:14215373.1

has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

50. *"General Unsecured Claim"* means any Claim that (i) is neither Secured nor entitled to priority under the Bankruptcy Code or an order of the Bankruptcy Court and (ii) is not an Administrative Claim, a Fee Claim, a Priority Tax Claim, a Priority Non-Tax Claim, an Other Secured Claim, a Subordinated Secured Claim, a Pre-Petition Credit Facility Claim, a Convenience Class Claim, an Intercompany Claim, an Intercompany Interest, a Subordinated Claim or an Equity Interest.

51. *"Governmental Claim"* means any Claim filed by a Governmental Unit, as such term is defined in section 101 (27) of the Bankruptcy Code.

52. *"Governmental Unit*" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

53. *"GUC Disbursing Agent"* means the Person or Entity selected by the GUC Trust to make or facilitate distributions contemplated under the Plan with respect to Allowed Class 5 Convenience Class Claims and Allowed Class 6 General Unsecured Claims.

54. *"GUC Funds Carveout"* has the meaning ascribed to such term in the Settlement Agreement.

55. *"GUC Trust"* means that trust formed pursuant to the Settlement Agreement, as approved by Order of the Bankruptcy Court dated [October 22, 2013].

56. *"GUC Trust Assets"* means the (a) GUC Trust Payment; (b) the GUC Trust Causes of Action and (c) 100% of all net proceeds related to any claims that are covered by Insurance Policies, and all of the proceeds of the foregoing, which assets are held in trust for the benefit of holders of Allowed Convenience Class Claims and General Unsecured Claims and to be distributed in accordance with the Settlement Agreement and the provisions of Article III of this Plan.

57. *"GUC Trust Causes of Action*" means Claims and Causes of Action that are not expressly released under the Plan and are against any Person that is not a vendor, supplier, lessor, employee, contract counterparty or other Person with whom any of the Reorganized Debtors are doing business with on and after the Effective Date, including Claims or Causes of Action related to (a) accounts receivable; (b) warranties, or (c) breach of contract claims.

58. *"GUC Trust Payment"* means those certain payments required under the Settlement Agreement and the Cash Collateral Order, specifically the aggregate of, (a) the GUC

-7-

Funds Carveout, (b) $100,000 to be used by the GUC Trust as "seed funding" for the prosecution of the GUC Trust Causes of Action; provided, however the first $50,000 of net recoveries from the GUC Trust Causes of Action shall be repaid to the Secured Lender, and (c) 100% of all net proceeds related to any claims that are covered by Insurance Policies.

59.    *"Impaired"* means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

60.    *"Insurance Policies"* means all insurance policies maintained by the Debtors as of the Petition Date, including, without limitation, the D&O Policy, any general liability policies, and any errors and omissions policies.

61.    *"Intercompany Claim"* means any Claim held by a Debtor against another Debtor.

62.    *"Intercompany Interest"* means an Interest in a Debtor held by another Debtor.

63.    *"Interests"* means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized or outstanding shares of capital stock of the Debtors together with any warrants, options or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto.

64.    *"Interim Compensation Order"* means the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members [Docket No. 125].

65.    *"Judicial Code"* means title 28 of the United States Code, 28 U.S.C. §§ 1-4001.

66.    *"Lien"* means a lien as defined in section 101(37) of the Bankruptcy Code.

67.    *"New Boards"* mean, collectively, the board of directors, board of managers or equivalent governing body of each Reorganized Debtor.

68.    *"New By-Laws"* means the form of the by-laws or limited liability company agreement, as applicable, of each of the Reorganized Debtors, which form shall be included in the Plan Supplement, and shall be acceptable to the Secured Lender.

69.    *"New Certificates of Incorporation"* means the form of the certificates of incorporation or certificates of formation of each of the Reorganized Debtors, which form shall be included in the Plan Supplement, and shall be acceptable to the Secured Lender.

70.    *"New Common Stock"* means the Interests in the Reorganized Debtors to be issued pursuant to the Plan on the Effective Date.

71.    *"Notice, Claims and Balloting Agent"* means Epiq Bankruptcy Solutions, LLC.

72.     *"Ordinary Course Professional Order"* means the Order Authorizing the Debtors to Retain, Employ and Compensate Certain Professionals Utilized in the Ordinary Course of Business [Docket No. 142].

73.     *"Other Secured Claim"* means any Secured Claim that is not a Pre-Petition Credit Facility Claim or a Subordinated Secured Claim, including without limitation, any Secured Claims asserted against any of the Debtors by Cannon Financial Services.

74.     *"Person"* means a person as such term as defined in section 101(41) of the Bankruptcy Code.

75.     *"Petition Date"* means August 16, 2013, the date on which each of the Debtors commenced the Chapter 11 Cases.

76.     *"Plan"* means this Joint Plan of Reorganization of Landauer Healthcare Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, including the Plan Supplement (as modified, amended or supplemented from time to time), which is incorporated herein by reference.

77.     *"Plan Supplement"* means the compilation of documents and forms of documents, schedules and exhibits to the Plan to be Filed by the Debtors in form and substance acceptable to the Secured Lender and reasonably acceptable to the Committee no later than seven (7) days before the Confirmation Hearing, and additional documents Filed before the Effective Date as supplements or amendments to the Plan Supplement, including the following: (a) the New By-Laws; (b) the New Certificates of Incorporation; (c) the Assumed Executory Contract and Unexpired Lease List; (d) the identification of any Disbursing Agent other than the Reorganized Debtors and the identification of the GUC Disbursing Agent; (e) the identity of the members of the New Boards as selected by the Secured Lender, (f) the identification of the designee of the Secured Lender, if any, to receive the New Common Stock, and (e) a written commitment from the Secured Lender or its designee, in a form and substance reasonably acceptable to the Debtors, to provide additional debt or equity capital upon such terms and in such amounts as are reasonably necessary to satisfy the future working capital needs of the Reorganized Debtors.  Any reference to the Plan Supplement in this Plan shall include each of the documents identified above as (a) through (e).  Except to the extent otherwise provided in this Plan, the Debtors shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date with the consent of the Secured Lender and the Committee.

78.     *"Pre-Petition Credit Facility"* means that certain Credit Agreement, dated February 9, 2011, and related loan documents, as amended or modified, entered into by and among the Debtors, the Pre-Petition Lenders and the Pre-Petition Agent for (i) a term loan of $35 million with a maturity date of February 9, 2016; (ii) a revolving line of credit in the maximum amount of $10 million with a maturity date of February 9, 2016 and (iii) certain other loans in the amount of $5 million for acquisition and capital expenditure.

79.     *"Pre-Petition Lenders"* means TD Securities (USA) LLC and RBS Citizens N.A. as joint lead arrangers and those certain other lenders party to the Pre-Petition Credit Facility.

80.    ***"Pre-Petition Agent"*** means TD Bank, N.A., as administrative agent, under the Pre-Petition Credit Facility.

81.    ***"Pre-Petition Credit Facility Claim"*** means the claim of the Pre-Petition Lenders and the Pre-Petition Agent under the Pre-Petition Credit Facility, which claim, and all rights, title and interests related thereto, were acquired by the Secured Lender on September 23, 2013.

82.    ***"Priority Non-Tax Claims"*** means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

83.    ***"Priority Tax Claim"*** means any Claim of the kind specified in section 507(a)(8) of the Bankruptcy Code.

