**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| LANDAUER HEALTHCARE ) | Case No. 13-12098 (CSS) |
| HOLDINGS, INC. et al.,[1] ) | |
| ) | **Hearing Date: January 17, 2014 at 11:00 a.m.** |
| Debtor. ) | **Objection Deadline: January 10, 2014 at 4:00 p.m.** |

**MOTION OF PASSAIC HEALTHCARE SERVICES, LLC,
D/B/A ALLCARE MEDICAL FOR RELIEF FROM THE
AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362 AND FEDERAL
RULE OF BANKRUPTCY PROCEDURE 4001 AND FOR RELATED RELIEF**

Passaic Healthcare Services, LLC, d/b/a Allcare Medical ("Allcare") by and through its undersigned counsel, McElroy, Deutsch, Mulvaney & Carpenter, LLP, submits this Motion for an Order Granting Relief from the Automatic Stay (the "Motion"), and states as follows:

**JURISDICTION**

1.  The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G) and (O).

2.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1408.

3.  The statutory predicates for the relief requested are Sections 362(d)(1) and 553 of 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and Fed.R.Bankr.P. 4001

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are Landauer Healthcare Holdings, Inc. (9115), Landauer-Metropolitan, Inc. (9291), Miller Medical & Respiratory, Inc. (3261), C.O.P.D. Services, Inc. (0336), American Homecare Supply New York, LLC (7937), American Homecare Supply Mid-Atlantic LLC (0026), Denmark's, LLC (4588); and, Genox Homecare, LLC (7361). The Debtors' corporate headquarters and the mailing address for each Debtor is One Bradford Road, Mount Vernon, NY 10553.

**BACKGROUND**

4.     Allcare is a full service durable medical equipment company specializing in clinical respiratory, wound care & support surfaces and was a direct competitor of Landauer-Metropolitan, Inc. ("Landauer" or "Debtor").[2]

*Events Leading to the Failed Merger and Breach of the Exclusivity Agreement*

5.     In or about April 2012, Allcare began negotiations to acquire Landauer from its controlling shareholder, Clairvest. In connection with these negotiations, the parties entered into three (3) separate agreements, memorializing their intent to negotiate (among other things): (i) exclusively; (ii) in good faith; and (iii) confidentially.

6.     In furtherance of the transaction, on or about April 4, 2012, Landauer and Allcare entered into a confidentiality agreement (the "Confidentiality Agreement"). A true and accurate copy of the Confidentiality Agreement is annexed hereto as Exhibit A.

7.     In furtherance of the transaction, on April 29, 2013, Allcare and Landauer entered into a Letter of Intent pursuant to which it was intended that Allcare would acquire Landauer in a reverse triangular merger, whereby Landauer would merge with a wholly owned subsidiary of Allcare, and thereby become a wholly owned subsidiary of Allcare (the "LOI"). A true and accurate copy of the LOI is annexed hereto as Exhibit B.

8.     The LOI provided that the parties would issue a joint press release concerning the merger only upon execution of definitive documents (the "Press Release"). Nonetheless, Landauer and Clairvest pushed Landauer to approve issuance of the Press Release prematurely, i.e., before definitive documents memorializing the merger had been signed.

---

[2] Facts relating to this Motion are supported by the Declaration of Winthrop Hayes which is filed contemporaneously hereto.

9. As a condition to permitting the Press Release to be issued, in furtherance of the contemplated merger transaction, Landauer and Allcare entered into an Exclusivity Agreement, dated May 15, 2013 (the "Exclusivity Agreement"), which prohibited the parties from negotiating or discussing any acquisition with any other party until May 31, 2013. A true and accurate copy of the Exclusivity Agreement is attached hereto as Exhibit C.

10. On May 16, 2013, Landauer and Allcare issued the Press Release.

11. Soon thereafter, upon information and belief, on or about May 21, 2013, Landauer was served with a Civil Investigative Demand ("CID") by the United States Attorney's Office for the Southern District of New York relating to, among other things, possible violation of the Federal False Claims Act, which carries substantial penalties and treble damages.

