## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - -  x

In re:                          :       Chapter 11

LANDAUER HEALTHCARE HOLDINGS,   :       Case No. 13-12098 (CSS)
INC., *et al.*,[1]

                            :       (Jointly Administered)

          Debtors.         :

                            :    **Ref. Nos. 13, 104, 107, 108, 143, 145, 146, 414, 415 and 417**

## ORDER (A) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; AND (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Upon the motion (the "Sale Motion") (Docket No. 13) of the above-captioned

debtors and debtors-in-possession (the "Debtors"), pursuant to sections 105(a), 363, and 365 of

chapter 11 of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.* as amended, the

"Bankruptcy Code"), and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and Rule 6004-1 of the Local Rules of Bankruptcy Practice

and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local

Bankruptcy Rules"), for (I) Entry of an Order (A) Establishing Bidding and Auction Procedures

Related to the Sale of Substantially All of the Debtors' Assets; (B) Establishing Procedures for

Approval of Related Bid Protections; (C) Scheduling an Auction and Sale Hearing;

(D) Establishing Notice Procedures for Determining Cure Amounts for Executory Contracts and

Leases to Be Assigned; and (E) Granting Certain Related Relief; and (II) Entry of an Order

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are Landauer Healthcare Holdings, Inc. (9115), Landauer-Metropolitan, Inc. (9291), Miller Medical & Respiratory, Inc. (3261), C.O.P.D. Services, Inc. (0336), American Homecare Supply New York, LLC (7937), American Homecare Supply Mid-Atlantic LLC (0026), Denmark's, LLC (4588); and, Genox Homecare, LLC (7361). The Debtors' corporate headquarters and the mailing address for each Debtor is One Bradford Road, Mount Vernon, NY 10553.

(A) Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; and (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and this Bankruptcy Court having entered an Order (A) Establishing Bidding and Auction Procedures Related to the Sale of Substantially All of the Debtors' Assets; (B) Establishing Procedures for Approval of Related Bid Protections; (C) Scheduling an Auction and Sale Hearing for the Sale of the Debtors' Assets; (D) Establishing Certain Notice Procedures for Determining Cure Amounts for Executory Contracts and Leases To Be Assigned; and (E) Granting Certain Related Relief (the "Bid Procedures Order") (Docket No. 143) based on the evidence presented at the hearing held on September 12, 2013 (the "Procedures Hearing"), and an auction having been scheduled for September 24, 2013 (the "Auction") for the consideration of Qualified Bids and the selection of a Successful Bidder, and LMI DME Holdings, LLC (the "Purchaser") having submitted the only Qualified Bid by the Bid Deadline and having been selected as the Successful Bidder at the time and place scheduled for the Auction; and upon the Purchaser and the Debtors having entered into that certain Asset Purchase Agreement, dated as of August 16, 2013, as amended by Amendment No. 1 to the Asset Purchase Agreement, dated as of January 6, 2013, (attached hereto as **Exhibit A**, as may be further amended, supplemented or restated, collectively, the "Purchase Agreement"),[2] pursuant to which the Purchaser shall acquire the Purchased Assets; and the Bankruptcy Court having conducted a hearing on the Sale Motion on January 6, 2014 (the "Sale Approval Hearing"), at which time all interested parties were offered an opportunity to be heard regarding the Sale Motion, the Purchase Agreement, and the Transactions (defined below); and the Bankruptcy Court having reviewed and considered the Sale Motion, the Purchase Agreement

---

[2]      Terms not defined herein shall have the meanings ascribed to them in the Purchase Agreement.

and the Bid Procedures Order, and all objections thereto (such filed objections, if any, the "Filed

Objections"), and the arguments of counsel made, and the evidence adduced, at the Procedures

Hearing and the Sale Approval Hearing; and upon the record of the Procedures Hearing and the

Sale Approval Hearing, and these chapter 11 cases and proceedings, and after due deliberation

thereon, and good cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.    **Jurisdiction and Venue**.  The Bankruptcy Court has jurisdiction over the Sale

Motion and the transactions contemplated therein (the "Transactions"), including, but not limited

to, the sale of the Purchased Assets free and clear of all Liens, claims, encumbrances and

interests.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and the Sale

Motion in this District and in this Bankruptcy Court is proper under 28 U.S.C. §§ 1408 and 1409.

B.    **Statutory Predicates**.  The statutory predicates for the relief sought in the Sale

Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004,

and 6006 and Local Bankruptcy Rule 6004-1.

C.    **Sale Notice**.  As evidenced by the affidavits of service filed with this Bankruptcy

Court and based upon the representations of counsel at the Sale Approval Hearing and as

approved under the Bid Procedures Order:  (i) due, proper, timely, adequate and sufficient notice

of the Sale Motion, the Auction, the Sale Approval Hearing, the Transactions contemplated

therein and the deadline for objecting to the same has been provided to all parties in interest; (ii)

such notice was and is good, sufficient, and appropriate under the circumstances and was

provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as
findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052. All findings and conclusions of law announced by
the Bankruptcy Court at the Sale Approval Hearing in relation to the Sale Motion are hereby incorporated to the
extent not inconsistent herewith.

Rules 2002, 6004, 6006, 9006, 9007, and 9014, and the applicable Local Bankruptcy Rules; and (iii) no other or further notice of the Sale Motion, the Auction, the Sale Approval Hearing, the Purchase Agreement, the Transactions contemplated therein, the deadline for objecting to the same or of the entry of this Sale Order is necessary or shall be required.

D. **Cure Notice**. In accordance with the Bid Procedures Order, the Debtors filed with this Bankruptcy Court a notice dated December 16, 2013 (Docket No. 415) identifying all Contracts, Real Property Leases, Personal Property Leases and Intellectual Property Licences (the "Purchased Contracts") that may be assumed and assigned in connection with the sale of the Purchased Assets and the related Cure Amounts for each such Purchased Contract (as amended, modified or otherwise supplemented from time to time, the "Cure Notice"), and served the Cure Notice on all non-Debtor counterparties to the Purchased Contracts identified therein. The service and provision of the Cure Notice was good, sufficient, and appropriate under the circumstances and no other or further notice need be given in connection with the assumption and assignment of the Purchased Contract and the establishment of Cure Amounts for such Purchased Contracts.