84.    ***"Privileges"*** means all attorney-client privileges, work product protections and other immunities or protections from disclosure held by the Debtors.

85.    ***"Professional"*** means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331 and 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

86.    ***"Proof of Claim"*** means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

87.    ***"Pro Rata"*** means the proportion that (a) an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in that Class or (b) Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

88.    ***"Reinstated"*** means, with respect to Claims and Interests, the treatment provided for in section 1124 of the Bankruptcy Code.

89.    ***"Rejection Claim"*** means a Claim arising from the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

90.    ***"Released Party"*** means the Secured Lender and such entity's successors and assigns, subsidiaries, Affiliates, managed accounts or funds, current directors and officers, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accounts, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, each in its respective capacity as such.

91.    ***"Retained Causes of Action"*** means any Cause of Action that is not expressly released under the Plan and not a GUC Trust Cause of Action.

92.   ***"Reorganized Debtors"*** means the Debtors, or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

93.   ***"Reorganized LMI"*** means LMI on or after the Effective Date.

94.   ***"Schedules"*** means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as such schedules may be amended, modified or supplemented from time to time.

95.   ***"Secured"*** means when referring to a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed as such pursuant to the Plan.

96.   ***"Secured Lender"*** means Herbard Ltd. and shall include any assignee.

97.   ***"Secured Note"*** means the secured note in form and content acceptable to the Secured Lender in the amount of $10,000,000.00 to be issued by Reorganized LMI to the Secured Lender on the Effective Date.

98.   ***"Secured Note Loan and Security Agreement"*** means the loan and security agreement, dated as of the Effective Date, in form and content acceptable to the Secured Lender, which will govern the Secured Note.

99.   ***"Securities Act"*** means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as amended, together with the rules and regulations promulgated thereunder.

100.   ***"Securities Exchange Act"*** means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a-78nn, as amended.

101.   ***"Security"*** means a security as defined in section 2(a)(l) of the Securities Act.

102.   ***"Settlement Agreement"*** means that Settlement Agreement, by and between, the Creditors' Committee, LMI DME Holdings LLC and Quadrant Management, Inc., and/or its assigns, dated September 25, 2013 and approved by Bankruptcy Court on October [___], 2013 [Docket No. __].

103.   ***"Subordinated Secured Claim"*** means any Secured Claim, that is not a Pre-Petition Credit Facility Claim, Other Secured Claim, or Subordinated Claim and is based on: (a) money alleged or determined to have been loaned to  or for the benefit of any of the Debtors on a basis contractually subordinated to the Pre-Petition Credit Facility Claim or (b) equipment related financing to the extent that the lien securing the applicable Debtors' repayment obligation is subordinated to liens securing the Pre-Petition Credit Facility Claim.

104.    *"Subordinated Claim"* means any Claim that is not a Pre-Petition Credit Facility Claim and is (a) subordinated to General Unsecured Claims pursuant to order of the Bankruptcy Court or other court of competent jurisdiction or (b) disallowed by the Bankruptcy Court pursuant to Section 502(d) of the Bankruptcy Code.

105.    *"Unexpired Lease"* means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

106.    *"Unimpaired"* means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

107.    *"U.S. Trustee"* means the United States Trustee for the District of Delaware.

108.    *"Voting Deadline"* means 4:00p.m. (prevailing Eastern Time) on [_____], 2013.

B.    *Rules of Interpretation*

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule or exhibit, as it may thereafter be amended, modified or supplemented; (4) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; and (13) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further Bankruptcy Court order.

C.      *Computation of Time*

          Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

D.      *Governing Law*

          Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, however, that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in Delaware shall be governed by the laws of the state or province of incorporation of the applicable Debtor or Reorganized Debtor, as applicable.

E.      *Reference to Monetary Figures*

          All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.      *Reference to the Debtors or the Reorganized Debtors*

          Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

**ARTICLE II
ADMINISTRATIVE CLAIMS,
AND PRIORITY TAX CLAIMS**

          In accordance with section 1123(a)(l) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.      *Administrative Claims*

     1.      Administrative Claims

          Except with respect to Administrative Claims that are Fee Claims and except to the extent that a holder of an Allowed Administrative Claim and the applicable Debtor(s) (with the consent of the Secured Lender) agree to less favorable treatment with respect to such holder, each holder of an Allowed Administrative Claim shall be paid in full in Cash.  Such Claims shall be paid on the earlier of (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date and (b) on or as soon as

-13-

reasonably practicable after the date such Administrative Claim is Allowed; provided, however, that Allowed Administrative Claims that arise post-petition in the ordinary course of the Debtors' business shall, subject to the Cash Collateral Budget, be paid in full in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order.

       2.      Professional Compensation

         (a)     Fee Claims

Anyone Person or Entity asserting a Fee Claim for services rendered before the Effective Date must File and serve on the Debtors and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, the Interim Compensation Order or any other applicable order of the Bankruptcy Court, an application for final allowance of such Fee Claim no later than 30 days after the Effective Date; provided, however that any Professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professional Order may continue to receive such compensation or reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professional Order. Objections to any Fee Claim must be Filed and served on the Reorganized Debtors and the requesting party no later than 60 days after the Effective Date. To the extent necessary, the Plan and the Confirmation Order shall amend and supersede any previously entered order regarding the payment of Fee Claims. Upon entry of a Final Order approving any such application for such Fee Claim, the Reorganized Debtors shall promptly pay any unpaid portion of such Allowed Fee Claim.

       3.      Administrative Claim Bar Date

Except as otherwise provided in this Article II.A.3, requests for payment of Administrative Claims (other than claims pursuant to section 503(b)(9) of the Bankruptcy Code) must be Filed on or before the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date.

*B.*     *Priority Tax Claims*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, on the Distribution Date, at the option of the Debtors (with the consent of the Secured Lender), one of the following treatments: (i) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus interest at the rate determined under applicable non-bankruptcy law and to the extent provided for by section 511 of the Bankruptcy Code; (2) Cash in an aggregate amount of

such Allowed Priority Tax Claim payable in installment payments over a period of time not to exceed five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, plus interest at the rate determined under applicable non-bankruptcy law and to the extent provided for by section 511 of the Bankruptcy Code; or (3) such other treatment as may be agreed upon by such holder and the Debtors with the consent of the Secured Lender or otherwise determined upon an order of the Bankruptcy Court.

C.    *Statutory Fees*

On the Distribution Date, the Debtors shall pay, in full in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation. On and after the Effective Date, the Reorganized Debtors shall be responsible for all applicable U.S. Trustee fees for each of the Chapter 11 Cases until the entry of a final decree in such Chapter 11 Case or until such Chapter 11 Case is closed or dismissed, provided, however, that the Reorganized Debtors shall provide the GUC Trust sixty (60) days written notice of their intent to seek to close or dismiss any of the Chapter 11 Cases and (a) if the GUC Trust requests that the Reorganized Debtors keep any such Chapter 11 Cases open beyond the expiration of the notice period or (b) the reason to keep any such Chapter 11 Cases open beyond such 60 days notice period is related to Convenience Class Claims, General Unsecured Claims or GUC Trust Causes of Action, the GUC Trust shall be solely responsible for any such fees incurred from and after the end of the notice period through entry of a final decree or dismissal of the Chapter 11 Cases.

# ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims and Interests*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests. All Claims and Interests, except for Administrative Claims and Priority Tax Claims, are classified in the Classes set forth in this Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released or otherwise satisfied before the Effective Date.

B.    *Summary of Classification*

The Plan constitutes a separate chapter 11 plan of reorganization for each Debtor and, unless otherwise explained herein, the classifications set forth in Classes 1 to 7 shall be deemed to apply to each Debtor, as applicable.

01:14215373.1

The following chart summarizes the classification of Claims and Interests pursuant to the Plan:

| Class | Claim/Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Subordinated Secured Claims | Impaired | Entitled to Vote |
| 4 | Pre-Petition Credit Facility Claim | Impaired | Entitled to Vote |
| 5 | Convenience Class Claims | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Intercompany Claims | Impaired | Deemed to Reject |
| 8 | Intercompany Interests | Impaired | Deemed to Reject |
| 9 | Subordinated Claims | Impaired | Deemed to Reject |
| 10 | Equity Interests | Impaired | Deemed to Reject |

C.      *Treatment of Claims and Interests*

To the extent a Class contains Allowed Claims or Allowed Interests with respect to a particular Debtor, the treatment provided to each Class for distribution purposes is specified below:

1.      Class 1 -Priority Non-Tax Claims

(a)      *Classification:* Class 1 consists of Priority Non-Tax Claims.

(b)      *Treatment:* Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Priority Non-Tax Claim, each holder of such Allowed Priority Non-Tax Claim shall be paid in full in Cash.  Allowed Priority Non-Tax Claim shall be paid on or as reasonably practicable after (i) the Effective Date, (ii) the date on which such Priority Non-Tax Claim against the Debtors becomes an Allowed Priority Non-Tax Claim or (iii) such other date as may be ordered by the Bankruptcy Court.

(c)      *Voting:* Class 1 is Unimpaired by the Plan, and each holder of a Class 1 Priority Non-Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 1 Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan.

2.      Class 2- Other Secured Claims

(a)      *Classification:* Class 2 consists of Other Secured Claims.

(b)      *Treatment:* Except to the extent that a holder of an Other Secured Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Other Secured Claim, each holder of such Allowed Other Secured Claim shall receive one of the following treatments, as determined by the applicable Debtor (with

-16-

the consent of the Secured Lender): (i) either (a) payment in full in Cash, including the payment of any interest required to be paid under section 506(b) of the Bankruptcy Code; (ii) delivery of the collateral securing any such allowed secured claim; or (iii) other treatment such that the allowed secured claim shall be rendered Unimpaired.

(c)     *Voting:* Class 2 is Unimpaired by the Plan, and each holder of a Class 2 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.   Therefore, holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

3.     Class 3 – Subordinated Secured Claims

(a)     *Classification:* Class 3 consists of Subordinated Secured Claims.

(b)     *Treatment:* Except to the extent that a holder of a Subordinated Secured Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Subordinated Secured Claim, each holder of such Allowed Subordinated Secured Claim shall be treated as a holder of a Class 6 General Unsecured Claim.

(c)     *Voting:* Class 3 is Impaired by the Plan, and each holder of a Class 3 Secured Subordinated Claim is entitled to vote to accept or reject the Plan.

4.     Class 4- Pre-Petition Credit Facility Claim

(a)     *Classification:* Class 4 consists of the Pre-Petition Credit Facility Claim.

(b)     *Treatment:* In exchange for full and final satisfaction, settlement, release and discharge of the Pre-Petition Credit Facility Claim, and the other consideration contained herein, the Secured Lender or its designee shall receive (i) 100% of the Secured Note and (ii) 100% of the New Common Stock.

(c)     *Voting:* Class 4 is Impaired by the Plan. The Secured Lender is entitled to vote to accept or reject the Plan.

5.     Class 5- Convenience Class Claims

(a)     *Classification:* Class 5 consists of Convenience Class Claims.

(b)     *Treatment:* Except to the extent that a holder of an Allowed Convenience Class Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Convenience Class Claim, each holder of Allowed Convenience Class Claim shall receive Cash from the GUC Trust in the amount equal to the lesser of (i) $1,000 or (ii) 10% of such Allowed Convenience Class Claim on the later of the Effective Date or the date such Claim becomes an Allowed Claim.

01:14215373.1

(c)    *Voting:* Class 5 is Impaired by the Plan.  Therefore, holders of Class 5 Convenience Class Claims are entitled to vote to accept or reject the Plan.

6.    Class 6 - General Unsecured Claims

(a)    *Classification:* Class 6 consists of General Unsecured Claims.

(b)    *Treatment:* Except to the extent that a holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed General Unsecured Claim, each holder of such Allowed General Unsecured Claim shall receive its Pro Rata distribution of the GUC Trust Assets.

(c)    *Voting:* Class 6 is Impaired by the Plan.  Therefore, holders of Class 6 General Unsecured Claims are entitled to vote to accept or reject the Plan.

7.    Class 7 - Intercompany Claims

(a)    *Classification:* Class 7 consists of Intercompany Claims.

(b)    *Treatment:* On the Effective Date, Class 7 Intercompany Claims shall not be entitled to receive or retain any property or interest on account of such claims.

(c)    *Voting*: Class 7 is Impaired by the Plan, and each holder of a Class 7 Intercompany Claim is deemed to have rejected the Plan.

8.    Class 8 - Intercompany Interests

(a)    *Classification*: Class 8 consists of Intercompany Interests.

(b)    *Treatment*: On the Effective Date, Intercompany Interests will be cancelled and discharged.  Holders of Class 8 Intercompany Interests shall not receive any distribution on account of such Interests.

(c)    *Voting*: Class 8 is Impaired and the Holders of Class 8 Intercompany Interests are deemed to reject the Plan.

9.    Class 9 – Subordinated Claims

(a)    *Classification*:  Class 9 consists of Subordinated Claims.

(b)    *Treatment*: On the Effective Date, Class 9 Subordinated Claims shall not be entitled to receive or retain any property or interest on account of such claims.  Upon the entry of a Final Order denying subordination or disallowance of a Subordinated Claim, such claim shall be treated as a Class 6 Unsecured Claim.

(c)    *Voting*: Class 9 is Impaired and the Holders of Class 9 Subordinated Claims are deemed to reject the Plan.

-18-

      10.     Class 10 – Equity Interests

      (a)    *Classification*:  Class 10 comprises the Interests in the Debtors.

      (b)    *Treatment*: On the Effective Date, Class 10 Equity Interests will be cancelled and discharged.  Holders of Class 10 Equity Interests in the Debtors shall not receive any distribution on account of such Interests.

      (c)    *Voting*: Class 10 is Impaired and the Holders of Class 10 Equity Interests are deemed to reject the Plan.

D.    *Special Provision Governing Claims that are Not Impaired*

      Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Claims that are not Impaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are not Impaired.