12. After Allcare became aware of the CID on or about May 22, 2013, Allcare and Landauer revised the terms of the merger transaction in order to mitigate some of the risk relating to the CID. The parties agreed that the closing of the merger could be delayed for up to two years, until the parties could better understand the likely magnitude of the potential liabilities of Landauer arising from the CID, and made provision for that.

13. On or about May 22, 2013, Clairvest advised Allcare that two other entities, Medstar Surgical & Breathing Equipment, Inc. ("Medstar") and "Ocean Home Health", wanted to join the Landauer-Allcare deal, and Clairvest asked for permission under the Exclusivity Agreement to meet with them. Allcare consented to the meeting on the express condition that it would in no way hinder the terms of the contemplated Landauer-Allcare merger.

14. Thereafter, through about June 1, 2013, Allcare and Landauer negotiated to finalize their merger agreement.

15. Upon information and belief, some time on or prior to June 5, 2013 (just five days after expiration of the Exclusivity Agreement), in an apparent attempt to seize negotiating leverage, and force Allcare to accept its unilateral terms of the Landauer-Allcare merger, and in obvious violation of the Exclusivity Agreement, Landauer executed acquisition agreements with an entity known as "RiteCare" and with Medstar.

16. Upon information and belief, a new holding company was formed by Clairvest or Landauer, which new holding company was going to acquire Landauer (in a reverse triangular merger), as well as RiteCare and Medstar.

17. On or about June 5, 2013, Clairvest informed Allcare that Landauer would still close on a merger with Allcare, but only on a "take-it-or-leave it" basis, and that the proposed merger would include Rite Care and Medstar, as well as other terms much more favorable to Landauer and its affiliates.

18. In response, Allcare made a substantial counter-offer, which was refused by Landauer and Clairvest.

19. None of Defendants' (as defined in paragraph 21 below) agreements or negotiations leading up to this (with the exception of Landauer and Clairvest's discussions with Medstar about joining the Landauer-Allcare merger on terms unchanged from their original deal), were conducted with Allcare's knowledge, consent or permission. No consent was ever given for Landauer and Medstar to ignore the conditions of Allcare's consent to their discussions, i.e., that in no way would such discussions hinder or impair the terms of the Allcare-Landauer merger, or for Landauer to engage in any discussions or negotiations at all with RiteCare.

4

20. Upon information and belief, the only way for Defendants to have executed their Agreements with RiteCare and Medstar substantially contemporaneous to the expiration of the Exclusivity Agreement, was if Defendants had breached the exclusivity provisions thereof while they were still in effect.

*The State Court Litigation*

21. On June 26, 2013, Allcare filed a complaint against Landauer, Clairvest and LMI Healthcare Holdings, Inc. ("Defendants"), for breach of the LOI, the Exclusivity Agreement and the covenant of good faith and fair dealing by Defendants that caused Allcare substantial monetary damages – namely, *Passaic Healthcare Services, LLC, d/b/a Allcare Medical v. Landauer-Metropolitan, Inc., et al.*, Index No. 007775-13, Supreme Ct., NY, Nassau County (the "Pending New York Lawsuit"). A true and accurate copy of the complaint is annexed hereto as Exhibit D.

22. Also on June 26, 2013, Allcare filed an Order to Show Cause seeking to restrain and enjoin the Defendants and their respective affiliates from finalizing and/or completing any mergers, acquisitions and/or business combinations with RiteCare and Medstar[3]; and to declare invalid and unenforceable the non-hire and non-solicitation provisions contained in the parties' Confidentiality Agreement or, in the alternative, declaring that Allcare is permitted to hire or negotiate to hire former employees of the Defendants who have either quit or been fired prior to hiring by Allcare under the non-hire and non-solicitation provisions contained in the parties' Confidentiality Agreement. A true and accurate copy of the Order to Show Cause is annexed hereto as Exhibit E.

---

[3] In the instant Motion, Allcare is <u>not</u> seeking relief from stay to pursue restraint of any proposed sale, merger or other such transactions.