E. **Opportunity to Object**. A reasonable opportunity to object and to be heard with respect to the sale of the Purchased Assets, the assumption and assignment of the Purchased Contracts and the determination of defaults and Cure Amounts related thereto, if any, the Sale Motion and the relief requested therein, the Auction, the Purchase Agreement, and the entry of this Sale Order has been given to all interested Persons and entities.

F. **Auction**. The sale process set forth in the Bid Procedures Order afforded a full and fair opportunity for any entity to make a higher or otherwise better offer to purchase the Purchased Assets. The sale process and Auction were conducted fairly and in good faith,

without collusion and in accordance with the Bid Procedures Order. Based upon the evidence proffered or adduced at the Sale Approval Hearing and the representations of counsel made on the record at the Sale Approval Hearing, all potential bidders have been afforded a full, fair, and reasonable opportunity to submit bids for the Purchased Assets and participate in the Auction.

The Debtors and their professionals adequately marketed the Purchased Assets to all potential purchasers in accordance with the Bid Procedures Order. The Purchaser submitted the only Qualified Bid by the Bid Deadline. At the Auction, the Purchaser was selected as the Successful Bidder. The Purchase Agreement constitutes the highest and best offer for the Purchased Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Purchase Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment. The Purchaser is the Successful Bidder for the Purchased Assets in accordance with the Bid Procedures Order. The Purchaser has complied in all respects with the Bid Procedures Order and the Purchase Agreement, and any other applicable order of this Bankruptcy Court in negotiating and entering into the Purchase Agreement and in obtaining a return of its deposit pursuant to the terms of the Purchase Agreement and any agreements entered into in connection therewith, and the sale and the Purchase Agreement likewise comply with the Bid Procedures Order and any other applicable order of this Bankruptcy Court.

G.     **Satisfaction of Section 363(b) Standards**. The Debtors have demonstrated both (i) good, sufficient, and sound business purposes and justifications and (ii) compelling circumstances to consummate the Transactions contemplated by the Purchase Agreement outside the ordinary course of business under section 363(b) of the Bankruptcy Code, and before, and

outside of, a plan of reorganization, and such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates, and their creditors. Such business reasons include, but are not limited to, the fact that: (a) the Transactions contemplated by the Purchase Agreement present the best opportunity to realize the value of the Debtors on a going concern basis and to avoid decline and devaluation of the Debtors' businesses; (b) the Purchase Agreement constitutes the highest or best offer for the Purchased Assets; and (c) unless the sale is concluded expeditiously as provided for in the Sale Motion and pursuant to the Purchase Agreement, creditor recoveries may be substantially diminished. Time is of the essence in consummating the Transactions. Entry of this Sale Order approving the Purchase Agreement and all provisions thereof is a necessary condition precedent to the Purchaser consummating the Transactions.

No other Person or entity or group of Persons or entities has offered to purchase the Purchased Assets for an amount that would give equal or greater economic value to the Debtors than the value provided by the Purchaser pursuant to the Purchase Agreement. The Transactions are the best alternative available to the Debtors to maximize the return to their creditors and limit the losses to counterparties to the Purchased Contracts. No alternative to the Transactions exists that would provide a greater value to the Debtors, their creditors, or other parties in interest.

The sale and assignment of the Purchased Assets outside of a plan of reorganization pursuant to the Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of the Debtors' subsequent chapter 11 plan. Neither the Purchase Agreement nor the Transactions contemplated thereby constitute a *sub rosa* chapter 11 plan.

The sale of the Purchased Assets is consistent with the Debtors' policy concerning the transfer of personally identifiable information and the Debtors have, to the extent necessary, satisfied the requirements of section 363(b)(1) of the Bankruptcy Code. Accordingly, appointment of a consumer privacy ombudsman pursuant to sections 363(b)(1) or 332 of the Bankruptcy Code is not required with respect to the relief requested in the Sale Motion.

H.    **Valid and Binding Contract**.    The Purchase Agreement and the Ancillary Documents (defined below) are valid and binding contracts between the Debtors and the Purchaser and shall be enforceable pursuant to their terms. The Purchase Agreement, the Ancillary Documents, and the consummation thereof, and the Transactions themselves are specifically enforceable against and binding upon, and are not subject to rejection or avoidance by, the Debtors, any chapter 7 or chapter 11 trustee appointed in these chapter 11 cases, or any other Person or entity.

I.    **Sale Order Required by the Purchaser**.    Entry of this Sale Order approving the Purchase Agreement, and all the provisions thereof, on the terms requested in the Sale Motion and set forth in the form and substance of this Sale Order, is a necessary and appropriate condition precedent to the Purchaser's consummation of the Transactions. The Debtors' ability to obtain the consideration and accommodations extended to them by the Purchaser under the Purchase Agreement is vital to the Debtors' estates and their creditors, so that the Debtors may maximize the value for their estates and their creditors. The Debtors and their estates have benefited, and will continue to benefit, from the consideration and accommodations provided and to be provided under the Purchase Agreement. Without the relief contained in this Sale Order, the Debtors' estates will be immediately and irreparably harmed. Immediate approval of the Purchase Agreement and the sale of the Purchased Assets in accordance with the Purchase

Agreement is justified pursuant to sections 363 and 365 of the Bankruptcy Code.

J.      **Consideration**.  The total consideration provided by the Purchaser, upon the terms and conditions set forth in the Purchase Agreement (including the form and total consideration to be realized by the Debtors pursuant to the Purchase Agreement), is the highest and best offer received by the Debtors and constitutes fair value, fair, full, and adequate consideration, reasonably equivalent value and reasonable market value for the Purchased Assets for purposes of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and the other laws of the United States, any state, territory, or possession thereof, or the District of Columbia.