E.    *Acceptance or Rejection of the Plan*

      1.    Voting Classes

      Classes 3, 4, 5 and 6 are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

      2.    Presumed Acceptance of the Plan

      Classes 1 and 2 are Unimpaired under the Plan, and the holders in such Classes are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

      3.    Presumed Rejection of Plan

      Classes 7, 8, 9 and 10 are Impaired and shall receive no distribution under the Plan.  The holders in Classes 8 and 9 are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

F.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

      Section 1129(a)(l0) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.  The Debtors shall seek Confirmation pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

G.    *Subordinated Claims*

      Except as expressly provided herein, the allowance, classification and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in

-19-

each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise.   Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors and the GUC Trust, as applicable, reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal or equitable subordination relating thereto.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Restructuring Transactions*

On the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtors shall take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan, including: (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and (iv) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

B.    *Sources of Consideration for Plan Distributions*

The Reorganized Debtors shall make distributions under the Plan as follows:

1.    Issuance and Distribution of New Common Stock

The issuance of the New Common Stock by Reorganized LMI is authorized without the need for any further corporate action and without any further action by the holders of Claims or Interests.   On the Effective Date, an initial number of shares of New Common Stock representing 100% of the New Common Stock shall be distributed to the Secured Lender or its designee, which designee shall be one or more of the Reorganized Debtors or any other Person selected by the Secured Lender, on account of the Pre-Petition Credit Facility Claim.   All of the shares of New Common Stock issued pursuant to the Plan shall be duly authorized, validly issued, fully paid and non-assessable.   Each distribution and issuance of the New Common Stock under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

2.    Issuance of the Secured Note

On the Effective Date, Reorganized LMI will issue the Secured Note to the Secured Lender on account of the Pre-Petition Credit Facility Claim. Confirmation shall be deemed approval of the Secured Note (including transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by Reorganized LMI in connection therewith) and Reorganized LMI is authorized to execute and deliver those documents necessary or appropriate to issuing the Secured Note, including the Secured Note Loan and Security Agreement without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, rule, vote, consent, authorization or approval of any Person, subject to such modifications as the Reorganized LMI may deem to be reasonably necessary to consummate issuance of the Secured Note.

3.    Cash on Hand; Funding for Plan Payments and Working Capital

On the Effective Date, available cash-on-hand of the Reorganized Debtors, if any, will be used to fund any outstanding payments, obligations or expenses required to consummate the Plan. If, and to the extent that available cash on hand is insufficient to satisfy the Debtors' Plan payment obligations, the Secured Lender shall deposit into escrow an amount of Cash necessary to satisfy such obligations.

C.    *Corporate Existence*

Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, each Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other analogous formation or governing documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation or governing documents) are amended by the Plan or otherwise, with the consent of the Secured Lender. To the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial or federal law).

D.    *Existing Benefits Agreements*

On the Effective Date, each of the Debtors shall assume (and assign to the applicable Reorganized Debtor if necessary) all of its Existing Benefits Agreements; provided, however, the Reorganized Debtors shall not assume other contractual liabilities to current or former employees of the Debtors except pursuant to an Executory Contract that is identified on the Assumed Executory Contract and Unexpired Lease List. Nothing in the Plan shall limit, diminish or otherwise alter the Reorganized Debtors' defenses, claims or other rights with respect to any such contracts, agreements, policies, programs and plans. Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective

01:14215373.1

Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.  In addition, from and after the Effective Date, the Reorganized Debtors will assume responsibility for the Debtor's liabilities to employees under applicable non-bankruptcy law.

E.      *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Plan, the Settlement Agreement or any agreement, instrument or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, all property in each Estate, all Retained Causes of Action and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any Claims, Interests or Retained Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules; provided, however, that the Reorganized Debtors shall have no authority to settle General Unsecured Claims or Claims in such a manner as to have them treated as Class 6 General Unsecured Claims without the consent of the GUC Trust, which shall not be unreasonably withheld, or an order of the Bankruptcy Court.

F.      *Vesting of Assets in the GUC Trust*

To the extent, if at all, not previously vested in the GUC Trust pursuant to and by virtue of the Settlement Agreement and the Cash Collateral Order on the Effective Date, all GUC Trust Assets shall vest in the GUC Trust free and clear of all Liens, Claims, charges, or other encumbrances subject to the beneficial interests therein of all holders of Allowed Convenience Class Claims and Allowed General Unsecured Claims.

G.      *Cancellation of Existing Securities*

Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan or the Plan Supplement, on the Effective Date: (i) the obligations of the Debtors under the Pre-Petition Credit Facility and any other certificate, share, note, bond, indenture, purchase right, option, warrant or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes or other instruments or documents evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be cancelled as to the Debtors, and the Reorganized Debtors shall not have any continuing obligations thereunder; and (ii) the obligations of the Debtors pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be

-22-

released and discharged; provided, however, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the holder of a Claim shall continue in effect solely for purposes of enabling holders of Allowed Claims to receive distributions under the Plan as provided herein; *provided, further, however,* that the preceding provision shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order or the Plan or result in any expense or liability to the Reorganized Debtors, except to the extent set forth in or provided for under this Plan.

H.    *Corporate Action*

Upon the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including: (i) distribution of the New Common Stock; (ii) issuance of the Secured Note; (iii) selection of the directors and officers for the Reorganized Debtors; (iv) implementation of the restructuring transactions contemplated by this Plan; (v) all other actions contemplated by the Plan (whether to occur before, on or after the Effective Date) and (v) entry into the Secured Note Loan and Security Agreement. All matters provided for in the Plan involving the corporate structure of the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors or officers of the Debtors or the Reorganized Debtors. On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors shall be authorized and (as applicable) directed to issue, execute and deliver the agreements, documents, securities and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors, including any and all other agreements, documents, securities and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article IV shall be effective notwithstanding any requirements under non-bankruptcy law.

I.    *New Certificates of Incorporation and New By-Laws*

On or immediately before the Effective Date, the Reorganized Debtors will file their respective New Certificates of Incorporation, which shall be in form and substance acceptable to the Secured Lender, with the applicable Secretaries of State and/or other applicable authorities in their respective states, provinces or countries of incorporation in accordance with the corporate laws of the respective states, provinces or countries of incorporation. Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Certificates of Incorporation will prohibit the issuance of non-voting equity securities. On or after the Effective Date, the Reorganized Debtors may amend and restate their respective New Certificates of Incorporation and New By-Laws and other constituent documents as permitted by the laws of their respective states, provinces or countries of incorporation and their respective New Certificates of Incorporation and New By-Laws.

J.      *Directors and Officers of the Reorganized Debtors*

   As of the Effective Date, the term of the current members of the Debtors' boards of directors of shall expire, and the initial New Boards of each of the Reorganized Debtors shall be appointed in accordance with the New Certificates of Incorporation and New By-Laws of each Reorganized Debtor.

   Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose in the Plan Supplement the identity and affiliations of any Person proposed to serve on the initial New Boards of the Reorganized Debtors as well as those Persons that will serve as an officer of any of the Reorganized Debtors, all of whom shall be designated by the Secured Lender.  To the extent any such director or officer is an "insider" of any Debtor under the Bankruptcy Code, the nature of any compensation to be paid to such director or officer will also be disclosed.  Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the New Certificates of Incorporation, New By-Laws and other constituent documents of the Reorganized Debtors.

K.      *Effectuating Documents;  Further Transactions*

   On and after the Effective Date, the Reorganized Debtors, and the officers and members of the New Boards thereof, are authorized to and may issue, execute, deliver, file or record such contracts, Securities, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan, including the New Common Stock and the Secured Note, without the need for any approvals, authorization or consents except those expressly required pursuant to the Plan.