23. On July 30, 2013, Defendants filed an Answer, Affirmative Defenses and Counterclaims in response to Allcare's complaint. Defendants counterclaimed that Plaintiff breached the Confidentiality Agreement by using confidential information for Plaintiff's own purposes separate from the "Purpose" as defined in the Confidentiality Agreement and by soliciting and hiring employees in breach of the non-solicitation provisions of the Confidentiality Agreement, and for other related relief. A true and accurate copy of the Answer, Affirmative Defenses and Counterclaims in response to Allcare's complaint is annexed hereto as Exhibit F.

24. On July 31, 2013, Defendants filed an Order to Show Cause seeking to restrain and enjoin the Allcare and its respective affiliates from soliciting and/or hiring any employee or former employee of Landauer until June 14, 2015; continuing to employ any former employee of Landauer that was hired by Allcare on or after June 15, 2013, until June 14, 2015; using any information Allcare received from any former employee of Landauer that was hired by Allcare on or after June 15, 2013; and using any information Allcare received from Landauer during the due diligence phase in support of Allcare's business. The Court granted this request on limited basis as the temporary restraining order restrained Allcare only from soliciting any current employee of the Debtor (the "TRO"). A true and accurate copy of the Defendant's Order to Show Cause is annexed hereto as Exhibit G.

25. On August 13, 2013, Judge Driscoll issued decisions on the preliminary injunctions. Judge Driscoll's orders: (a) denied Plaintiff's motion, (b) granted Defendant's motion only to the extent that the limited TRO issued by the court on July 31, 2013 remains in effect, pending future court order or stipulation of the parties (the "Judge Driscoll Orders"). A true and accurate copy of the Judge Driscoll Orders are annexed hereto as Exhibit H.

26. After the Petition Date, on August 28, 2013, Joshua S. Krakowsky of Davidoff Hutcher & Citron LLP, Landauer's counsel in the Pending New York Lawsuit, sent an email to Allcare's counsel stating that Landauer intends to actively pursue its claims against Allcare in the Pending New York Lawsuit. A true and accurate copy of the email from Joshua S. Krakowsky of Davidoff Hutcher & Citron LLP to Allcare's counsel is annexed hereto as Exhibit I.

27. On September 3, 2013, Allcare filed its Reply to Debtor's Counterclaims. A true and accurate copy of the Allcare's Reply is annexed hereto as Exhibit J.

28. On September 23, 2013, Allcare filed a motion for reargument and renewal of the Judge Driscoll Orders. A hearing on this motion was held on November 15, 2013 and the Court has taken the motion *sub judice*.

29. On October 15, 2013, Allcare filed an appeal of the Judge Driscoll Orders.

*Bankruptcy Case*

30. The Debtor filed a petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on August 16, 2013 (the "Petition Date").

31. Because of the automatic stay pursuant to Section 362 of the Bankruptcy Code, Allcare has ceased any efforts to pursue its affirmative claims against Landauer.[4]

32. On October 10, 2013, the Debtor filed its Joint Plan of Reorganization of Landauer Healthcare Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 240] (the "Plan").

33. On November 8, 2013, Allcare submitted its proof of claim (the "Proof of Claim") against the Debtor in this Bankruptcy Case.

---

[4] Allcare sued other non-Debtor defendants and such claims are not stayed by Section 362 of the Bankruptcy Code. Relief from the automatic stay should be granted for cause for, *inter alia*, purposes of judicial economy. *See* paragraph 49 *infra*.

34. On December 9, 2013, the Debtor held a hearing wherein it explained to the Court that it was withdrawing its Plan and disclosure statement from the Court's consideration and instead would pursue a sale of substantially all of its assets pursuant to Section 363 of the Bankruptcy Code. After such sale, it is contemplated that the Debtor would file a plan of liquidation for the remaining assets of the bankruptcy estate.

## RELIEF REQUESTED

35. By this Motion, Allcare seeks entry of an order providing that Allcare is entitled to assert its defenses against Landauer in the Pending New York Lawsuit, including exercising its recoupment remedies, and/or in the alternative, granting relief from the automatic stay for "cause" pursuant to 11 U.S.C. § 362(d)(1) to continue the Pending New York Lawsuit to liquidate its claims and to effectuate any setoff rights it has with respect to its claims.