K.      **Arm's Length**.  The sale process conducted by the Debtors was at arms' length, non-collusive, in good faith, in compliance with the bidding procedures in the Bid Procedures Order, and substantively and procedurally fair to all parties.  The Purchase Agreement and the documents and instruments identified therein or related to and connected with the Transactions (collectively, the "Ancillary Documents") and the consummation thereof have been negotiated, proposed, and entered into by the Debtors and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions.  Neither the Purchaser, nor any of its Affiliates, officers, directors, members, partners, principals, or shareholders (or equivalent) or any of their respective representatives, successors, or assigns is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

Neither the Debtors, the Purchaser, nor any of their respective Affiliates, officers, directors, members, partners, principals, or shareholders (or equivalent), nor any of their respective representatives, successors, or assigns has engaged in any conduct that would cause or permit the Purchase Agreement or the Ancillary Documents and the consummation thereof to be

avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner with any Person or entity. The terms and conditions of the Purchase Agreement and the Ancillary Documents and the consummation thereof, and the Transactions themselves, including without limitation the consideration provided in respect thereof, are fair and reasonable, and the Transactions are not avoidable and shall not be avoided under section 363(n) of the Bankruptcy Code.

L.    **Good Faith Purchaser**.  The Purchaser and its Affiliates, officers, directors, members, partners, principals, shareholders (or equivalent), and any of their respective representatives, successors, or assigns have complied in all respects with the Bid Procedures Order and have proceeded in good faith and without collusion in any respect in connection with this proceeding. The Purchase Agreement and the Transactions contemplated thereby have been negotiated, proposed, and entered into by and between the Purchaser and the Debtors in good faith, at arms' length and without collusion or fraud. The Purchaser and its Affiliates, officers, directors, members, partners, principals, shareholders (or equivalent), and any of their respective representatives, successors or assigns are therefore entitled to all of the benefits and protections under section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transactions shall not affect the validity of the Transactions (including, without limitation, the Ancillary Documents). Neither the Debtors nor the Purchaser have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code to the Purchase Agreement and the Ancillary Documents or to the consummation of the Transactions contemplated thereby. No stay pending appeal of this Sale Order has been requested, and the stay contained in Bankruptcy Rule 6004(h) has been and hereby is expressly and irrevocably waived as set forth below.

M.    **Purchased Assets**.    The Purchased Assets constitute property of the selling Debtors' estates and title thereto is vested in the selling Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  The selling Debtors have all right, title, and interest in the Purchased Assets required to transfer and to convey the Purchased Assets to the Purchaser as contemplated by the Purchase Agreement.

N.    **Corporate Authority**.    Subject to the entry of this Sale Order, the Debtors (i) have full corporate power and authority to perform all of their obligations under the Purchase Agreement and the Ancillary Documents, and the Debtors' prior execution and delivery of, and performance of obligations under, the Purchase Agreement and the Ancillary Documents is hereby ratified, (ii) have all of the corporate power and authority necessary to consummate the Transactions, (iii) have taken all corporate action necessary to authorize, approve, execute and deliver the Purchase Agreement and the Ancillary Documents and to consummate the Transactions themselves, and (iv) no consents or approvals are required to consummate the Transactions or otherwise perform the obligations under the Purchase Agreement or the Ancillary Documents, except for the closing conditions expressly agreed to therein.

O.    **Cure/Adequate Assurance**.    The process for assuming and assigning the Purchased Contracts is integral to the Purchase Agreement, does not constitute unfair discrimination, and is in the best interests of the Debtors and their estates and creditors, and all other parties in interest, and is based on the reasonable exercise of sound and prudent business judgment by the Debtors.  The Purchaser will have as of the assumption and assignment of any Purchased Contracts:  (i) to the extent necessary, cured or provided for the cure of any default that existed prior to the Closing with respect to the Purchased Contracts and (ii) to the extent necessary, provided compensation to any party for any actual pecuniary loss to such party

resulting from a default that existed prior to the Closing with respect to the Purchased Contracts, all within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code; provided, however, it is a condition precedent to the Purchaser's obligation to close the Transactions pursuant to the terms of the Purchase Agreement that the total aggregate sum of any Cure Amounts and/or Transfer Taxes paid by Purchaser not exceed $750,000.00 in the aggregate.  The Purchaser's promise to perform the obligations under the Purchased Contracts arising after their assumption and assignment to the Purchaser shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the counterparties to such Purchased Contracts.  Any objections to any Cure Amounts or defaults under any of the Purchased Contracts or the assumption and assignment of any of the Purchased Contracts by the Debtors to the Purchaser, including, without limitation, the Filed Objections, are hereby overruled, withdrawn, or otherwise treated as set forth in paragraph 2 below.

P.    **Anti-Assignment Provisions Unenforceable**.  Pursuant to section 365(f) of the Bankruptcy Code, the Purchased Contracts to be assumed and assigned under the Purchase Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchaser notwithstanding any provision in those contracts or other restrictions prohibiting their assignment or transfer.  No section of any of the Purchased Contracts which purports to prohibit, restrict, or condition the use, assumption or assignment of any of the Purchased Contracts in connection with the Transactions shall have any force or effect.  The entry of this Order constitutes the consent of the non-Debtor parties to the Purchased Contracts to the assumption and assignment of such agreements.  The Purchased Contracts shall remain in full force and effect, without existing default(s), subject only to payment of the appropriate Cure

Amount, if any, by the Purchaser; provided, however, it is a condition precedent to the Purchaser's obligation to close the Transactions pursuant to the terms of the Purchase Agreement that the total aggregate sum of any Cure Amounts and/or Transfer Taxes paid by Purchaser not exceed $750,000.00 in the aggregate.