L.      *Exemption from Certain Taxes and Fees*

   Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.  Such exemption specifically applies, without limitation, to (1) the creation of any mortgage, deed of trust, lien or other security interest; (2) the making or assignment of any lease or sublease; (3) any restructuring transaction authorized by the Plan; or (4) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any restructuring transaction occurring under the Plan.

M.      *Insurance Policies*

Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtors shall assume (and assign to the Reorganized Debtors if necessary to continue the Insurance Policies in full force) all of the Insurance Policies pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' assumption of the Insurance Policies. Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair or otherwise modify any obligations assumed by the foregoing assumption of the Insurance Policies, and each such obligation shall be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be Filed. To the extent one or more of the Insurance Policies provides potential coverage related to one or more GUC Trust Causes of Action, the Reorganized Debtors shall, to the extent permissible under each Insurance Policy, assign all of their respective rights thereunder to the GUC Trust and the Reorganized Debtors shall promptly transfer any such recovery received by them to the GUC Trust, with all net proceeds of Insurance Policies received by the GUC Trust treated as proceeds of the GUC Causes of Action for all purposes under the Plan.

N.      *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors may pursue the Retained Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors and the GUC Trust may pursue the GUC Trust Causes of Action in its discretion. The Reorganized Debtors expressly reserve all rights to prosecute any and all Retained Causes of Action against any Entity and the GUC Trust expressly reserves all rights to prosecute any and all GUC Trust Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Retained Causes of Action and the GUC Trust expressly reserves all GUC Trust Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to the Retained Causes of Action and the GUC Trust Causes of Action upon, after or as a consequence of the Confirmation or Consummation. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Retained Causes of Action that a Debtor may hold against any Entity shall vest in such Reorganized Debtors and the applicable Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Retained Causes of Action. The Reorganized Debtors shall have the exclusive right, authority and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw or litigate to judgment any Retained Causes of Action and to decline to do any of the foregoing without further notice to or action, order or approval of the Bankruptcy Court. The GUC Trust shall have the exclusive right, authority and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw or litigate to judgment any GUC Trust Causes of Action and to decline to do any of the foregoing without further notice to or action, order or approval of the Bankruptcy Court.

-25-

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease: (i) was assumed or rejected previously by the Debtors; (ii) previously expired or terminated pursuant to its own terms; (iii) is the subject of a motion to assume Filed on or before the Effective Date; or (iv) is identified as an Executory Contract or Unexpired Lease on the Assumed Executory Contracts and Unexpired Lease List.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan and the Assumed Executory Contract and Unexpired Leases List pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.

B.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court within 30 days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time will be automatically disallowed, forever barred from assertion and shall not be enforceable against the Debtors, the Reorganized Debtors, the Estates, their property or the GUC Trust without the need for any objection by the GUC Trust or further notice to, or action, order or approval of the Bankruptcy Court.  Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan, as applicable.

**Rejection Claims for which a Proof of Claim is not timely Filed will be forever barred from assertion against the Debtors, the Reorganized Debtors, their Estates, their property and the GUC Trust unless otherwise ordered by the Bankruptcy Court. Such Rejection Claims shall, as of the Effective Date, be subject to the discharge and permanent injunction set forth in Article VIII hereof.**

C.      *Cure of Defaults for Executory Contracts and Unexpired Leases Assumed*

Any monetary defaults under each Executory Contract and Unexpired Lease as reflected on the Assumed Executory Contracts and Unexpired Lease List shall be satisfied, pursuant to section 365(b)(i) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (i) the amount of any payments to cure such a default, (ii) the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or (iii) any other matter pertaining to assumption, the cure payments required by section 365(b)(l) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. The Debtors, with the consent of the Secured Lender, shall have the right to alter, amend, modify or supplement the Assumed Executory Contracts and Unexpired Lease List as identified in the Plan Supplement, through and including the Effective Date. To the extent that the Debtors, with the consent of the Secured Lender, alter, amend, modify or supplement the lists of Executory Contracts and Unexpired Lease included in the Plan Supplement, the Debtors will provide notice to each counterparty to an affected Executory Contract or Unexpired Lease within five days of such decision.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date of the Debtors or Reorganized Debtors assume such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order or approval of the Bankruptcy Court.

D.      *Insurance Policies*

All of the Debtors' Insurance Policies and any agreements, documents or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan. On the Effective Date, the Debtors shall be deemed to have assumed all Insurance Policies and any agreements, documents and instruments related thereto, subject to the provisions set forth in Article IV.L.

E.      *Indemnification Obligations Regarding Prepetition Acts or Omissions*

Any obligation of the Debtors to indemnify, reimburse or limit the liability of any Person, including, but not limited to, any officer or director of the Debtors, or any agent, professional, financial advisor, or underwriter of any securities issued by the Debtors, relating to any acts or omissions occurring before the Petition Date, whether arising pursuant to charter, by-laws, contracts or applicable state law, shall be deemed to be, and shall be treated as, an

-27-

Executory Contract and (i) shall be and hereby is deemed rejected and terminated as of the Effective Date and (ii) any and all Claims resulting from such obligations shall be, and hereby are, disallowed pursuant to Bankruptcy Code section 502(e). Notwithstanding any of the foregoing, nothing contained in the Plan shall modify the rights of any Person to be indemnified, reimbursed or to obtain contribution or exculpation to the extent of proceeds or coverage available under any D&O Policy.

F.      *Modifications, Amendments, Supplements, Restatements or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan. Modifications, amendments, supplements and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority or amount of any Claims that may arise in connection therewith.

G.      *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumed Executory Contract and Unexpired Lease List, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, with the consent of the Secured Lender, or Reorganized Debtors, as applicable, shall have 28 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

H.      *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code.

I.      *Contracts and Leases Entered Into After the Petition Date*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

# ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each holder of an Allowed Claim, other than a Convenience Class Claim or General Unsecured Claim, shall receive the full amount of the distributions that the Plan provides for Allowed Claims in each applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of the Plan.  Except as otherwise provided in the Plan, holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.  The Debtors shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Voting Deadline.

B.    *Disbursing Agent*

Except with respect to distributions on account of Allowed Convenience Class Claims or General Unsecured Claims, which distributions will be made by the GUC Disbursing Agent from the GUC Trust Assets, all distributions under the Plan shall be made by the Disbursing Agent.   To the extent the Disbursing Agent is one or more of the Reorganized Debtors, the Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  The GUC Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

C.    *Rights and Powers of Disbursing Agent*

1.    Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.    Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court and subject to the consent of the Secured Lender, the amount of any reasonable fees and out-of-pocket expenses incurred by

-29-

the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

D.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

     1.    Delivery of Distributions

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be made to holders of record as of the Distribution Record Date: (1) to the signatory set forth on any of the Proofs of Claim Filed by such holder or other representative identified therein (or at the last known addresses of such holder if no Proof of Claim is Filed or if the Debtors, Reorganized Debtors, Disbursing Agent or GUC Trust, as applicable, have been notified in writing of a change of address); (2) at the addresses set forth in any written notices of address changes delivered to the Debtors, Reorganized Debtors, Disbursing Agent or GUC Trust, as applicable, after the date of any related Proof of Claim; (3) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Debtors, Reorganized Debtors, Disbursing Agent or GUC Trust, as applicable, have not received a written notice of a change of address; or (4) on any counsel that has appeared in the Chapter 11 Cases on the holder's behalf.  Subject to this Article VI, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment or like legal process, so that each holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.  The Debtors, Reorganized Debtors, Disbursing Agent or GUC Trust, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for actual fraud, gross negligence or willful misconduct as determined by Final Order of a Court of Competent Jurisdiction.