### *Allcare is Entitled to Defend its Interests in the Pending New York Lawsuit Including Exercising Any Rights of Recoupment*

36. The automatic stay of Section 362 of the Bankruptcy Code provides a debtor with a breathing spell from creditors and prevents particular creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors. *Assoc. of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982); *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991), *reh'g* granted and opinion vacated (Jan 10, 1992), *opinion reinstated on reh'g* (Mar 24, 1992), *and reh'g denied* (Mar 25, 1992);.

37. This stay only applies to the commencement of or continuation of claims *against* the debtor. "Thus, within one case, actions against a debtor will be suspended even though closely related claims asserted by the debtor may continue. Judicial proceedings resting on counterclaims and third-party claims asserted by a defendant-debtor are not stayed, while same-case proceedings arising out claims asserted by the plaintiff are stayed. *See First Wisconsin*

*National Bank v. Grandlich Development Corp.*, 565 F.2d 879, 880 (5th Cir.1978) (automatic stay did not bar district court's dismissal of debtor's counterclaim in action originally brought against debtors, "because the counterclaim was not a proceeding against the debtors"); *Jefferson Ward Stores, Inc. v. Doody Co.*, 48 B.R. 276, 278-79 (E.D.Pa.1985) (automatic stay does not bar district court's denial of debtor's Rule 54(b) motion made in connection with third-party claim brought by debtor); *Boone v. Beacon Bldg. Corp.*, 613 F.Supp. 1151, 1155 (D.N.J.1985) (stay only operates as against actions in which bankruptcy petitioner is in defensive posture; thus bankrupt's crossclaim against codefendant for contribution is not stayed); *Trans Caribbean Lines v. Tracor Marine, Inc.*, 49 B.R. 360, 362 (S.D.Fla.1985) (since prosecution of counterclaims and crossclaims by debtor is not stayed by § 362, court's dismissal of debtor's counterclaims or cross claims is not barred by § 362); *In re Regal Construction Co.*, 28 B.R. 413, 416 (Bankr.D.Md.1983) (automatic stay did not preclude debtor from proceeding on counterclaim which it had brought)." *Mar. Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991).

38. However, the automatic stay does not preclude litigants from defending themselves and protecting their legal rights from claims brought by the debtor. *See In re Financial News Network Inc.*, 158 B.R. 570 (S.D.N.Y. 1993).

39. Indeed, "[t]he bankruptcy laws are intended as a shield not as a sword" for the debtor. *In re Penn Central Transportation Co.*, 458 F. Supp. 1346, 1356 (E.D. Pa. 1978). *See, e.g., Oberg v. AETNA Cas. & Sur. Co. (In re A.H. Robins Co., Inc.)*, 828 F.2d 1023, 1026 (4th Cir. 1987) (stating that "[o]ur system of law universally frowns on a party who would use the stay as both a sword and a shield"); *Bohack Corp. v. Borden, Inc. (In re Bohack Corp.)*, 599 F.2d 1160, 1168 (2d Cir. 1979) (noting that courts "must be cautions to avoid a decision which could

convert Rule 11 44 [pre-Code stay] from a shield into a weapon"); *In re McHenry*, 179 B.R. 165, 169 (B.A.P. 9th Cir. 1995) ("[t]he automatic stay afforded by section 362 is intended to be a shield, protecting debtors and their estates, and should not be used as a sword for their enrichment"); *Turner Broad. Sys., Inc. v. Sanyo Elec., Inc.*, 33 B.R. 996, 1000 (N.D. Cal. 1989) (noting that "the stay is not designed to be an offensive weapon--a sword"); *Bernstain v. IDT Corp.*, 76 B.R. 275, 281 (S.D.N.Y. 1987) (decrying use of stay "as a sword instead of a shield"); *Drubner v. Gaslight Village, Inc.* (In re Gaslight Village, Inc.), 8 B.R. 866, 870 (D. Conn. 1981) (stating that "[t]he automatic stay under Code § 362 was not intended to be used as a weapon or club to reduce secured creditors into submission").

40.     Landauer has made it clear that it intends to pursue its counterclaims against Allcare in the Pending New York Lawsuit. Allcare should not be barred by the automatic stay from defending itself against the counterclaims, including asserting any right to recoupment.