Q.      **Contract and Lease Assignments in Best Interests**.   The Debtors have demonstrated that assuming and assigning the Purchased Contracts to the Purchaser in connection with the Transactions is an exercise of their sound business judgment, and that such assumption and assignment is in the best interests of the Debtors' estates for the reasons set forth in the Sale Motion and on the record at the Sale Approval Hearing, including, without limitation, because the assumption and assignment of the Purchased Contracts in connection with the Transactions will limit the losses of counterparties to the Purchased Contracts and maximize the distribution to creditors of the Debtors.   Accordingly, such assumption and assignment is reasonable, enhances the value of the Debtors' estates and does not constitute unfair discrimination.

R.      **Free and Clear**.  The transfer of the Purchased Assets to the Purchaser under the Purchase Agreement will be a legal, valid, enforceable, and effective sale and transfer, and will vest the Purchaser with all legal, equitable, and beneficial right, title, and interest in and to the Purchased Assets free and clear of all Liens, claims, encumbrances, obligations, liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights of first refusal, rights of setoff or recoupment, or interests of any kind or nature (including, without limitation, all "claims" within the meaning of section 101(5) of the Bankruptcy Code) (collectively, "Interests"), other than the Permitted Exceptions, whether known or unknown, legal or equitable, matured or unmatured,

contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to: (i) those Interests that purport to give to any party a right or option to effect a setoff against or any forfeiture, modification, or termination of the Debtors' interests in the Purchased Assets, or any similar rights, if any; (ii) those Interests arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, hypothecations, liens, judgments, demands, encumbrances, rights of first refusal, or charges of any kind or nature, if any; (iii) those Interests that are Excluded Liabilities as set forth in the Purchase Agreement; (iv) those Interests arising in connection with any agreements, acts, or failures to act of any of the Debtors or any of the Debtors' predecessors, Affiliates, or representatives including, but not limited to, Interests arising under any doctrines of successor liability, *de facto* merger, substantial continuity or similar theories under applicable state or federal law or otherwise and (v) any claim by a relator or the United States in a qui tam action asserted under the False Claims Act (31 U.S.C. §§ 3729 *et seq.* as amended, the "FCA") against the Debtors. For the avoidance of doubt, without limiting the effect of the foregoing, the assumption and assignment by the Debtors of the Purchased Contracts is free and clear of all Interests, other than the Permitted Exceptions, and all such Interests shall attach to the consideration to be received by the Debtors from the Purchaser in the same priority and subject to the same defenses and avoidability, if any, as of the date hereof. The transfer of the Purchased Assets to the Purchaser will vest the Purchaser with good and marketable title to the Purchased Assets.

S. **Free and Clear Findings Required by the Purchaser**. The Purchaser would not have entered into the Purchase Agreement and would not consummate the Transactions, thus

adversely affecting the Debtors, their estates and their creditors, if the sale of the Purchased Assets to the Purchaser, and the assumption and assignment by the Debtors of the Purchased Contracts to the Purchaser, were not free and clear of all Interests, other than the Permitted Exceptions, of any kind or nature whatsoever, as set forth in this Sale Order, or if the Purchaser would, or in the future could, be liable for any of the Interests. A sale of the Purchased Assets other than one free and clear of all Interests would adversely impact the Debtors' estates, and would yield substantially less value for the Debtors' estates, with less certainty than the sale contemplated by the Purchase Agreement. Therefore, the sale contemplated by the Purchase Agreement is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

     T.     **Satisfaction of Section 363(f) Standards**. The Debtors may sell the Purchased Assets free and clear of any Interests of any kind or nature whatsoever because one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied. Those holders of Interests who did not object to or withdrew their objections to the Sale Motion, the sale of the Purchased Assets, the Transactions, or the Cure Notice are deemed to have consented to the Sale Motion, the sale of the Purchased Assets, the Transactions, and the assumption and assignment of the Purchased Contracts to the Purchaser pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Interests who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Interests attach to the proceeds ultimately attributable to the Purchased Assets against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force, and effect, and in the same order of priority, that such Interests have against such Purchased Assets or their proceeds as of the Closing, subject to any rights, claims, and defenses

the Debtors or their estates, as applicable, may possess with respect thereto.

U.    **No Fraudulent Transfer**.  The Purchase Agreement was not entered into, and the Transactions will not be consummated, for the purpose of hindering, delaying, or defrauding the Debtors' present or future creditors for purposes of the Bankruptcy Code, or the other laws of the United States, of the laws of any state, territory, or possession thereof, or the District of Columbia.  None of the Debtors nor the Purchaser are or will be entering into the Transactions fraudulently or for an otherwise improper purpose.  The consideration that is set forth in the Purchase Agreement is at least reasonably equivalent value for the Purchased Assets and for the Transactions.

V.    **No Successor Liability**.  The Purchaser and its Affiliates and their respective successors, assigns members, partners, principals, and shareholders (or equivalent) shall have no obligations with respect to any liabilities of the Debtors other than those liabilities expressly assumed under the Purchase Agreement (the "Assumed Liabilities").    The Transactions contemplated under the Purchase Agreement do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no common identity between the Debtors and the Purchaser, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or their estates, and the Purchaser does not constitute a successor to the Debtors or their estates.  Purchaser and its Affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) are not a successor to the Debtors or their estates by reason of any theory of law or equity with respect to any Interest against the Debtors or the Purchased Assets, including, without limitation and for the avoidance of doubt, any of the Debtors' liabilities

related to or arising under the FCA. Other than the Assumed Liabilities and Permitted Exceptions, the Purchaser and its Affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) shall have no obligations with respect to any liabilities of the Debtors, including, without limitation, the liabilities of the Debtors specifically excluded under the Agreement (the "Excluded Liabilities"), and the Debtors will release and forever discharge the Purchaser and its affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) from any and all claims, causes of action, obligations, liabilities, demands, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, assented or unassented, fixed or contingent, relating to the Transactions, and the sale and assignment of the Purchased Assets and the Purchased Contracts except for liabilities and obligations under the Purchase Agreement. The Bankruptcy Court finds that the Purchaser would not have acquired the Purchased Assets but for the foregoing protections against potential claims based upon "successor liability" theories.