     2.    Minimum Distributions

Notwithstanding any other provision of the Plan, the Disbursing Agent and GUC Trust, as applicable, will not be required to make distributions of Cash less than $50 in value, and each such Claim to which this limitation applies shall be discharged pursuant to Article VIII and its holder is forever barred pursuant to Article VIII from asserting that Claims against the Reorganized Debtors, their property, the GUC Trust or the GUC Trust Assets, as applicable.

Notwithstanding any other provision of the Plan, the Disbursing Agent and GUC Trust, as applicable, will not be required to make payments of fractions of dollars.  Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment made will reflect a rounding of the fraction in the nearest whole dollar (up or down), with half-dollars rounded down.

     3.    Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Disbursing Agent or GUC Trust, as applicable, has determined the then-current address of such holder, at which time such

distribution shall be made to such holder without interest; provided, however, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one-hundred and eighty (180) days from the Distribution Date. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors or the GUC Trust, as applicable, automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned or unclaimed property laws to the contrary), and the Claim of any holder to such property or Interest in property shall be discharged and forever barred.

   4.  <u>Means of Cash Payment.</u>

    (a)  Cash payments under this Plan shall be in U.S. dollars and shall be made, at the option and in the sole discretion of Disbursing Agent or GUC Trust, as the case may be, by (i) checks drawn on or (ii) wire transfers from a domestic bank selected by Disbursing Agent or GUC Trust. Cash payments to foreign creditors may be made at the option of Disbursing Agent or the GUC Trust, as the case may be, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

    (b)  Checks issued in respect of distributions under this Plan will be null and void if not negotiated within ninety (90) days after the date of issuance. Requests for issuance of any check shall be made directly to the Disbursing Agent or the GUC Trust, as the case may be, by the holder of the Allowed Claim with respect to which such check was originally issued and must be made before sixty (60) days from the date of distribution. After such date, all claims in respect of voided checks and the underlying distribution will be forever discharged and forever barred and the Disbursing Agent or the GUC Trust shall have no obligation to make any future distributions.

*E.*  *Section 1145 Exemption*

    Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance and distribution of the New Common Stock as contemplated by Article IV of the Plan shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution or sale of Securities. In addition, under section 1145 of the Bankruptcy Code, such New Common Stock will be freely tradable in the U.S. by the recipients thereof, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with applicable securities laws and any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments and subject to any restrictions in New Certificate of Incorporation.

*F.*  *Compliance with Tax Requirements*

    In connection with the Plan, to the extent applicable, the Reorganized Debtors and the GUC Trust, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any

provision in the Plan to the contrary, the Reorganized Debtors, the Disbursing Agent and the GUC Trust, as applicable, shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors and the GUC Trust, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances.

G.    *Allocations*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

H.    *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim.

I.    *No Penalty Claims*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, no holder of any Claim will be entitled to Allowance of, or to receive any payment on account of, any penalty arising with respect to or in connection with such Claim.

J.    *Setoffs and Recoupment*

The Debtors, the Reorganized Debtors or the GUC Trust may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Reorganized Debtors or GUC Trust of any such Claim it may have against the holder of such Claim.

Unless otherwise authorized by a Final Order, any holder of a Claim, other than a holder of a Governmental Claim, must assert any setoff rights against a Claim by a Debtor against such entity by filing an appropriate motion seeking authority to setoff on or before the Confirmation Date or will be deemed to have waived and be forever barred from asserting any right to setoff against a Claim by a Debtor notwithstanding any statement to the contrary in a proof of claim or any other pleading or document filed with the Bankruptcy Court or delivered to the Debtors.

### K.    Costs of Administering and Distributing the GUC Trust Assets

Neither the Debtors nor the Reorganized Debtors shall bear any costs of administering or distributing the GUC Trust Assets to holders of Allowed Convenience Claims or Allowed General Unsecured Claims, including, for the avoidance of doubt, the costs of objecting to and/or resolving Convenience Class Claims or General Unsecured Claims, the post-Effective Date fees and expenses, if any, of the Notice, Claims and Balloting Agent related to Convenience Class Claims or General Unsecured Claims or any pleadings filed by or served by the GUC Trust, and any such costs shall be incurred by the GUC Trust and reimbursed from the GUC Trust Assets.

### L.    Claims Paid or Payable by Third Parties

#### 1.    Claims Paid by Third Parties

The Debtors, the Reorganized Debtors or the GUC Trust, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, Reorganized Debtor or GUC Trust.  Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor, a Reorganized Debtor or GUC Trust on account of such Claim, such holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor or GUC Trust, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such holder to timely repay or return such distribution shall result in the holder owing the applicable Reorganized Debtor or GUC Trust annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

#### 2.    Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Policies until the holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

#### 3.    Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Policy.

01:14215373.1

# ARTICLE VII
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

A.      *Allowance of Claims*

After the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately before the Effective Date except only that in connection with the reconciliation and adjudication of any Convenience Class Claims and General Unsecured Claims, the GUC Trust shall retain and be entitled to assert all defenses respecting and to the extent of such Convenience Class Claim or General Unsecured Claim on behalf of the Debtors and the Reorganized Debtors, as applicable.

B.      *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority: (i) to File, withdraw or litigate to judgment objections to Administrative Claims, Priority Tax Claims, Non-Priority Tax Claims, Other Secured Claims; (ii) to settle or compromise any Administrative Claims, Priority Tax Claims, Non-Priority Tax Claims and Other Secured Claims that is a Disputed Claim without any further notice to or action, order or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court, provided, however, that the Reorganized Debtors shall have no authority to reclassify any Administrative Claim, Priority Tax Claim, Non-Priority Tax Claim, Other Secured Claim, Intercompany Claim, Intercompany Interest or Equity Interest as a Convenience Class Claim or General Unsecured Claim without the express consent of the GUC Trustee, which shall not be unreasonably withheld, or an order of the Bankruptcy Court.

Except as otherwise specifically provided in the Plan, after the Effective Date, the GUC Trust shall have the sole authority: (i) to File, withdraw or litigate to judgment objections to Convenience Class Claims and General Unsecured Claims; (ii) to settle or compromise any Convenience Class Claim or  General Unsecured Claim that is a Disputed Claim without any further notice to or action, order or approval by the Bankruptcy Court; and (iii) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court; provided, however, that any costs related thereto shall be born solely by the GUC Trust from the GUC Trust Assets.

C.      *Estimation of Claims*

Before or after the Effective Date, the Debtors or Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to

01:14215373.1

such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.   In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.  The provisions of this Article VII.C. shall apply to the same extent to the GUC Trust with respect to its reconciliation and adjudication of Convenience Class Claims and General Unsecured Claims.

D.       *Adjustment to Claims Without Objection*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, cancelled or otherwise expunged (including pursuant to the Plan), may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Reorganized Debtors (or in the case of Convenience Class Claims and General Unsecured Claims only, by the GUC Trust) without a Claims objection or any other notice or motion having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

E.       *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the Claims Objection Deadline.

F.       *Disallowance of Claims*

Except as provided herein or otherwise agreed, any and all proofs of Claim Filed after the Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.