41.     Although a creditor must obtain relief from the automatic stay to exercise other rights, including a right of setoff, recoupment constitutes a non-statutory, equitable exception to the automatic stay. *In re University Medical Ctr.*, 973 F.2d 1065, 1080 (3d Cir. 1992). And although relief from stay is not required to effect recoupment, a party in interest is entitled to, and is prudent to, seek court approval prior to exercising a right of recoupment. *See, e.g., In re Torrez*, 132 B.R. 924, 935 (E.D.Cal. 1991) (creditor may seek an order providing that automatic stay is inapplicable to exercise of recoupment); *In re Wade*, 115 B.R. 222, 230 (9th Cir. BAP 1990) (same), *aff'd*, 948 F.2d 122 (9th Cir. 1991).

42.     In this case, Allcare believes it has substantial monetary claims against the Debtor arising from the Debtor's pre-petition contractual breaches. Those claims are the subject of the Pending New York Lawsuit. They arise out of the same contract (or, as here, integrated series of

contracts in connection with a single transaction) upon which the Debtor asserts its counterclaim against Allcare.  It is well settled that where, as here, a party's claims against a counter-party arise from the same transaction upon which the counter-party has asserted claims, recoupment applies.  *See In re University Medical Ctr.*, 973 F.2d at 1081 ("both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations.").

43.　　Accordingly, Allcare seeks a declaration from this Court that the claims in its complaint in the Pending New York Lawsuit may be asserted in defense to Landauer's counterclaims therein as claims of recoupment and thus not subject to the automatic stay to the extent such claims are limited to offsetting Allcare's potential liability, if any.

***Alternatively, Allcare is Entitled to Relief from the Automatic Stay For "Cause" Under Section 362(d)(1) to Continue the Pending New York Lawsuit and/or Effectuate Its Right of Setoff***

44.　　Bankruptcy Code § 362(d)(1) provides that "[o]n request of a party in interest, and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay (1) for cause . . . ." 11 U.S.C. § 362(d)(1). "Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) (citations omitted).

45.　　Pursuant to Section 362(g), in determining whether "cause" exists under section 362(d)(1), the initial burden is imposed on the moving party to establish its prima facie case. Once established, the burden shifts to the party opposing relief. *Rexene*, 141 B.R. at 577 (citation omitted).

46. Bankruptcy Courts in the District of Delaware apply a three-pronged balancing test to determine whether "cause" exists: (1) whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit; (2) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor, and (3) whether the creditor has a probability of prevailing on the merits. *In re Tribune Company*, 418 B.R. 116, 126 (Bankr. D. Del. 2009); *Izzarelli v. Rexene Products Co. (In re Rexene Products Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992).

47. On the specific question of whether to grant relief from stay to conclude litigation in another forum, the court in *SCO Group* quoted from Section 362(d)(1)'s legislative history:

> It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from duties that may be handled elsewhere." H.R.Rep. No. 595, 95th Cong., 1st Sess., 341 (1977), U.S.Code & Admin. News 1978, pp. 5787, 5297. Most courts follow this logic and apply an equitable balancing test to determine if cause exists to lift the stay to allow pending litigation to proceed or continue in another forum.

*SCO Group*, 395 B.R. at 856. *See also Tribune*, 418 B.R. at 126.

48. Allcare meets all three of the Rexene factors. With regard to the first two prongs, the Debtor has chosen to continue to pursue the litigation in New York. With the Davidoff firm already approved by this Court as an ordinary course professional and a carveout from cash collateral, there is little prejudice to Landauer in going forward in the litigation. In contrast, the hardship suffered by not allowing Allcare to litigate unfettered by worries of stay violations greatly outweighs any hardship to Landauer. The claims and counterclaims are so intertwined that it would be inequitable to allow Landauer to pursue its counterclaims while using the automatic stay as a sword to put Allcare at a serious disadvantage. Finally, with regard to the third prong, the only way for Landauer to have executed its Agreements with RiteCare and

Medstar contemporaneous to the expiration of the Exclusivity Agreement, was if it breached the exclusivity provisions thereof while they were still in effect. Accordingly, Allcare meets the third prong of the test because "even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *In re Continental Airlines, Inc.*, 152 B.R. 420, 426 (D. Del. 1993).