W.    **Prompt Consummation**. The Transactions must be approved by the Bankruptcy Court and consummated promptly in order to preserve the viability of the business subject to the sale as a going concern, and to thereby maximize the value of the Debtors' estates, for the reasons set forth in the Sale Motion and on the record at the Sale Approval Hearing. For those reasons, time is of the essence in consummating the sale. Accordingly, there is cause to lift the stay established by Bankruptcy Rule 6004 with regards to the Transactions.

X.    **Sale in Best Interests**. The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for entry into the Purchase Agreement and consummation of the Transactions contemplated therein. The relief requested in the Sale Motion and set forth in this Sale Order is in the best interests of the Debtors, their respective creditors,

estates, and all other parties in interest in these chapter 11 cases.

**NOW, THEREFORE, IT IS ORDERED THAT:**[4]

1.    **Sale Motion Is Granted**.    The Sale Motion and the relief requested therein is **GRANTED** and **APPROVED** as set forth herein.

2.    **Objections Overruled**.    The Filed Objections and any other objections to, or reservation of rights regarding, the relief requested in the Sale Motion, the entry of this Sale Order, or the relief granted herein that have not been withdrawn, waived, or settled, or that have not otherwise been resolved pursuant to the terms hereof, or as set forth on the record at the Sale Approval Hearing, are hereby denied and overruled on the merits with prejudice.    All Persons and entities that failed to timely object, or withdrew their objections, to the Sale Motion or this Sale Order are deemed to consent to the relief granted herein for all purposes, including pursuant to section 363(f)(2) of the Bankruptcy Code, including, without limitation, all non-Debtor counterparties to the Purchased Contracts.    No appeal, motion to reconsider, or similar pleading has been filed with respect to the Bid Procedures Order, and the Bid Procedures Order is a final order of the Bankruptcy Court, has not been vacated, withdrawn, rescinded, or amended and remains in full force and effect.

3.    **Approval**.    The sale of the Purchased Assets to the Purchaser on the terms and conditions contemplated by the Purchase Agreement and the Ancillary Documents, including, without limitation, the Closing of the Transactions contemplated by the Purchase Agreement, is hereby approved in all respects pursuant to sections 105(a), 363(b) and (f), and 365 of the Bankruptcy Code.    Pursuant to sections 363 and 365 of the Bankruptcy Code, entry by

---

[4]    Conclusions of law shall be construed as findings of fact and findings of fact shall be construed as conclusions of law when appropriate.    *See* FED. R. BANKR. P. 7052.    All findings and conclusions of law announced by the Bankruptcy Court at the Sale Approval Hearing in relation to the Sale Motion are hereby incorporated to the extent not inconsistent herewith.

the Debtors into the Purchase Agreement is hereby authorized and approved as a valid exercise of the Debtors' business judgment. Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtors are authorized to continue performance under and make all payments required by the Purchase Agreement and the Ancillary Documents as and when due thereunder without further order of this Bankruptcy Court. The Debtors, the Purchaser, and each of their respective officers, employees, and agents are hereby authorized to: (i) execute the Purchase Agreement and the Ancillary Documents that may be reasonably necessary or appropriate to implement the Purchase Agreement, and any prior execution of such agreements, documents, and instruments, including the Ancillary Documents, is hereby ratified; (ii) perform all obligations under the Purchase Agreement and the Ancillary Documents and consummate each of the foregoing, including, but not limited to, deeds, assignments, and other instruments of transfer, and consummate the Transactions, and any prior performance of such obligations and any prior consummation of such Transactions is hereby ratified; (iii) assume and assign the Purchased Contracts to the Purchaser; and (iv) take all other and further actions as may be reasonably necessary to consummate and implement the Transactions and perform all obligations under the Purchase Agreement and the Ancillary Documents and the consummation thereof, without any further corporate action or orders of the Bankruptcy Court. The Purchaser shall not have any obligation to proceed with the Closing under the Purchase Agreement until all conditions precedent to its obligations to do so have been met, satisfied, or waived.

4.    **Valid Transfer**. As of the Closing, the consummation of the Transactions shall effect a legal, valid, enforceable, and effective sale and transfer of the Purchased Assets to the Purchaser, and shall vest the Purchaser with all legal, equitable, and beneficial right, title, and interest in and to the Purchased Assets free and clear of all Interests of any kind whatsoever,

except for Assumed Liabilities and Permitted Exceptions. The Purchase Agreement and the Ancillary Documents and the consummation thereof, and the Transactions themselves shall be specifically enforceable against and binding upon, and are not subject to rejection or avoidance by, the Debtors, the GUC Trust, any chapter 7 or chapter 11 trustee appointed in these chapter 11 cases, or any other Person or entity.

5.    **Free and Clear**.    Except as expressly provided for in the Purchase Agreement or this Sale Order, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Debtors are authorized and directed to transfer the Purchased Assets to the Purchaser and the Purchaser shall take title to and possession of the Purchased Assets, upon the Closing, free and clear of all Interests, other than the Permitted Exceptions, of any kind or nature whatsoever, with all such Interests to attach to the proceeds ultimately attributable to the Purchased Assets against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force, and effect, and in the same order of priority, that such Interests have against such Purchased Assets or their proceeds as of the Closing, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

6.    **Release of Interests**.    If any Person or entity that has filed financing statements, mortgages, mechanic's Liens, *lis pendens* or other documents or agreements evidencing Interests, other than the Permitted Exceptions, against or in the Purchased Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all Interests that the Person or entity has with respect to the Purchased Assets, then (i) the Debtors are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the Person or entity with respect to the Purchased Assets, (ii) the

Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests of any kind or nature against or in the Purchased Assets; and (iii) the Purchaser may seek in this Bankruptcy Court or any other court of appropriate jurisdiction to compel the appropriate parties to execute termination statements, instruments of satisfaction, and releases of all Interests with respect to the Purchased Assets (other than Assumed Liabilities and Permitted Exceptions). This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office. Notwithstanding the foregoing, the provisions of this Sale Order authorizing the sale and assignment of the Purchased Assets free and clear of Interests, other than Permitted Exceptions, shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.