G.       *Amendments to Claims*

On or after the Effective Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors (or, solely in the case of Convenience Class Claims or General Unsecured Claims, the GUC Trust).   Absent such authorization, any new or amended Claim Filed shall be deemed disallowed in full and expunged without any further action.

H.       *Alternative Claim Resolution Procedures*

The Debtors, with the consent of the Committee and the Secured Lender, may file as part of the Plan Supplement, alternative dispute resolution-based claim resolution procedures

applicable to certain contingent, unliquidated or disputed claims, which shall become part of the Plan and effective on the Effective Date.

I.     *Tax Implications for Recipients of Distributions*

Notwithstanding any other provision of the Plan, each entity receiving a distribution of Cash or other consideration pursuant to the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any Governmental Unit on account of the distribution, including income, withholding and other tax obligations.

J.     *No Levy*

Except as otherwise provided herein, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment or like legal process, so that each holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.

K.     *Offer of Judgment*

The Reorganized Debtors or the GUC Trust, as applicable, is authorized to serve upon a holder of a Claim an offer to allow judgment to be taken on account of such Claim, and pursuant to Bankruptcy Rule 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment.  To the extent the holder of a Claim must pay the costs of the Reorganized Debtors or GUC Trust, as applicable, after making of such offer, the Reorganized Debtors or GUC Trust, as applicable, is entitled to setoff such amounts against the amount of any distribution to be paid to such holder without any further notice or action, order or approval of the Bankruptcy Court.

L.     *No Distributions Pending Allowance*

If an objection to a Claim or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

M.     *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent or GUC Trust, as applicable, shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim unless required under applicable bankruptcy law.

## ARTICLE VIII
## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

A.      *Compromise and Settlement of Claims, Interests and Controversies*

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a holder of a Claim may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and holders, and is fair, equitable and reasonable.   In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against them and Causes of Action against Entities that are Retained Causes of Action.  In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the GUC Trust may compromise and settle the GUC Causes of Action.

B.      *Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument or other agreement or document created pursuant to the Plan, the distributions, rights and treatment that are provided in the Plan shall be in complete satisfaction, discharge and release, effective as of the Effective Date, of Claims, Interests and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt, right or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has accepted the Plan.   Any default by the Debtors with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  The

-37-

Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

C.    *Release of Liens*

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction of the Allowed Secured Claim as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

D.    *Releases by the Debtors*

ON THE EFFECTIVE DATE OF THE PLAN AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, THE RELEASED PARTIES WILL BE EXPRESSLY, UNCONDITIONALLY, GENERALLY AND INDIVIDUALLY AND COLLECTIVELY RELEASED, ACQUITTED AND DISCHARGED BY THE DEBTORS AND THEIR ESTATES FROM ANY AND ALL ACTIONS, CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR THAT COULD BE ASSERTED ON BEHALF OF THE DEBTORS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT OR OTHERWISE, BY STATUTE OR OTHERWISE, THAT THE DEBTORS, THE REORGANIZED DEBTORS OR THE DEBTORS' ESTATES (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER ENTITY, EVER HAD, NOW HAS OR HEREAFTER CAN, SHALL OR MAY HAVE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' RESTRUCTURING, THE CHAPTER 11 CASES, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE RESTRUCTURING, THE NEGOTIATION, FORMULATION OR PREPARATION OF THE PLAN, THE PLAN SUPPLEMENT, ANY DISCLOSURE STATEMENT OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE RELATING TO THE DEBTORS TAKING PLACE ON OR BEFORE THE CONFIRMATION DATE OF THE PLAN, EXCEPT FOR ANY CLAIMS AND CAUSES OF ACTION FOR ACTUAL FRAUD, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT AS DETERMINED BY FINAL ORDER OF A COURT OF COMPETENT JURISDICTION.

01:14215373.1

E.    *Liabilities to, and Rights of Governmental Units*

Nothing in the Plan or Confirmation Order shall discharge, release, or preclude: (1) any liability to a Governmental Unit that is not a Claim; (2) any Claim of a Governmental Unit arising on or after the Confirmation Date; (3) any liability to a Governmental Unit on the part of any Person or Entity other than the Debtors or Reorganized Debtors; (4) any valid right of setoff or recoupment by a Governmental Unit; or (5) any criminal liability. Nothing in the Plan or Confirmation Order shall enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence. The discharge and injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar any Governmental Unit from, after the Confirmation Date, pursuing any police or regulatory action.

F.    *Exculpation*

EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN OR PLAN SUPPLEMENT, NO EXCULPATED PARTY SHALL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM ANY EXCULPATED CLAIM, OBLIGATION, CAUSE OF ACTION OR LIABILITY FOR ANY EXCULPATED CLAIM, EXCEPT FOR ACTUAL FRAUD, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT AS DETERMINED BY FINAL ORDER OF A COURT OF COMPETENT JURISDICTION, BUT IN ALL RESPECTS SUCH ENTITIES SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN. THE DEBTORS AND THE REORGANIZED DEBTORS (AND EACH OF THEIR RESPECTIVE AFFILIATES, AGENTS, ADVISORS, DIRECTORS, OFFICERS, EMPLOYEES AND ATTORNEYS) HAVE PARTICIPATED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION AND DISTRIBUTION OF THE SECURITIES PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.

G.    *Injunction*

FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

FROM AND AFTER THE EFFECTIVE DATE, THE DEBTORS AND HOLDERS OF CLAIMS OR INTERESTS SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES,

AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED, OR FOR WHICH EXCULPATION IS PROVIDED, PURSUANT TO ARTICLE VIII HEREOF.

FROM AND AFTER THE EFFECTIVE DATE, HOLDERS OF CLAIMS OR INTERESTS SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE REORGANIZED DEBTORS AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY ARISING UNDER OR RELATED TO ANY THEORY OF SUCCESSOR LIABILITY, DE FACTO MERGER, SUBSTANTIAL CONTINUITY OR SIMILAR THEORIES, WHETHER BASED IN LAW OR EQUITY.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR IN OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO ARTICLE VIII.D, DISCHARGED PURSUANT TO ARTICLE VIII.B, OR ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE VIII.F ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (4) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN.

THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST OR PENALTIES ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS OR ANY OF THEIR ASSETS, PROPERTY OR ESTATES.  ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED AND DISCHARGED, AND THE INTERESTS SHALL BE CANCELLED.

01:14215373.1

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS SHALL BE FULLY RELEASED AND DISCHARGED, AND THE INTERESTS SHALL BE CANCELLED, AND THE DEBTORS' LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE.

ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTORS, THE DEBTORS' ESTATES, THE REORGANIZED DEBTORS, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.

H.      *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## ARTICLE IX
## CONDITIONS PRECEDENT TO CONFIRMATION AND
## CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation that all provisions, terms and conditions hereof are approved in the Confirmation Order.

1.      Prior to the Confirmation Hearing, the Secured Lender shall have deposited in escrow Cash sufficient to satisfy the reasonably estimated Allowed Administrative Expense Claims, Allowed Fee Claims, Allowed Priority Non-Tax Claims, Allowed Other Secured Claims and any statutory fees in an aggregate amount determined by the Debtors and the Secured Lender or set forth in the Confirmation Order, but only to the extent that the reasonably estimated Cash on hand (projected as of the Effective Date) will be insufficient to satisfy these obligations.