49. Granting relief to allow the continuation of litigation is noted to be an appropriate way to conserve judicial resources. *See In re Pro Football Weekly, Inc.*, 60 B.R. 824 (N.D. Ill. 1986). Allcare's claim will have to be liquidated and there is already a forum where issues have been presented. Further, since the same issues will be litigated against the other two non-debtor defendants in the Pending New York Lawsuit whose claims are not stayed, it makes sense to use the same forum for all claims against Debtor and non-debtor alike. For all of the above reasons, the stay should be lifted.

50. To the extent that Allcare's claims against Landauer do not arise out of the same transaction for purposes of recoupment, Allcare is entitled to setoff its claims against Landauer's.

### *To The Extent Allcare's Claims Are Claims Of Setoff, Rather Than Recoupment, Allcare Should Be Entitled to Relief from the Automatic Stay For "Cause"*

51. Setoff is present between these parties. *See Matter of Bevill, Bresler & Schulman Asset Management Corp.*, 896 F.2d 54, 57 (3d Cir. 1990) ("Setoff, as a federal bankruptcy law concept, applies when a debtor and a creditor have mutual prepetition claims against one another."); *In re APF Co.*, 274 B.R. 408, 421 (Bankr. D.Del. 2001) (setoff applies where a debtor and a creditor hold mutual, valid and enforceable pre-petition claims against each other). "To exercise the right of setoff, there must be mutuality between the parties, that is the estate must seek to setoff a debt it owes to the creditor against a debt the creditor owes to the estate." *In re Women First Healthcare*, 345 B.R. 131, 134- 35 (Bankr. D. Del. 2006). Both parties' claims

were incurred pre-petition and are between the same parties. Therefore, the requisite mutuality exists for setoff. Based upon the existence of Allcare's valid setoff claims, Allcare has established its prima facie case for "cause" under Section 362(d)(1).

52. "Courts have generally concluded that the existence of mutual obligations subject to setoff constitutes sufficient cause to meet the creditor's initial evidentiary burden in seeking relief from the automatic stay." *In re Nuclear Imaging Systems, Inc.*, 260 B.R. 724, 730 (Bankr. E.D. Pa. 2000); *In re Flanagan Bros., Inc.*, 47 B.R. 299, 303 (Bankr. D.N.J. 1985); *see also In re Whitaker*, 173 B.R. 359, 361 (Bankr. S.D. Ohio 1994) ("By establishing its right to setoff under 11 U.S.C. § 553(a) a creditor makes a prima facie showing of 'cause' for relief from stay under 11 U.S.C. § 362(d)(1)").

53. Accordingly, to the extent Allcare's claims are not in the nature of recoupment, but of setoff, Allcare seeks relief from the automatic stay to assert such claims.

### *Liquidation Of Allcare's Claims In the Pending New York Lawsuit*

54. As mentioned *In re SCO Group*: "the relief from the stay may be granted 'when necessary to permit litigation to be concluded in another forum, particularly if the nonbankruptcy suit involves multiple parties or is ready for trial.' Moreover, as noted above, the legislative history of section 362(d)(1) emphasizes the importance of allowing a case to continue in the original tribunal so long as there is no prejudice to the estate." *In re SCO Grp., Inc.*, 395 B.R. 852, 857 (Bankr. D. Del. 2007) (citations omitted).

55. Allcare seeks only to liquidate, as opposed to collect, its claim via the Pending New York Lawsuit to the extent said claim exceeds its claim for recoupment or setoff. *See In re Tricare Rehabilitation Systems, Inc.*, 181 B.R. 569, 578 (Bankr. N.D. Ala. 1994) (lifting the stay to liquidate, as opposed to collect); *In re Metzner*, 167 B.R. 414, 416 (E.D. La. 1994) (same). As

a result, there will be no effect on estate property as a result of allowing Allcare to proceed to liquidate its claim.