7.    **Surrender of the Purchased Assets**. All Persons and entities that are in possession of any of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Purchaser at the Closing of the Transactions. All Persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Purchased Assets to the Purchaser in accordance with the terms of the Purchase Agreement and this Sale Order.

8.    **Continuation of Existing Approvals**. To the maximum extent permitted under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under

any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date. To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred, assigned, or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the Transactions.

9.    **Injunction**.  All Persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to transfer the Purchased Assets to the Purchaser in accordance with the Purchase Agreement and this Sale Order.  All Persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, creditors, contract counterparties, customers, landlords, licensors, employees, litigation claimants, and other persons holding or asserting Interests, other than the Permitted Exceptions, of any kind or nature whatsoever against or in the Debtors or the Purchased Assets (whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation of the Debtors' businesses before the Closing, or the transfer of the Debtors' interests in the Purchased Assets to the Purchaser, shall be and hereby are forever barred, estopped, and permanently enjoined from asserting, prosecuting, or

otherwise pursuing Interests against the Purchaser and its property, successors, or assigns, or any of its Affiliates, members, partners, principals, or shareholders (or equivalent), or the interests of the Debtors in such Purchased Assets. All entities that are in possession of some or all of the Purchased Assets are required and directed to surrender possession of such Purchased Assets to Purchaser. Following the Closing, no holder of an Interest against the Debtors, other than those holding a Permitted Exception, shall interfere with the Purchaser's title to or use and enjoyment of the Debtors' interests in the Purchased Assets.

10. **General Assignment**. As of the Closing, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets and/or a bill of sale or assignment transferring indefeasible title and interest in the Purchased Assets, including the Purchased Contracts, to the Purchaser. Each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Transactions and to reflect the effectiveness of the Transactions.

11. **No Successor or Transferee Liability**. The Purchaser and its Affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) are not and shall not be (a) deemed a "successor" in any respect to the Debtors or their estates as a result of the consummation of the Transactions contemplated by the Purchase Agreement or any other event occurring in the Debtors' chapter 11 cases under any theory of law or equity, including, without limitation and for the avoidance of doubt, any of the Debtors' liabilities related to or arising under the FCA, (b) deemed to have, *de facto* or otherwise, merged or consolidated with or into the Debtors or their estates, (c) deemed to have a common identity with the Debtors, (d) deemed to have a continuity of enterprise with the Debtors, or (e) deemed

to be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors. The Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability, liability or responsibility for any claim against the Debtors or against an insider of the Debtors, or similar liability except as otherwise expressly provided in the Purchase Agreement, and the Sale Motion contains sufficient notice of such limitation in accordance with Local Rule 6004-1.  The transfer of the Purchased Assets and the Purchased Contracts to the Purchaser under the Purchase Agreement shall not result in (i) the Purchaser and its Affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent), or the Purchased Assets, having any liability or responsibility for any claim against the Debtors or against an insider of the Debtors, (ii) the Purchaser and its affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent), or the Purchased Assets, having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interests or Excluded Liability or (iii) the Purchaser and its Affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent), or the Purchased Assets, having any liability or responsibility to the Debtors except as is expressly set forth in the Purchase Agreement.

　　　　12.　　　Without limiting the effect or scope of the foregoing, as of the Closing Date, the Purchaser and its Affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger or substantial continuity, whether known or

unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to, the Purchased Assets or the Purchased Contracts prior to the Closing and any of the Debtors' liabilities related to or arising under the FCA.

13.    **Good Faith of the Purchaser**.  The Transactions contemplated by the Purchase Agreement are undertaken by the Purchaser without collusion and in "good faith," as that term is defined in section 363(m) of the Bankruptcy Code.  The Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

14.    **Cure Notice**.    The Debtors have served all of the non-Debtor counterparties to the Purchased Contracts, by first class mail, with the Cure Notice listing (i) the possible assumption and assignment of such Purchased Contract to the Purchaser by the Debtors, (ii) the proposed Cure Amount related thereto and (iii) the deadline for objections and responses (any so filed objections, the "Cure Notice Objections") to the potential assumption and assignment of the Purchased Contracts (including Cure Amount objections and objections regarding adequate assurance of future performance by the Purchaser) and that all responses or objections shall be served on, among others, counsel to the Purchaser.

15.    **Cure Notice Objections Overruled**.  Any Cure Notice Objection that has not been withdrawn, waived, settled, otherwise resolved pursuant to the terms hereof or as stated on the record at the Sale Approval Hearing, or continued to a later hearing date by agreement of the parties, is hereby denied and overruled on the merits with prejudice.

16. **Determination of Cure Amounts**. The Cure Notice shall constitute findings of the Bankruptcy Court and shall be final and binding on parties to such Purchased Contracts and their successors and designees and shall not be subject to further dispute or audit based on performance prior to the time of assumption and assignment, irrespective of the terms and conditions of such Purchased Contracts. Cure Amounts shall otherwise be those (i) resolved by agreement of the parties pursuant to the terms hereof or as stated on the record at the Sale Approval Hearing or (ii) if a Cure Notice Objection was continued to a later hearing date, as determined by the Bankruptcy Court after such notice and a hearing. Each counterparty to a Purchased Contract, whether entered into before or after the Petition Date, is hereby forever barred, estopped, and permanently enjoined from (i) asserting against the Purchaser or its property (including, without limitation, the Purchased Assets) any default arising prior to or existing as of the Closing, or any counterclaim, defense, recoupment, setoff, or any other Interest asserted or assertable against the Debtors, and (ii) imposing or charging against the Purchaser or its Affiliates, any accelerations, assignment fees, increases, or any other fees or charges as a result of the Debtors' assumption and assignment to the Purchaser of the Purchased Contracts. To the extent a counterparty to any of the Purchased Contracts received the Cure Notice and failed to file a Cure Notice Objection by the stated deadline, such party shall be deemed to have (i) consented to the assumption and assignment of the applicable Purchased Contracts and the payment of the Cure Amount, if any, provided in the Cure Notice and (ii) waived any right to assert or collect any other cure amount or enforce any default that may arise or have arisen prior to or as of the Closing Date.