B.      *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C hereof:

-41-

2.    The Confirmation Order (a) shall have been duly entered and be a Final Order and (b) shall include a finding by the Bankruptcy Court that the New Common Stock to be issued on the Effective Date will be authorized and exempt from registration under applicable securities law pursuant to section 1145 of the Bankruptcy Code and (c) shall be in form and substance otherwise acceptable to the Secured Lender.

3.    Any amendments, modifications or supplements to the Plan (including the Plan Supplement), if any, shall be acceptable to the Secured Lender.

4.    All actions, documents, certificates and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

5.    The Secured Lender or its designee shall have received the New Common Stock and fully executed originals of the Secured Note and the Secured Note Loan and Security Agreement.

6.    Unless otherwise agreed to by the Secured Lender, the amount of (a) Administrative Claims, excluding Fee Claims, shall not exceed an aggregate of $1,000,000.00; (b) Non-Priority Tax Claims shall not exceed an aggregate of $250,000.00; (c) to the extent the Reorganized Debtors elect to satisfy Other Secured Claims in cash, such amount shall not exceed an aggregate of $75,000.00 and (d) Fee Claims shall not exceed the aggregate amount budgeted for such Fee Claims in the Cash Collateral Budget less all payments made and retainers held on account thereof for the period from the Petition Date to the Effective Date.

7.    Unless otherwise agreed to by the Secured Lender, as of the Effective Date, (i) the proof of claims filed on account of Priority Tax Claims shall not exceed an aggregate of $300,000 and (ii) the Debtors' good faith estimate of Priority Tax Claims shall not exceed an aggregate of $300,000.00.

C.    *Waiver of Conditions*

The conditions to Confirmation and to Consummation set forth in Article IX may be waived by the Debtors, with the consent of the Secured Lender, without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

D.    *Effect of Failure of Conditions*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtors, any holders or any other Entity; (2) prejudice in any manner the rights of the Debtors, any holders or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any holder of any Claim or any other Person in any respect.

# ARTICLE X
# MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments*

Except as otherwise specifically provided in the Plan, and subject to the consent of the Secured Lender, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code.   Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), and subject to the consent of the Secured Lender, each of the Debtors expressly reserves its respective rights to revoke or withdraw, to alter, amend or modify the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.      *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent plans of reorganization.   If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (l) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor, any holder or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by such Debtor, any holder or any other Entity.

# ARTICLE XI
# RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals (including Fee Claims) authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to: (a) the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying or supplementing, after the Effective Date, pursuant to Article V, the Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory, expired or terminated;

4.      ensure that distributions to holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.      enter and implement such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Plan Supplement or the Disclosure Statement;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123 or 1146(a) of the Bankruptcy Code;

9.      resolve any cases, controversies, suits, disputes or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.     resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions and other provisions contained in Article VIII, and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

12.     resolve any cases, controversies, suits, disputes or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim for amounts not timely repaid pursuant to Article VI.K;

13.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

14.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement or the Confirmation Order;

15.     enter an order or Final Decree concluding or closing any of the Chapter 11 Cases;

16.     adjudicate any and all disputes arising from or relating to distributions under the Plan;

17.     consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.     determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

20.     hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

21.     hear and determine all disputes involving the existence, nature, scope or enforcement of any exculpations, discharges, injunctions and releases granted in connection with and under the Plan, including under Article VIII;

22.     enforce all orders previously entered by the Bankruptcy Court; and

23.     hear any other matter not inconsistent with the Bankruptcy Code.

### ARTICLE XII
### MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect*

Subject to Article IX.B and notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the

Debtors, the Reorganized Debtors and any and all holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.    *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, which agreements and other documents shall be in form and substance acceptable to the Secured Lender.  The Debtors or Reorganized Debtors, as applicable, and all holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Statutory Committee and Cessation of Fee and Expense Payment*

On the Effective Date, the Creditors' Committee shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.  Except with respect to the unpaid portion of any Allowed Fee Claim, the Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by the Creditors' Committee after the Effective Date.

D.    *Cooperation with the GUC Trust- Access to Documents.*

After the Effective Date, Reorganized Debtors shall provide to the GUC Trust and its representatives with access, at reasonable times and in a manner as to not unreasonably interfere with their normal business, to the books and records of the Reorganized Debtors to the extent they relate to the GUC Assets.  With respect to any GUC Assets, Reorganized Debtors shall allow the GUC Trust reasonable access to personnel in connection with the GUC Trust's investigation and pursuit of the GUC Trust Causes of Action, and its analysis and reconciliation of Convenience Class Claims and General Unsecured Claims.  Nothing herein shall require the Reorganized Debtors to incur any our of pocket expense that is not reimbursed by the GUC Trust.  The Reorganized Debtors shall not dispose of any such records relating to the GUC Trust Assets until the dissolution of the GUC Trust or Order of the Bankruptcy Court.

E.    *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders before the Effective Date.

-46-

F.      *Successors and Assigns*

   The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, if any, of such Entity.

G.      *Notices*

   To be effective, all notices, requests and demands to or upon the Debtors or the Secured Lender shall be in writing (including by facsimile transmission).  Unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed to the following:

**If to the Debtors:**

K&L GATES LLP
John A. Bicks
599 Lexington Avenue
New York, New York  10022-6030
Telephone:  (212) 536-3900
Facsimile:  (212) 536-3901

-and-

Charles A. Dale III
Mackenzie L. Shea
One Lincoln Street
Boston, Massachusetts 02111
Telephone:  (617) 261-3100
Facsimile:  (617) 261-3175

-and

Michael R. Nestor
Matthew B. Lunn
Justin H. Rucki
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware  19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

**If to the Secured Lender:**

PEPPER HAMILTON LLP
David B. Stratton
Evelyn J. Meltzer
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, Delaware  19899-1709
Telephone:  (302) 777-6500
Facsimile:  (302) 421-8390

01:14215373.1

After the Effective Date, the Reorganized Debtors may, in their sole discretion, notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

## H.    Entire Agreement

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

## I.    Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above, from the Notice, Claims and Balloting Agent's website at http://dm.epiq11.com/LMI/Documents or by downloading such exhibits and documents from the Bankruptcy Court's website at http://www.deb.uscourts.gov. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

## J.    Severability of Plan Provisions

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (3) non-severable and mutually dependent.

## K.    Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors and attorneys will be deemed to have participated in good faith and in

compliance with the Bankruptcy Code in the offer, issuance, sale and purchase of Securities offered and sold under the Plan and any previous plan and, therefore, no such parties, individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale or purchase of the Securities offered and sold under the Plan or any previous plan.

L.      *Closing of Chapter 11 Cases*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases or any of them, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order necessary to close the Chapter 11 Cases that have been fully administered.

M.      *Conflicts*

Except as set forth in the Plan, to the extent that any provisions of the Disclosure Statement, the Plan Supplement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Confirmation Order shall govern and control.

01:14215373.1

Dated: October ___, 2013

Respectfully Submitted,

LANDAUER HEALTHCARE HOLDINGS, INC.,
 *et al.*

By:

[_____]
Alan J. Landauer
Executive Chairman