56. Judicial economy would be served by requiring the liquidation of Allcare's claim in the Pending New York Lawsuit forum. "[O]ne of the primary purposes in granting relief from the stay to permit claim liquidation is to economize judicial resources." *In re Peterson*, 116 B.R. 247, 250 (D. Colo. 1990). Already much litigation has been accomplished through the various pleadings filed, argued and decided by that Court. Here judicial economy would be served by lifting the automatic stay and allowing Allcare's claims to be efficiently liquidated in the forum where they are presently postured to be adjudicated.

57. Importantly, one of Allcare's main defenses to Debtor's claims is that Debtor breached its obligations pursuant to the integrated agreements governing the transaction and therefore Allcare is relieved from its obligations under same. These same breaches are the basis of Allcare's claims. Because Allcare will have to prove its affirmative "breach" claim against the Debtor as part of both its defense and its affirmative claims, it would be prudent and serve judicial economy that the stay be lifted so that Allcare be able to litigate all the issues at the same time.

### *Potential Plan or Discharge Injunction Exception*

58. To the extent that this Court grants this Motion prior to the effective date of any plan of liquidation and to the extent that injunctions are approved in such plan which upon the its effective date would subsequently enjoin Allcare from continuing to assert its defenses or the liquidate its claims in the Pending New York Lawsuit, Allcare seeks authority by this Motion to except Allcare from any such injunctions. *See*, *e.g.* In re McCulloch, 12-20084, 2013 WL 5592880 (Bankr. S.D. Tex. Oct. 10, 2013) ("If a discharge is granted, the injunction 11 U.S.C.

§524 replaces the automatic stay upon discharge. Even if the Stay is lifted during the case, the discharge injunction begins at discharge and is unaffected by an order lifting the stay").

### REQUEST FOR WAIVER OF 14-DAY STAY

59. Pursuant to Fed.R.Bankr.P. 4001(a)(3), "[a]n order granting relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until after the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed.R.Bankr.P. 4001(a)(3). Allcare requests that this Court provide in any Order granting this Motion that the 14 day stay in Fed.R.Bankr.P. 4001(a)(3) shall not apply to the Order.

### NOTICE

60. Pursuant to Fed.R.Bankr.P. 4001(a)(1) and Del.Bankr.LR. 2002-1(b), counsel for Allcare has served a copy of this Motion upon (i) counsel for the Debtors, (ii) counsel for the creditors' committee, (iii) counsel for the lenders, (iv) the United States Trustee, and (v) all parties requesting notice pursuant to Fed.R.Bankr.P. 2002.

61. Allcare has not made any previous application for the relief requested in this Motion.

WHEREFORE, for all of the foregoing reasons, Allcare respectfully requests that this Court enter an Order (i) declaring that Allcare's claims in its complaint may be asserted as defenses to Landauer's counterclaims as claims of recoupment that are not subject to the automatic stay to the extent that such claims offset Allcare's potential liability or alternatively, (ii) granting Allcare relief from the automatic stay for "cause" pursuant to 11 U.S.C. § 362(d)(1) in order to continue the Pending New York Lawsuit and effectuate setoff of its claims; (iii) granting relief from the automatic stay to liquidate its claim to the extent in excess of its claims for recoupment and/or setoff; (iv) providing that the 14 day stay in Fed.R.Bankr.P. 4001(a)(3)

shall not apply to the Order, and (v) granting such further relief to Allcare as is appropriate.

Dated: December 24, 2013

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

/s/Gary D. Bressler
Gary D. Bressler, (DE 5544)
David P. Primack (No. 4449)
300 Delaware Avenue, Suite 770
Wilmington, DE  19801
Telephone:  (302) 300-4515
Facsimile:  (302) 654-4031
Email:  dprimack@mdmc-law.com

*Counsel to Passaic Healthcare Services, LLC, d/b/a Allcare Medical*

-and-

Of Counsel
Louis A. Modugno
McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
1300 Mount Kemble Avenue, P.O. Box 2075
Morristown, NJ  07962-2075
Telephone: (973) 993-8100
Facsimile: (973) 425-0161

*Counsel to Passaic Healthcare Services, LLC, d/b/a Allcare Medical*