17. **Payment of Cure Amounts**. With respect to the Purchased Contracts, to the extent there are any Cure Amounts unpaid as of the Closing Date, the Purchaser shall be

obligated, and is hereby directed, to pay or cause to be paid such Cure Amounts in accordance with the terms of the Purchase Agreement. The Purchaser's promise to perform the obligations under the Purchased Contracts arising after their assumption and assignment to the Purchaser shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1) and 365(f)(2)(B) of the Bankruptcy Code. On the Closing Date, the Purchaser shall be deemed to be substituted for the Debtors as a party to the Purchased Contracts.

18. ***Ipso Facto* Clauses Ineffective**. Upon the Debtors' assumption and assignment of the Purchased Contracts to the Purchaser under the provisions of this Sale Order and the payment by the Purchaser of the Cure Amounts in accordance with this Sale Order and the Purchase Agreement, no default shall exist under any Purchased Contract and no counterparty to any such Purchased Contract shall be permitted to declare or enforce a default by the Debtors or the Purchaser thereunder or otherwise take action against the Purchaser as a result of any Debtors' financial condition, change in control, bankruptcy, or failure to perform any of its obligations under the relevant Purchased Contract. Any provision in a Purchased Contract that prohibits or conditions the assignment of such Purchased Contract (including without limitation, the granting of a Lien therein) or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment, constitutes an unenforceable anti-assignment provision that is void and of no force and effect. The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Purchased Contract shall not be a waiver of such terms or conditions or of the Debtors' or the Purchaser's right, as applicable, to enforce every term and condition of such Purchased Contract.

19. **Direction to Purchased Contracts Counterparties**. All counterparties

to the Purchased Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and shall not charge the Purchaser for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Transactions.

20.    **Binding Effect of Order**. This Sale Order shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other Persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.  The terms and provisions of the Purchase Agreement, the Ancillary Documents and the consummation thereof, the Transactions themselves, the Bid Procedures Order and this Sale Order shall be binding in all respects upon the Debtors, the Debtors' estates, the GUC Trust, all creditors thereof (whether known or unknown, now existing or hereafter arising), all holders of equity interests in any of the Debtors, the Purchaser, and its respective Affiliates, successors, and assigns, and any and all third parties, notwithstanding any subsequent appointment of any trustee of the Debtors under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

21.    **Release, Discharge, and Termination of Interests**.  This Sale Order shall be effective as a determination that, on the Closing, all Interests, other than Permitted Exceptions and Assumed Liabilities, of any kind or nature whatsoever existing prior to the

Closing have been unconditionally released, discharged, and terminated as to the Purchased Assets, and that the conveyances described herein have been effected.

22. **Proceeds**. Any and all valid and perfected Interests in the Purchased Assets of the Debtors shall attach to any proceeds of such Purchased Assets immediately upon receipt of such proceeds by the Debtors (or any party acting on any Debtors' behalf) in the order of priority, and with the same validity, force, and effect which they now have against such Purchased Assets.

23. **No Material Modifications**. The Purchase Agreement and the Ancillary Documents may be modified, amended, or supplemented by the Debtors and the Purchaser, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Bankruptcy Court; *provided, however*, that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates and has been agreed to between the Debtors and the Purchaser. Any material modification, amendment, or supplement to the Purchase Agreement and the Ancillary Documents must be approved by Order of the Bankruptcy Court following a motion on notice to all interested parties.

24. **Subsequent Orders and Plan Provisions**. Nothing contained in any subsequent order of this Bankruptcy Court or any court of competent jurisdiction in these chapter 11 cases (including, without limitation, an order authorizing the sale of the Purchased Assets pursuant to any section of the Bankruptcy Code or any order entered after any conversion of a chapter 11 case of the Debtors to a case under chapter 7 of the Bankruptcy Code) or any chapter 11 plan confirmed in any Debtors' bankruptcy cases or any order confirming any such plan shall nullify, alter, conflict with, or in any manner change the provisions of this Sale Order or the Purchase Agreement, and the provisions of this Sale Order and the Purchase Agreement shall

survive and remain in full force and effect.

25. **Failure to Specify Provisions**. The failure specifically to include any particular provisions of the Purchase Agreement or the Ancillary Documents in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Bankruptcy Court that the Transactions be authorized and approved in their entirety.

26. **Automatic Stay**. The automatic stay pursuant to section 362 is hereby lifted with respect to the Debtors to the extent necessary, without further order of this Bankruptcy Court, to (i) allow the Purchaser to deliver any notice provided for in the Purchase Agreement and Ancillary Documents and (ii) allow the Purchaser to take any and all actions permitted under the Purchase Agreement and Ancillary Documents in accordance with the terms and conditions thereof. Except to the extent specifically provided for in this Order, nothing in this Order shall modify, lift, or in any way effect the automatic stay pursuant to section 362 with respect to the Debtors, their estates or their property.

27. **Further Assurances**. From time to time, as and when requested by the Debtors or Purchaser, each party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Transactions, including, such actions as may be necessary to vest, perfect or confirm, or record or otherwise, in the Purchaser its right, title and interest in and to the Purchased Assets and the Purchased Contracts.

28. **Personally Identifiable Information**. The Sale may include the transfer of "personally identifiable information," as defined in section 101(41 A) of the Bankruptcy Code. Because the Purchaser is not a "covered entity" under the Health Insurance Portability

and Accountability Act ("HIPAA"), the Debtors may only transfer this information or other protected health information to the Purchaser for health care operations purposes on behalf of and for the benefit of the Purchaser's affiliated "covered entities," pursuant to a valid, HIPAA compliant Business Associate Agreement ("BAA").

29. **Resolution of Objections by the United States**. Notwithstanding anything else contained in the Purchase Agreement or this Order, (i) the Debtors are not, and shall not, assume and assign or otherwise transfer the Debtors' provider transaction access numbers or Centers for Medicare and Medicaid Services enrollment agreements to the Purchaser; (ii) the Debtors shall only be permitted to transfer contract No. VA528-12-D-0090 to the Purchaser or its designee upon approval and a written novation from the United States Department of Veterans Affairs and (iii) nothing shall affect the rights of the United States to assert recoupment rights, if any, and Debtors and Purchaser reserve all rights and defenses in connection with any and all assertions of alleged recoupment rights.

30. Solely to the extent provided by applicable law, the Purchased Assets shall be subject to any valid and enforceable right of set off in favor of the United States. The United States' exercise of any set off rights it may have, as provided for in this Order, or the implementation of any administrative freeze, are subject to the provisions of sections 362, 363(f) (to the extent applicable, as to which all parties' rights and arguments are preserved) and 553 of the Bankruptcy Code and prior entry of a further order of this Court.

31. The Debtors are hereby authorized and directed to enter into a HIPAA compliant BAA with the Purchaser. Notwithstanding anything contained in the Purchase Agreement or this Order, the Debtors shall not be permitted to transfer patient health information to the Purchaser until (i) the Debtors and the Purchaser have executed a BAA which provides for

the transfer of the protected health information for the sole purpose of health care operations for at least one of the Purchaser's affiliated "covered entities", as defined in HIPAA; and (ii) the Purchaser and such affiliated "covered entities" have executed a substantially similar BAA.

32.  **Resolution of Objections by the Allcare, Rocco and Burdi.**

Notwithstanding anything else contained ~~to the contrary~~ in the Purchase Agreement or this Order, solely to the extent provided by applicable law, (i) Passaic Healthcare Services, LLC d/b/a Allcare Medical ("Allcare"); (ii) Louis Rocco ("Rocco") and (iii) Saverio Burdi ("Burdi") shall retain the right to assert *all* valid and enforceable *defenses including without limitation,* recoupment and setoff rights, if any, and the Debtors, Purchaser, and GUC Trust reserve all rights and defenses in connection with any and all assertions of ~~alleged~~ *any such defense including* recoupment and setoff rights. Allcare's, Rocco's or Burdi's exercise of any setoff rights they may have, as provided for in this Order, are subject to the provisions of sections 362 and 553 of the Bankruptcy Code and prior entry of a further order of this Court.  *(See Insert 1)*

33.  **Resolution of Objection by Airgas USA, LLC.**  Notwithstanding anything in the Purchase Agreement to the contrary, the Purchased Assets shall not include any property owned by Airgas USA, LLC ("Airgas") and the Debtors shall make arrangements with Airgas for the return and/or removal of any Airgas property. From and after the Closing Date, the Purchaser shall not be permitted to use any Airgas property absent separate agreement between Airgas and the Purchaser.

**General Provisions**

34.  Notwithstanding the provisions of Bankruptcy Rule 6004 and Bankruptcy Rule 6006 or any applicable provisions of the Local Bankruptcy Rules, this Sale Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in such rules shall not apply to the Transactions and any actions provided in the Purchase Agreement or the Ancillary

## Insert 1

Nothing herein shall be a determination as to the applicability of section 362 of the Bankruptcy Code to said setoff rights, nor to Allcare's, Rocco's or Burdi's right to seek relief from the automatic stay; and (b) nothing shall effect Rocco's or Burdi's right to assert pre-petition rights of indemnification or to coverage under any of the Debtors' applicable directors' or officers' insurance coverage, if any.

Documents. Time is of the essence in closing the Transactions, and the Debtors and the Purchaser intend to close the Transactions as soon as practicable. Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing, or risk its appeal will be foreclosed as moot.

35.     The requirements set forth in Bankruptcy Rules 6003(b), 6004, and 6006 and Local Bankruptcy Rules 6004-1 and 9013-1 have been satisfied or otherwise deemed waived.

36.     This Sale Order is binding upon and inures to the benefit of any successors and assigns of the Debtors or the Purchaser, including any trustee appointed in any subsequent case of the Debtors under chapter 7 of the Bankruptcy Code, and the GUC Trust.

37.     This Sale Order, the Purchase Agreement, and the Ancillary Documents shall be binding in all respects upon all creditors of (whether known or unknown, now existing or hereafter arising), and holders of equity interests in, any Debtor, any holders of Interests in, against or on all or any portion of the Purchased Assets, all non-Debtor counterparties to the Purchased Contracts, all successors and assigns of the Purchaser, the Debtors and their Affiliates and subsidiaries, the GUC Trust and any subsequent trustees appointed in these chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code, and shall not be subject to rejection. Nothing contained in any chapter 11 plan confirmed in these chapter 11 cases, any order confirming any such chapter 11 plan or any order approving wind-down or dismissal of these chapter 11 cases or any subsequent chapter 7 cases shall conflict with or change the provisions of the Purchase Agreement, the Ancillary Documents, or this Sale Order.

38.     To the extent anything contained in this Sale Order conflicts with a provision in the Purchase Agreement, this Sale Order shall govern and control.

39.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

40.     This Bankruptcy Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order, the Purchase Agreement, the Ancillary Documents, all amendments thereto and any waivers or consents thereunder, and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Transactions.  This Bankruptcy Court retains jurisdiction to compel delivery of the Purchased Assets, to protect the Purchaser and its Purchased Assets, including the Purchased Assets against any Interests, and to enter orders, as appropriate, pursuant to sections 105(a), 363, or 365 (or other applicable provisions) of the Bankruptcy Code necessary to transfer the Purchased Assets and the Purchased Contracts to the Purchaser.

Dated:  January 6 , 2014
      Wilmington, Delaware

                                  THE HONORABLE CHRISTOPHER S. SONTCHI
                                  UNITED STATES BANKRUPTCY JUDGE