# EXHIBIT A

## Plan Blackline

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
               :

In re:                         :    Chapter 11
               :

LMI LEGACY HOLDINGS INC., *et al.*,[1]    :    Case No. 13-12098 (CSS)
               :

        Debtors.        :    (Jointly Administered)
               :


               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### JOINT PLAN OF LIQUIDATION OF
### LMI LEGACY HOLDINGS INC. AND ITS DEBTOR
### AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

K&L GATES LLP
John A. Bicks
599 Lexington Avenue
New York, New York 10022-6030
Telephone: (212) 536-3900
Facsimile: (212) 536-3901

and

Charles A. Dale III
Mackenzie L. Shea
One Lincoln Street
Boston, Massachusetts 02111
Telephone: (617) 261-3100
Facsimile: (617) 261-3175

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Michael R. Nestor (No. 3526)
Matthew B. Lunn (No. 4119)
Justin H. Rucki (No. 5304)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel to the Debtors and Debtors-in-Possession*

Dated: ~~February 28,~~ March 12, 2014

---

[1]    The Debtors in these Chapter 11 Cases along with the last four digits of each Debtor's federal tax identification number, are as follows: LMI Legacy Holdings Inc. (9115); LMI Legacy Holdings II Inc. (9291); LMI Legacy Holdings III Inc. (3261); LMI Legacy Holdings IV Inc. (0336); LMI Legacy Holdings I LLC (7937); LMI Legacy Holdings II LLC (0026); LMI Legacy Holdings III LLC (4588); and LMI Legacy Holdings IV LLC (7361). Following the sale of substantially all of the Debtors' assets, the Debtors assumed these new names and filed a motion seeking to change the case caption as set forth above, which motion was approved by ~~an order of the Bankruptcy Court~~ dated February 27, 2014 [Docket 604].

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF
TIME AND GOVERNING LAW ................................................................. 1

A.    Defined Terms ........................................................................... 1
B.    Rules of Interpretation .................................................... ~~12~~11
C.    Computation of Time ....................................................... ~~13~~12
D.    Governing Law .................................................................. ~~13~~12
E.    Reference to Monetary Figures ...................................... ~~13~~12
F.    Reference to the Debtors or the Liquidating Supervisor ... ~~13~~12

ARTICLE II ADMINISTRATIVE CLAIMS, AND PRIORITY TAX CLAIMS ........ ~~13~~12

A.    Administrative Claims ..................................................... ~~13~~12
B.    Priority Tax Claims .......................................................... ~~14~~13
C.    Statutory Fees .................................................................. ~~15~~14

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .. ~~15~~14

A.    Classification of Claims and Interests ............................ ~~15~~14
B.    Summary of Classification ............................................. 15
C.    Treatment of Claims and Interests ................................. ~~16~~15
D.    Special Provision Governing Claims that are Not Impaired .......... ~~18~~17
E.    Acceptance or Rejection of the Plan .............................. ~~18~~17
F.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the
Bankruptcy Code ............................................................. ~~18~~17
G.    Subordinated Claims ....................................................... 18

ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN ......................... 18

A.    Performance of Transition Services; Wind Down and Dissolution of
Debtors ............................................................................ ~~19~~18
B.    Sources of Consideration for Plan Distributions .......... ~~19~~18
C.    Cash on Hand .................................................................. ~~19~~18
D.    Corporate Existence ........................................................ ~~19~~18
E.    Vesting of Assets in the Debtors .................................... 19
F.    Vesting of Assets in the GUC Trust ............................... ~~20~~19
G.    Cancellation of Existing Securities ................................ ~~20~~19
H.    Corporate Action ............................................................. 20
I.    Directors and Officers of the Debtors; Appointment of Liquidating
Supervisor ....................................................................... ~~21~~20
J.    Exemption from Certain Taxes and Fees ........................ 20

01:15144907.2

BOS-3374872 v 2

K.         Insurance Policies ........................................................................... 21
KL.       Preservation of Causes of Action....................................................... 2221

ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES................................................................................................... 22

A.       Assumption and Rejection of Executory Contracts and Unexpired Leases ......... 22
B.       Claims Based on Rejection of Executory Contracts or Unexpired Leases....... 2322
C.       Insurance Policies ........................................................................... 2322
D.       Indemnification Obligations Regarding Prepetition Acts or Omissions.............. 23
E.       Reservation of Rights....................................................................... 23

ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS ........................................... 2423

A.       Timing and Calculation of Amounts to Be Distributed ................................... 2423
B.       Disbursing Agent ............................................................................ 2524
C.       Rights and Powers of Disbursing Agent.................................................. 2524
D.       Delivery of Distributions and Undeliverable or Unclaimed Distributions ....... 2524
E.       [Reserved].................................................................................... 2726
F.       Compliance with Tax Requirements....................................................... 2726
G.       Allocations ................................................................................... 2726
H.       No Postpetition Interest on Claims ....................................................... 2726
I.        No Penalty Claims .......................................................................... 2726
J.        Setoffs and Recoupment .................................................................. 2726
K.       Costs of Administering and Distributing the GUC Trust Assets..................... 2827
L.       Claims Paid or Payable by Third Parties ............................................... 2827

ARTICLE VII PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED
AND DISPUTED CLAIMS ........................................................................... 2928

A.       Allowance of Claims........................................................................ 2928
B.       Claims Administration Responsibilities .................................................. 2928
C.       Estimation of Claims........................................................................ 3029
D.       Adjustment to Claims Without Objection................................................ 3029
E.       Time to File Objections to Claims ........................................................ 3029
F.       Disallowance of Claims .................................................................... 3029
G.       Amendments to Claims..................................................................... 3130
H.       Alternative Claim Resolution Procedures............................................... 3130
I.        Tax Implications for Recipients of Distributions........................................ 3130
J.        No Levy ...................................................................................... 3130
K.       Offer of Judgment .......................................................................... 3130
L.       No Distributions Pending Allowance ..................................................... 3230
M.       Distributions After Allowance ............................................................. 3231

ARTICLE VIII SETTLEMENT, RELEASE, INJUNCTION AND RELATED
PROVISIONS ........................................................................................... 3231

A.       Compromise and Settlement of Claims, Interests and Controversies.............. 3231

01:15144907.2

BOS-3374872 v2

B.      Sole Recourse for Claims and Termination of Interests ................................... 3231
C.      Release of Liens....................................................................................... 3332
D.      Releases by the Debtors ......................................................................... 32
E.      Exculpation .............................................................................................. 33
EF.     Injunction ................................................................................................ 3433
FG.     Term of Injunctions or Stays.................................................................. 3534

ARTICLE IX CONDITIONS PRECEDENT TO CONFIRMATION AND
        CONSUMMATION OF THE PLAN .......................................................... 3534

A.      Conditions Precedent to Confirmation.................................................. 3534
B.      Conditions Precedent to the Effective Date .......................................... 35
C.      Waiver of Conditions.............................................................................. 3635
D.      Effect of Failure of Conditions .............................................................. 3635

ARTICLE X MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN...... 3635

A.      Modification and Amendments............................................................... 3635
B.      Effect of Confirmation on Modifications .............................................. 36
C.      Revocation or Withdrawal of Plan......................................................... 36

ARTICLE XI RETENTION OF JURISDICTION................................................... 3736

ARTICLE XII MISCELLANEOUS PROVISIONS ................................................ 3938

A.      Immediate Binding Effect....................................................................... 3938
B.      Additional Documents ............................................................................ 3938
C.      Statutory Committee and Cessation of Fee and Expense Payment ................. 3938
D.      Cooperation with the GUC Trust- Access to Documents...................... 39
E.      Reservation of Rights.............................................................................. 4039
F.      Successors and Assigns........................................................................... 4039
G.      Notices ..................................................................................................... 4039
H.      Entire Agreement .................................................................................... 4140
I.      Exhibits .................................................................................................... 4140
J.      Severability of Plan Provisions............................................................... 41
K.      Votes Solicited in Good Faith................................................................. 4241
L.      Closing of Chapter 11 Cases................................................................... 4241
M.      Conflicts................................................................................................... 4241

01:15144907.2

BOS-3374872 v2

## INTRODUCTION

LMI Legacy Holdings Inc., formerly ~~knew~~known as Landauer Healthcare Holdings, Inc. ("*LHH*") and its debtor affiliates, including LMI Legacy Holdings II Inc., formerly known as Landauer-Metropolitan, Inc., ("*LMI*") as debtors and debtors in possession (each, a "*Debtor*" and, collectively, the "*Debtors*"), propose this joint plan of ~~reorganization~~liquidation (the "*Plan*")[2] for the resolution of the Claims against and Interests in each of the Debtors pursuant to chapter 11 of the Bankruptcy Code.   This Plan constitutes a separate chapter 11 plan of ~~reorganization~~liquidation for each Debtor and, unless otherwise explained herein, the classifications and treatment of Claims and Interests apply to each individual Debtor.  Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information and projections of future operations, as well as a summary and description of this Plan.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

A.    *Defined Terms*

As used in this Plan, capitalized terms have the meanings ascribed to them below.

1.    "*Administrative Claim*" means any Claim against any Debtor or its Estate for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises) and (b) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of the Judicial Code.

2.    "*Administrative Claims Bar Dates*" means the applicable date by which all requests for payment of Administrative Claims (other than Claims pursuant to section 503(b)(9) of the Bankruptcy Code) must be Filed, which dates shall be: (i) November 26, 2013 for Administrative Claims arising from the Petition Date through and including October 21, 2013, and (ii) thirty (30) days after the Effective Date for Administrative Claims arising from October 22, 2013 through and including the Effective Date.

3.    "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

4.    "*Allowed*" means with respect to any Claim against any Debtor or its Estate (including any Administrative Claim) or portion thereof: (a) a Claim that is listed on the Debtors' Schedules, as such Schedule may be amended from time to time in accordance with Bankruptcy Rule 1009 prior to the closing of the Chapter 11 Cases, as neither disputed, contingent nor unliquidated and for which no contrary Proof of Claim has been Filed and as to which no objection

---

[2]    Capitalized terms used in the Plan and not otherwise defined shall have the meanings ascribed to such terms in Article I.A.

to allowance thereof, or action to reclassify, subordinate or otherwise limit recovery with respect thereto, shall have been interposed within such period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or Final Order of the Bankruptcy Court; (b) a Claim that is not a Disputed Claim or has been allowed by a Final Order; (c) a Claim that is allowed (i) pursuant to the terms of the Plan or (ii) in any stipulation that is approved by the Bankruptcy Court; and (d) a Claim as to which a Proof of Claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Deadline or action to reclassify, subordinate or otherwise limit recovery with respect thereto has been interposed within such time period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order.  Except for any Claim that is expressly Allowed herein, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed and for which no Proof of Claim has been Filed is not considered Allowed and shall be deemed expunged upon entry of the Confirmation Order.

5. *"Asset Purchase Agreement"* means that Asset Purchase Agreement, dated as of August 16, 2013, as amended by Amendment No. 1 to Asset Purchase Agreement, dated January 6, 2014, by and among the Debtors and LMI DME, and approved by the Sale Order.

6. ~~5.~~ *"Avoidance Actions"* means any and all Causes of Action to avoid or recover a transfer of property, or avoid an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code and any other applicable non-bankruptcy law, whether or not litigation has been commenced with respect to such Causes of Action as of the Effective Date.

7. ~~6.~~*"Bankruptcy Code"* means chapter 11 of title 11 of the United States Code.

8. ~~7.~~*"Bankruptcy Court"* means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of the reference under 28 U.S.C.§ 157, the United States District Court for the District of Delaware.

9. ~~8.~~*"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local and chambers rules of the Bankruptcy Court.

~~9.    "Burdi Employment Agreements" means the Employment Agreement and Non-Competition Agreement, by and between Saverio D. Burdi and Landauer-Metropolitan, Inc., both dated May 10, 1997, as amended, modified, and/or restated including on April 1, 1999, January 1, 2001, December 13, 2003, February 17, 2006, January 1, 2001, and June 16, 2009.~~

10. *"Business Day"* means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

11. *"Cash"* means cash and cash equivalents, including, but not limited to, bank deposits, wire funds, checks and legal tender of the United States of America or equivalents thereof.

12.    *"Cash Collateral Order"* means that Final Order (I) Authorizing Debtors to Use Cash Collateral and (II) Granting Adequate Protection [Docket No. 140], as extended, amended or modified.

~~13.    *"Cash Collateral Budget"* means that approved budget attached to the Cash Collateral Order, as such budget may have been amended from time to time.~~

13.    ~~14.~~ *"Causes of Action"* means any action, Claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, including, but not limited to, those causes of action listed on the Causes of Action List.  Causes of Action also include: (a) any right of setoff, counterclaim or recoupment and any claim for breaches of duties imposed by law or in equity; (b) the Avoidance Actions; (c) any Claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (d) any state law fraudulent transfer claim.

14.    *"Causes of Action List"* has the meaning ascribed to such term in the Asset Purchase Agreement.

15.    *"Chapter 11 Cases"* means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court under case number 13-12098 (CSS).

16.    *"Claim"* means any claim, as such term is defined in section 101(5) of the Bankruptcy Code.

17.    *"Claims Bar Date"* means the date or dates established by the Bankruptcy Court in the Claims Bar Date Order by which Proofs of Claim must be Filed.

18.    *"Claims Bar Date Order"* means the Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice, dated October 4, 2013 [Docket No. 230].

19.    *"Claims Objection Deadline"* means the later of (a) 180 days after the Effective Date or (b) such other period of limitation as may be fixed by an order of the Bankruptcy Court for objecting to Claims against the Debtors.

20.    *"Claims Register"* means the official register of Claims maintained by the Notice, Claims and Balloting Agent.

~~21.    *"Clairvest"* means, individually and collectively, Clairvest Equity Partners Limited Partnership, Clairvest Group, Inc. and Clairvest Acquisition LLC and each such entity's predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, former~~

~~or current directors and officers, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, accounts, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, each in its respective capacity as such; provided, however, that Clairvest shall not include the Secured Lender or its predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, former or current directors and officers, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accounts, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, each in its respective capacity as such.~~

21. ~~22.~~ *"Class"* means, pursuant to section 1122(a) of the Bankruptcy Code, a class of Claims against or Interests in the Debtors as set forth in Article III.

22. <u>*"CMS"* means the Centers for Medicare and Medicaid Services.</u>

23. *"Confirmation"* means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

24. *"Confirmation Date"* means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

25. *"Confirmation Hearing"* means the confirmation hearing held by the Bankruptcy Court pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

26. *"Confirmation Order"* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

27. *"Consummation"* means the occurrence of the Effective Date.

28. <u>*"Controlling Documents"* means, collectively, (i) the Asset Purchase Agreement; (ii) the Sale Order; (iii) the TSA; (iv) the TSA Order; (v) the Cash Collateral Order; (vi) the Settlement Agreement; (vii) the Settlement Agreement Order; and (vii) any ancillary or related documents or agreements executed in connection with the foregoing documents.</u>

29. ~~28.~~ *"Convenience Claim"* means (i) any General Unsecured Claim in the amount of $10,000 or less that the holder of such Claim has not affirmatively elected to be treated as <u>a</u> Class 3 Claim and (ii) each General Unsecured Claim in an amount greater than $10,000 that the holder of such Claim has affirmatively elected to reduce to the amount of $10,000 and have treated as a Class 2 Claim.

30. ~~29.~~ *"Creditors' Committee"* means the statutory committee of unsecured creditors appointed on August 26, 2013 by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as may be reconstituted from time to time.

31.    ~~30.~~ *"Cure Claim"* means any Claim against any of the Debtors based upon a Debtor's default under an Executory Contract or Unexpired Lease at the time such contract or lease was or is assumed by the Debtors pursuant to section 365 of the Bankruptcy Code.

32.    ~~31.~~ *"D&O Policy"* means any insurance policy issued with respect to acts, omissions, obligations, and liability of the Debtors' former or present officers and directors, including, without limitation, that certain ACE EXPRESS Private Company Management Indemnity Package (Policy No. G25017109 004).

33.    ~~32.~~ *"Debtor"* means one or more of the Debtors, as debtors and debtors in possession, each in its respective individual capacity as a debtor and debtor in possession in the Chapter 11 Cases, prior to the Effective Date, and the post-Effective Date Debtors after the Effective Date.

34.    ~~33.~~ *"Debtors"* means, collectively: LMI Legacy Holdings Inc., formerly known as Landauer Healthcare Holdings, Inc.; LMI Legacy Holdings II Inc., formerly known as Landauer-Metropolitan, Inc.; LMI Legacy Holdings III Inc., formerly known as Miller Medical & Respiratory, Inc.; LMI Legacy Holdings IV Inc., formerly known as C.O.P.D. Services, Inc.; LMI Legacy Holdings I LLC, formerly known as American Homecare Supply New York, LLC; LMI Legacy Holdings II LLC, formerly known as American Homecare Supply Mid-Atlantic LLC; LMI Legacy Holdings III LLC, formerly known as Denmark's, LLC; and LMI Legacy Holdings IV LLC, formerly known as Genox Homecare, LLC.

35.    ~~34.~~ *"Disbursing Agent"* means the Person or Persons selected by the Debtors to make or facilitate distributions contemplated under the Plan other than with respect to Allowed Class 2 Convenience Class Claims and Allowed Class 3 General Unsecured Claims.

36.    ~~35.~~ *"Disclosure Statement"* means the Disclosure Statement for this Joint Plan of Liquidation of Landauer Healthcare Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, as amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, and that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules and any other applicable law.

37.    ~~36.~~ *"Disputed"* means, any Claim against any Debtor that is (a) listed in the Schedules as disputed, contingent or unliquidated and for which a Proof of Claim has not been timely Filed, (b) disputed under the Plan, (c) subject, or potentially subject, to a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, (d) improperly asserted, by the untimely or otherwise improper filing of a Proof of Claim as required by order of the Bankruptcy Court, (e) objected to in whole or in part on or before the Claim Objection Deadline, (f) held by a party that is adverse to the Debtors in any litigation or contested matter pending at the time of the Distribution Date and as to which no Final Order resolving such litigation or contested matter has been entered, or (g) disallowed pursuant to section 502(d) of the Bankruptcy Code. A Claim that is Disputed as to its amount shall not be Allowed in any amount for purposes of distribution until it is no longer a Disputed Claim.

38.    ~~37.~~ "***Dissolution Date***" means the date upon which the Debtors are dissolved in accordance with this Plan.

39.    ~~38.~~ "***Distribution Date***" means, with respect to a Claim that is Allowed as of the Effective Date, the date that is as soon as practicable after the Effective Date.

40.    ~~39.~~ "***Distribution Record Date***" means the date that is the Confirmation Date.

41.    ~~40.~~ "***Effective Date***" means the date selected by the Debtors and the Creditors' Committee that is a Business Day after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date have been met or waived and (b) no stay of the Confirmation Order is in effect.

42.    ~~41.~~ "***Entity***" means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

43.    ~~42.~~ "***Estate***" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

44.    ~~43.~~ "***Exculpated Claim***" means any Cause of Action related to any act or omission derived from, based upon, related to or arising from (a) the Chapter 11 Cases, (b) formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement, the Plan, the Plan Supplement or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, or the Plan Supplement, (c) the filing of the Chapter 11 Cases, (d) any post-petition act taken or omitted to be taken in connection with the Chapter 11 Cases or the restructuring of the Debtors including without limitation the Sale, (e) the pursuit of Consummation, and (f) the administration and implementation of the Plan.

45.    ~~44.~~ "***Exculpated Party***" means each of: (a) the Debtors; and (b) the members of the Creditors' Committee in their respective capacities as such; and (c) with respect to the entities in clauses (a) through (b), such entity's predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, current directors, officers, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accounts, investment bankers, consultants, representatives, management companies, fund advisors and other Professionals solely in their respective capacities as such.

46.    ~~45.~~ "***Executory Contract***" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

~~46.    "*False Claims Act*" means 31 U.S.C. 3729-3733 (as may be amended).~~

47.    "***Federal Judgment Rate***" means the federal judgment rate of interest in effect as of the Petition Date.

48.    "***Fee Claim***" means (i) any accrued, contingent and/or unpaid fees and expenses for legal, financial advisory, accounting and other services and reimbursement of expenses that are awarded and allowable under sections 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code or that are awardable and allowable under section 503 of the Bankruptcy Code all (a) to the extent that

01:15144907.2

BOS-3374872 v27

- 6 -

any such fees and expenses have not been previously paid (regardless of whether a fee application has been Filed for any such amount), (b) after applying any retainer that has been provided to such Professional and (c) to the extent incurred prior to the Effective Date and (ii) any outstanding expenses of any member of the Committee as of the Effective Date. To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses or a Committee member's expenses, then those reduced or denied amounts shall no longer constitute a Fee Claim.

49.     *"File" or "Filed"* means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

50.     *"Final Order"* means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

51.     *"General Unsecured Claim"* means any Claim against any Debtor that (i) is neither Secured nor entitled to priority under the Bankruptcy Code or an order of the Bankruptcy Court and (ii) is not an Administrative Claim, a Fee Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Convenience Class Claim, an Intercompany Claim, an Intercompany Interest, a Subordinated Claim or an Equity Interest.

52.     *"Governmental Claim"* means any Claim against any Debtor Filed by a Governmental Unit, as such term is defined in section 101 (27) of the Bankruptcy Code.

53.     *"Governmental Unit"* means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

54.     *"GUC Disbursing Agent"* means the GUC Trustee.

55.     *"GUC Funds Carveout"* has the meaning ascribed to such term in the Settlement Agreement, as approved by Order of the Bankruptcy Court dated October 22, 2013.

56.     *"GUC Trust"* means that trust formed pursuant to the Settlement Agreement, as approved by Order of the Bankruptcy Court dated October 22, 2013.

57.     *"GUC Trustee"* means the Person selected to administer the GUC Trust.

58.     *"GUC Trust Assets"* means (a) the GUC Funds Carveout; (b) GUC Trust Causes of Action; (c) GUC Trust Insurance Proceeds; and (d) the Promissory Notes, and all proceeds of the foregoing, which assets are held in trust for the benefit of holders of Allowed General Unsecured Claims and to be distributed in accordance with the Settlement Agreement. To the extent that there are any amounts remaining from the Wind-Down Funds after payment in full of all Administrative,

Priority and Fee Claims and the dissolution of the Debtors and their estates, such Wind-Down Funds shall be GUC Trust Assets.

59.    **"*GUC Trust Causes of Action*"** means any and all Claims or Causes of Action of the Debtors that are not (i) against any Entity that is a vendor, supplier, lessor, employee, contract counterparty or other Entity with whom LMI DME is doing business on or after February 7, 2014; (ii) related to any physical or intangible purchased asset acquired by LMI DME pursuant to the written Asset Purchase Agreement dated as of August 16, 2013 (as amended) that is used or to be used in LMI DME's operations on or after February 7, 2014; (iii) related to any property damage or business interruption claim other than solely with respect to a property damage or business interruption claim related to Hurricane Sandy; (iv) related to deposits or accounts receivable (v) against any or all of LMI DME, the Pre-Petition Lender, and/or TD Bank, N.A., as former administrative agent under the Pre-Petition Credit Facility and such entity's successors and assigns, subsidiaries, Affiliates, managed accounts or funds, current directors and officers, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, each in its respective capacity as such or (vi) the "Non-Compete Litigation," as defined in Amendment No.1 to Asset Purchase Agreement, ~~(filed as~~ [Exhibit A to Docket No. 477)~~]~~.

60.    **"*GUC Trust Insurance Proceeds*"** means 100% of the proceeds of the Debtors' Insurance Policies relating to (a) an allowed General Unsecured Claim against the Debtors or their estates covered by an Insurance Policy; <u>provided, however,</u> that the insurance proceeds shall be for the sole benefit of the holder of such allowed general unsecured claims; (b) GUC Trust Causes of Action and (c) property damage or business interruption Claims solely relating to Hurricane Sandy.

~~61.    "GUC Trust Payment" means those certain payments required under the Settlement Agreement and the Cash Collateral Order, specifically the aggregate of (a) the GUC Funds Carveout, (b) $100,000 to be used by the GUC Trust as "seed funding" for the prosecution of the GUC Trust Causes of Action; provided, however, the first $50,000 of net recoveries from the GUC Trust Causes of Action shall be repaid to the Secured Lender, and (c) the GUC Trust Insurance Proceeds.~~

<u>61.</u>    ~~62.~~ **"*Impaired*"** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

<u>62.</u>    ~~63.~~ **"*Insurance Policies*"** means all insurance policies maintained by the Debtors as of the Petition Date, including, without limitation, the D&O Policy, any general liability policies, and any errors and omissions policies.

<u>63.</u>    ~~64.~~ **"*Intercompany Claim*"** means any Claim held by a Debtor against another Debtor.

<u>64.</u>    ~~65.~~ **"*Intercompany Interest*"** means an Interest in a Debtor held by another Debtor.

<u>65.</u>    ~~66.~~ **"~~Interests~~ <u>"Interest</u>"** means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized or outstanding shares

01:15144907.2

BOS-3374872 v2<u>7</u>

of capital stock of the Debtors together with any warrants, options or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto.

66.    67. *"Interim Compensation Order"* means the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members [Docket No. 125].

67.    68. *"Judicial Code"* means title 28 of the United States Code, 28 U.S.C. §§ l-4001.

68.    69. *"Lien"* means a lien as defined in section 101(37) of the Bankruptcy Code.

69.    70. *"Liquidating Supervisor"* means the means the Person or Persons selected by the Debtors to manage and oversee the winding up~~up~~down and dissolution of the Debtors. The Liquidating Supervisor shall also serve as the Disbursing Agent for the Debtors.

70.    *"LMI DME" means LMI DME Holdings LLC.*

71.    *"Notice, Claims and Balloting Agent"* means Epiq Bankruptcy Solutions, LLC.

~~72.    "Non-Compete Litigation" means all of the Debtors' rights under the Burdi Employment Agreements and Rocco Employment Agreements including the right to enforce the restrictive covenants and the Debtors' Restrictive Covenant Rights and any proceeds related to such litigation or the settlement of such litigation.~~

72.    73. *"Ordinary Course Professional Order"* means the Order Authorizing the Debtors to Retain, Employ and Compensate Certain Professionals Utilized in the Ordinary Course of Business [Docket No. 142].

73.    74. *"Person"* means a person as such term as defined in section 101(41) of the Bankruptcy Code.

74.    75. *"Petition Date"* means August 16, 2013, the date on which each of the Debtors commenced the Chapter 11 Cases.

75.    76. *"Plan"* means this Plan of Liquidation of Landauer Healthcare Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, including the Plan Supplement (as modified, amended or supplemented from time to time), which is incorporated herein by reference.

76.    77. *"Plan Supplement"* means the compilation of documents and forms of documents, schedules and exhibits to the Plan, including such document whereby the Debtors will disclose the identity and affiliations of the Liquidating Supervisor.

~~78.    "Pre-Petition Credit Facility" means that certain Credit Agreement, dated February 9, 2011, and related loan documents, as amended or modified, entered into by and among the Debtors, the Pre-Petition Lenders and the Pre-Petition Agent for (i) a term loan of $35 million with a maturity date of February 9, 2016; (ii) a revolving line of credit in the maximum amount of~~

~~$10 million with a maturity date of February 9, 2016 and (iii) certain other loans in the amount of~~
~~$5 million for acquisition and capital expenditure.~~

77.    ~~79.~~ *"Pre-Petition Lenders"* means TD Securities (USA) LLC and RBS Citizens N.A. as joint lead arrangers and those certain other lenders party to the Pre-Petition Credit Facility.

78.    ~~80.~~ *"Pre-Petition Agent"* means TD Bank, N.A., as administrative agent, under the Pre-Petition Credit Facility.

79.    ~~81.~~ *"Pre-Petition Credit Facility Claim"* means the Allowed Claim of the Pre-Petition Lenders and the Pre-Petition Agent under the Pre-Petition Credit Facility, which claim, and all rights, title and interests related thereto, were acquired by the Secured Lender on September 23, 2013.

80.    ~~82.~~ *"Priority Non-Tax Claims"* means any Claim against any Debtor, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

81.    ~~83.~~ *"Priority Tax Claim"* means any Claim against any Debtor of the kind specified in section 507(a)(8) of the Bankruptcy Code.

82.    ~~84.~~ *"Professional"* means any Person: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331 or 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

83.    ~~85.~~ *"Promissory Note"* has the meaning ascribed to such term in the Settlement Agreement.

84.    ~~86.~~ *"Proof of Claim"* means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

85.    ~~87.~~ *"Pro Rata"* means the proportion that (a) an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in that Class or (b) Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

86.    ~~88.~~ *"Reinstated"* means, with respect to Claims and Interests, the treatment provided for in section 1124 of the Bankruptcy Code.

87.    *"Released Party"* means the Secured Lender and LMI DME and such entities successors and assigns, subsidiaries, Affiliates, managed accounts or funds, current directors and officers, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accounts, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, each in its respective capacity as such.

88.    89. *"Rejection Claim"* means a Claim against any Debtor arising from the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

~~90.    *"Restrictive Covenant Rights"* means the Debtors' rights under the Burdi Employment Agreements and the Rocco Employment Agreements including the right to enforce the restrictive covenants contained therein and all of the Debtors' Restrictive Covenant Rights in the litigation pending in Supreme Court of the State of New York, County of Nassau styled as Saverio D. Burdi and Louis P. Rocco v. Landauer-Metropolitan, Inc. and Clairvest Group Inc., and John Does 1-10, being individuals who improperly acted to the detriment of plaintiff and other minority shareholders of Landauer-Metropolitan, Inc., Index No. 008622-13, including the right to enforce the Order to Show Cause with Temporary Restraining Order entered by the Hon. Vito M. DeStefano, J.C.S. on November 8, 2013, ordering that pending the hearing and determination, the Executives (as defined in the Order to Show Cause with Temporary Restraining Order) shall be restrained from: (i) entering, directly or indirectly, into the employment of or render, directly or indirectly, any services to any person, firm or corporation engaged in any business competitive with the Sellers in the States of New York, New Jersey or Connecticut; (ii) contact or solicit, or attempt to contact or solicit, directly or through agents, any entity for whom Sellers performed services or actively marketed for the purpose of performing services, or which whom Executive had any dealings from July 10, 2012 to July 10, 2013; (iii) hire, subcontract, employ or engage, or contract or solicit, for the purpose of hiring, subcontracting, employing or engaging, any entity who was an employee of Sellers as of any time from July 10, 2012 through July 10, 2013; and (iv) providing any services to Allcare (as defined in the Order to Show Cause with Temporary Restraining Order).~~

~~91.    *"Rocco Employment Agreements"* means the Employment Agreement and Non-Competition Agreement, by and between Saverio D. Burdi and Landauer-Metropolitan Inc., both dated May 10, 1997, as amended, modified and/or restated including on April 1, 1999, January 1, 2001, December 13, 2003, February 17, 2006, July 1, 2007 and June 16, 2009.~~

89.    92. *"Sale"* ~~shall mean~~means the sale of substantially all of the Debtors' assets to LMI DME ~~Holdings, LLC~~ pursuant to ~~a written~~the Asset Purchase Agreement ~~dated as of August 16, 2013 (as amended)~~and the Sale Order, which Sale was consummated on or about February 7, 2014.

90.    93. *"Sale Order"* shall mean the Order (a) approving the Sale of substantially all of the Debtors' assets free and clear of all liens, claims, encumbrances and other interests to LMI DME; and (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases [Docket No. 477].

91.    94. *"Schedules"* means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as such schedules may be amended, modified or supplemented from time to time.

92.    95. *"Secured"* means when referring to a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to

section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed as such pursuant to the Plan.

93. ~~96.~~ *"Secured Lender"* means Herbard Ltd. and shall include any assignee or designee of Herbard Ltd.

94. ~~97.~~ *"Securities Act"* means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as amended, together with the rules and regulations promulgated thereunder.

95. ~~98.~~ *"Securities Exchange Act"* means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a-78nn, as amended.

96. ~~99.~~ *"Security"* means a security as defined in section 2(a)(l) of the Securities Act.

97. ~~100.~~ *"Settlement Agreement"* means that Settlement Agreement, by and between, the Creditors' Committee, LMI DME Holdings LLC and Quadrant Management, Inc., and/or its assigns, dated September 25, 2013 and approved by Bankruptcy Court on October 22, 2013 [Docket No. 282].

98. *"Settlement Agreement Order"* means the Order entered by the Bankruptcy Court on October 22, 2013 [Docket No. 282] approving the Settlement Agreement.

99. ~~101.~~ *"Subordinated Claim"* means any Claim against any Debtor that ~~is not a Pre-Petition Credit Facility Claim and~~ is subordinated to General Unsecured Claims pursuant to an order of the Bankruptcy Court or other court of competent jurisdiction.

100. ~~102.~~ *"TSA"* ~~shall mean a written~~means the Amended and Restated Transition Services Agreement, dated as of February 7, 2014, by and among the Debtors and LMI DME Holdings LLC.

101. *"TSA Order"* means the Order entered by the Bankruptcy Court on January 8, 2014 [Docket No. 481] approving the TSA.

102. ~~103.~~ *"Unexpired Lease"* means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

103. ~~104.~~ *"Unimpaired"* means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

104. ~~105.~~ *"U.S. Trustee"* means the United States Trustee for the District of Delaware.

105. ~~106.~~ *"Voting Deadline"* means 4:00p.m. (prevailing Eastern Time) on April 15, 2014.

106. ~~107.~~ ***"Wind Down Funds"*** means the Cash on hand in Debtors' operating accounts from and after the Effective Date; provided, however, Wind Down Funds shall not include ~~the proceeds of Accounts collected by one or more of the Debtors, which were included in the Sale~~any funds required to be remitted by the Debtors to LMI DME or the Secured Lender pursuant to the Controlling Documents.

B.    *Rules of Interpretation*

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule or exhibit, as it may thereafter be amended, modified or supplemented; (4) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; and (13) any immaterial effectuating provisions may be interpreted by the Debtors and/or GUC Trustee in such a manner that is consistent with the overall purpose and intent of the Plan all without further Bankruptcy Court order.

C.    *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

D.    *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents,

instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, however, that corporate governance matters relating to the Debtors not incorporated in Delaware shall be governed by the laws of the state or province of incorporation of the applicable Debtor.

E.    *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.    *Reference to the Debtors or the Liquidating Supervisor*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Liquidating Supervisor shall mean the Debtors and/or the Liquidating Supervisor, as applicable, to the extent the context requires.

**ARTICLE II**
**ADMINISTRATIVE CLAIMS,**
**AND PRIORITY TAX CLAIMS**

In accordance with section 1123(a)(l) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.    *Administrative Claims*

1.    Administrative Claims

Except with respect to Administrative Claims that are Fee Claims and except to the extent that a holder of an Allowed Administrative Claim and the applicable Debtor(s) agree to less favorable treatment with respect to such holder, each holder of an Allowed Administrative Claim shall be paid in full in Cash.  Such Claims shall be paid on the earlier of (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date or (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed, if such Administrative Claim is not Allowed as of the Effective Date. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order.

2.    Professional Fee Claims

Any Person asserting a Fee Claim for services rendered before the Effective Date must File and serve on the Debtors and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, the Interim Compensation Order or any other applicable order of the Bankruptcy Court, an application for final allowance of such Fee Claim no later than 30 days after the Effective Date; provided, however that any Professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professional Order may continue to receive such compensation or reimbursement of expenses for services rendered before the

Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professional Order. Objections to any Fee Claim must be Filed and served on the Debtors and the requesting party no later than 60 days after the Effective Date. To the extent necessary, the Plan and the Confirmation Order shall amend and supersede any previously entered order regarding the payment of Fee Claims. Upon entry of a Final Order approving any such application for such Fee Claim, the Debtors shall promptly pay any unpaid portion of such Allowed Fee Claim.

3.    Administrative Claim Bar Dates

Except as otherwise provided in this Article II.A.1, requests for payment of Administrative Claims (other than claims pursuant to section 503(b)(9) of the Bankruptcy Code) must be Filed on or before the applicable Administrative Claims Bar Dates. Notwithstanding anything else contained in this Plan or any other order, any request for payment of any Administrative Claim by CMS related to any alleged post-petition overpayment by CMS to the Debtors must be filed no later than sixty (60) days after the Effective Date, provided that the Debtors have, on or before the Effective Date, submitted to CMS all claims for payment on account of post-petition services rendered prior to the closing of the Sale, as provided for in Article IV below. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such applicable dates shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors or their property.

B.    *Priority Tax Claims*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement and release of each Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, on the Distribution Date, at the option of the Debtors, one of the following treatments: (i) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus interest at the rate determined under applicable non-bankruptcy law and to the extent provided for by section 511 of the Bankruptcy Code; (2) Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period of time not to exceed five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, plus interest at the rate determined under applicable non-bankruptcy law and to the extent provided for by section 511 of the Bankruptcy Code; or (3) such other treatment as may be agreed upon by such holder and the Debtors or otherwise determined upon an order of the Bankruptcy Court.

C.    *Statutory Fees*

On the Distribution Date, the Debtors shall pay, in full in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation. On and after the Effective Date, the Debtors shall be responsible for (i) filing post-Confirmation quarterly reports and any pre-Confirmation monthly operating reports not filed as of the Confirmation Hearing in conformity with the U.S. Trustee guidelines and (ii) all applicable U.S. Trustee fees for each of the Chapter 11 Cases until the entry of a final decree in such Chapter 11 Case or until such Chapter 11 Case is closed or dismissed, provided, however, that the Debtors shall provide the GUC Trust sixty (60) days written

notice of their intent to seek to close or dismiss any of the Chapter 11 Cases and (a) if the GUC Trust requests that the Debtors keep any such Chapter 11 Cases open beyond the expiration of the notice period or (b) the reason to keep any such Chapter 11 Cases open beyond such 60 days' notice period is related to Convenience Class Claims, General Unsecured Claims or GUC Trust Causes of Action, the GUC Trust shall be solely responsible for filing any post-Confirmation quarterly reports in conformity with the U.S. Trustee guidelines and shall be solely responsible for payment of any such fees incurred from and after the end of the notice period through entry of a final decree or dismissal of the Chapter 11 Cases.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims and Interests*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors. All Claims and Interests, except for Administrative Claims and Priority Tax Claims, are classified in the Classes set forth in this Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released or otherwise satisfied before the Effective Date.

B.    *Summary of Classification*

The Plan constitutes a separate chapter 11 plan of reorganization for each Debtor and, unless otherwise explained herein, the classifications set forth in Classes 1 to 7 shall be deemed to apply to each Debtor, as applicable.

The following chart summarizes the classification of Claims and Interests pursuant to the Plan:

| Class | Claim/Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| 2 | Convenience Class Claims | Impaired | Entitled to Vote |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Intercompany Claims | Impaired | Deemed to Reject |
| 5 | Intercompany Interests | Impaired | Deemed to Reject |
| 6 | Subordinated Claims | Impaired | Deemed to Reject |
| 7 | Equity Interests | Impaired | Deemed to Reject |

C.    *Treatment of Claims and Interests*

To the extent a Class contains Allowed Claims or Allowed Interests with respect to a particular Debtor, the treatment provided for the holders of such Allowed Claims or Allowed Interests within each class is specified below:

01:15144907.2

BOS-3374872 v27

- 16 -

1.      Class 1 - Priority Non-Tax Claims

       (a)      Classification: Class 1 consists of Priority Non-Tax Claims.

       (b)      *Treatment:* Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement and release of each Allowed Priority Non-Tax Claim, each holder of such Allowed Priority Non-Tax Claim shall be paid in full in Cash. Allowed Priority Non-Tax ~~Claim~~Claims shall be paid on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Priority Non-Tax Claim against the Debtors becomes an Allowed Priority Non-Tax Claim or (iii) such other date as may be ordered by the Bankruptcy Court.

       (c)      *Voting:* Class 1 is Unimpaired by the Plan, and each holder of a Class 1 Priority Non-Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Class 1 Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan.

2.      Class 2 - Convenience Class Claims

       (a)      *Classification:* Class 2 consists of Convenience Class Claims.

       (b)      *Treatment:* Except to the extent that a holder of an Allowed Convenience Class Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement and release of each Allowed Convenience Class Claim, each holder of an Allowed Convenience Class Claim shall receive Cash from the GUC Trust in the amount equal to 10% of such Allowed Convenience Class Claim on the later of the Effective Date or the date such Claim becomes an Allowed Claim.

       (c)      Voting: Class 2 is Impaired by the Plan. Therefore, holders of Class 2 Convenience Class Claims are entitled to vote to accept or reject the Plan.

3.      Class 3 - General Unsecured Claims

       (a)      Classification: Class 3 consists of General Unsecured Claims.

       (b)      *Treatment:* Except to the extent that a holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement and release of each Allowed General Unsecured Claim, each holder of such Allowed General Unsecured Claim shall receive its Pro Rata distribution of the GUC Trust Assets.

       (c)      *Voting:* Class 3 is Impaired by the Plan. Therefore, holders of Class 3 General Unsecured Claims are entitled to vote to accept or reject the Plan.

4.      Class 4 - Intercompany Claims

       (a)      *Classification:* Class 4 consists of Intercompany Claims.

(b)    *Treatment:* On the Effective Date, Class 4 Intercompany Claims shall not be entitled to receive or retain any property or interest on account of such claims.

(c)    *Voting*: Class 4 is Impaired by the Plan, and each holder of a Class 4 Intercompany Claim is deemed to have rejected the Plan.

5.    Class 5 - Intercompany Interests

(a)    *Classification*: Class 5 consists of Intercompany Interests.

(b)    *Treatment*: On the Effective Date, Intercompany Interests will be cancelled. Holders of Class 5 Intercompany Interests shall not receive any distribution on account of such Interests.

(c)    *Voting*: Class 5 is Impaired and the Holders of Class 5 Intercompany Interests are deemed to reject the Plan.

6.    Class 6 – Subordinated Claims

(a)    *Classification*:  Class 6 consists of Subordinated Claims.

(b)    *Treatment*: On the Effective Date, Class 6 Subordinated Claims shall not be entitled to receive or retain any property or interest on account of such claims.

(c)    *Voting*: Class 6 is Impaired and the Holders of Class 6 Subordinated Claims are deemed to reject the Plan.

7.    Class 7 – Equity Interests

(a)    *Classification*:  Class 7 comprises the Interests in the Debtors.

(b)    *Treatment*: On the Effective Date, Holders of Class 7 Equity Interests will be canceled and discharged.  Holders of Class 7 Intercompany interests shall not receive any distribution on account of such interests.

(c)    *Voting*: Class 7 is Impaired and the Holders of Class 7 Equity Interests are deemed to reject the Plan.

D.    *Special Provision Governing Claims that are Not Impaired*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Claims that are not Impaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are not Impaired.

E.    *Acceptance or Rejection of the Plan*

1.    Voting Classes

Classes 2 and 3 are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

2.      Presumed Acceptance of the Plan

Class 1 is Unimpaired under the Plan, and the holders in such Class are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

3.      Presumed Rejection of Plan

Classes 4, 5, 6 and 7 are Impaired and shall receive no distribution under the Plan. The holders in Classes 4, 5, 6, and 7 are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.]

F.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(l0) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims. The Debtors shall seek Confirmation pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

G.      *Subordinated Claims*

Except as expressly provided herein, the allowance, classification and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors and the GUC Trust, as applicable, reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal or equitable subordination relating thereto.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *Performance of Transition Services; Wind Down and Dissolution of Debtors*

From and after the Effective Date pursuant to the TSA and the TSA Order, the Debtors shall continue to perform transition services for LMI DME Holdings LLC in accordance with the TSA. As soon as practicable after the TSA expires or is terminated, the Debtors' remaining affairs shall be concluded by the Liquidating Supervisor and each Debtor shall thereafter be dissolved (such date of dissolution being referred to as the "Dissolution Date"). Notwithstanding the foregoing, on or before the Effective Date, the Debtors shall submit to CMS all claims for payment on account of post-petition services rendered prior to the Closing of the Sale.

B.    *Sources of Consideration for Plan Distributions*

        The GUC Trust shall make distributions required hereunder to creditors holding Allowed Claims in Class 2 and Class ~~3.~~3 from the GUC Trust Assets. The Debtors shall make all other distributions from the Wind Down Funds.

C.    *Cash on Hand*

        On the Effective Date, ~~available cash on hand of the Debtors, if any,~~the Wind Down Funds will be used to fund any outstanding payments, obligations or expenses required to consummate the Plan and for future needs of ~~the~~ Debtors in winding-down their affairs. On the Dissolution Date, following satisfaction of all Plan obligations and debts incurred in winding up the Debtors' affairs, the Liquidating Supervisor shall turn over to the GUC Trustee any remaining ~~Cash~~Wind Down Funds.

D.    *Corporate Existence*

        Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, each Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other analogous formation or governing documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation or governing documents) are amended by the Plan or otherwise. To the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial or federal law).

E.    *Vesting of Assets in the Debtors*

        Except as otherwise provided in the ~~Sale Order~~Controlling Documents, the Plan, the Settlement Agreement or any agreement, instrument or other document incorporated in the Plan, on the Effective Date, all property in each Estate, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Debtor, free and clear of all Liens, Claims against, charges or other encumbrances.

F.    *Vesting of Assets in the GUC Trust*

        On the Effective Date, any GUC Trust Assets not previously vested in the GUC Trust pursuant to and by virtue of the Settlement Agreement, the Sale Order and the Cash Collateral Order, shall vest in the GUC Trust, free and clear of all Liens, Claims against, charges or other encumbrances and shall be deemed transferred by the respective Debtor to the GUC Trust, subject to the beneficial interests therein of all holders of Allowed Convenience Class Claims and Allowed General Unsecured Claims.

G.    *Cancellation of Existing Securities*

Except as otherwise provided in the Controlling Documents, the Plan or any agreement, instrument or other document incorporated in the Plan, on the Effective Date: (i) the obligations of the Debtors under the Pre-Petition Credit Facility and any other certificate, share, note, bond, indenture, purchase right, option, warrant or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim against or Interest in any Debtor (except such certificates, notes or other instruments or documents evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be cancelled as to the Debtors, and the Debtors shall not have any continuing obligations thereunder; and (ii) the obligations of the Debtors pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and terminated; provided, however, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the holder of a Claim against any Debtor shall continue in effect solely for purposes of enabling holders of Allowed Claims to receive distributions under the Plan as provided herein; provided, further, however, that the preceding provision shall not otherwise affect the treatment of Claims against or Interests in any Debtor pursuant to the Bankruptcy Code, the Confirmation Order or the Plan, or result in any expense or liability to the Debtors, except to the extent set forth in or provided for under this Plan or the Controlling Documents.

H.    *Corporate Action*

Upon the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including: (i) selection of the Liquidating Supervisor; (ii) the continued provision of transition services under the TSA, as authorized by the TSA Order; (iii) the winding up of the remaining affairs of each Debtor; and (viv) all other actions contemplated by the Plan (whether to occur before, on or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors or the Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors or officers of the Debtors or the Debtors. On or (as applicable) before the Effective Date, the Liquidating Supervisor shall be authorized and (as applicable) directed to take such actions as are necessary to effect the transactions contemplated by the Plan in the name of and on behalf of the Debtors, including any and all other agreements, documents, securities and instruments relating to the foregoing. The authorizations and approvals contemplated hereunder shall be effective notwithstanding any requirements under non-bankruptcy law.

I.    *Directors and Officers of the Debtors; Appointment of Liquidating Supervisor*

As of the Effective Date, the term of the current members of the Debtors' boards of directors of shall expire, and the Liquidating Supervisor shall be deemed the sole director or manager, as applicable, of each of the Debtors.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose in the Plan Supplement the identity and affiliations of the Liquidating Supervisor. To the extent that the Liquidating Supervisor is an "insider" of any Debtor under the Bankruptcy Code, the nature of any compensation to be paid to such Person will also be disclosed.

On the Effective Date, the Liquidating Supervisor shall become the exclusive representative for each Debtor and their respective Estate. The Liquidating Supervisor shall, as promptly as is practicable, take all such actions as are necessary to wind up the affairs, and cause the dissolution, of each Debtor. Through and including the Dissolution Date, the Liquidating Supervisor shall have all requisite corporate authority and all of the rights and powers of a trustee under the Bankruptcy Code, including, but not limited to, the right to retain other professionals, including attorneys, without further order of the Court.

J.    *Exemption from Certain Taxes and Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to (1) the creation of any mortgage, deed of trust, lien or other security interest; (2) the making or assignment of any lease or sublease; (3) any restructuring transaction authorized by the Plan; or (4) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any restructuring transaction occurring under the Plan.

K.    *Insurance Policies*

Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtors shall assume (and assign to the GUC Trust if necessary to continue the Insurance Policies in full force) all of the Insurance Policies pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' assumption of the Insurance Policies. Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair or otherwise modify any obligations assumed by the foregoing assumption of the Insurance Policies, and each such obligation shall be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be Filed. To the extent one or more of the Insurance Policies is related to the GUC Trust Insurance Proceeds, the Debtors shall, to the extent permissible under

each Insurance Policy, assign their respective rights to any GUC Trust Insurance Proceeds thereunder to the GUC Trust and the Debtors shall promptly transfer any of such GUC Trust Insurance Proceeds received by them to the GUC Trust, with all GUC Trust Insurance Proceeds received by the GUC Trust treated as GUC Trust Assets for all purposes under the Plan.

L.     *Preservation of Causes of Action.*

         In accordance with section 1123(b) of the Bankruptcy Code, the GUC Trust may pursue the GUC Trust Causes of Action in its discretion.  The GUC Trust expressly reserves all rights to prosecute any and all GUC Trust Causes of Action against any Entity, except as otherwise expressly provided in the Plan.  Unless any GUC Trust Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, the GUC Trust and the Debtors expressly reserve all GUC Trust Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to the GUC Trust Causes of Action upon, after or as a consequence of the Confirmation or Consummation.  In accordance with section 1123(b)(3) of the Bankruptcy Code, the GUC Trustee, on behalf of the GUC Trust may exclusively enforce any and all GUC Trust Causes of Action.  The GUC Trustee shall have the exclusive right, authority and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw or litigate to judgment any GUC Trust Causes of Action and to decline to do any of the foregoing without further notice to or action, order or approval of the Bankruptcy Court. Notwithstanding the foregoing or anything else contained in this Plan, nothing in the Plan or Confirmation Order shall modify, alter or affect the Controlling Documents and any conflict between the Plan or Confirmation Order on one hand and the Controlling Documents on the other, the Controlling Documents shall govern and control.  Additionally, notwithstanding the foregoing or anything else contained in this Plan, nothing in the Plan or Confirmation Order shall modify, alter or affect the Order Approving Limited Settlement Regarding Certain Employment Agreements dated February 18, 2014 (D.I. 579) of the settlement approved thereby (including the settlement agreement attached thereto, the "Restrictive Covenant Order") and any conflict between the Plan or Confirmation Order on one hand and the Restrictive Covenant Order on the other, the Restrictive Covenant Order shall govern and control.  For the avoidance of doubt, any provision in the Restrictive Covenant Order providing that one or more Controlling Documents govern and control in the event of any conflict between such Controlling Document(s) and the Restrictive Covenant Order shall remain controlling.

         Any contrary provision hereof notwithstanding, the Debtors have not and do not waive any claim of privilege to which they may be entitled, if any, including without limitation the attorney-client, work product or common interest privilege.

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.     *Assumption and Rejection of Executory Contracts and Unexpired Leases*

         On the Effective Date, and except for Insurance Policies assumed hereunder, all Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date,

01:15144907.2

BOS-3374872 v27

unless such Executory Contract or Unexpired Lease: (i) was assumed or rejected previously by the Debtors; (ii) previously expired or terminated pursuant to its own terms; or (iii) is the subject of a motion to assume Filed on or before the Effective Date.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the rejection of such Executory Contracts or Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, rejection of Executory Contracts and Unexpired Leases pursuant to the Plan shall be effective as of the Effective Date.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court within 30 days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time will be automatically disallowed, forever barred from assertion and shall not be enforceable against the Debtors, ~~the Debtors,~~ the Estates, their property or the GUC Trust without the need for any objection by the GUC Trust or further notice to, or action, order or approval of the Bankruptcy Court. Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Classes 2 or 3 of the Plan, as applicable.

**Rejection Claims for which a Proof of Claim is not timely Filed will be forever barred from assertion against the Debtors, their Estates, their property and the GUC Trust unless otherwise ordered by the Bankruptcy Court. Such Rejection Claims shall, as of the Effective Date, be subject to the permanent injunction.**

C.      *Insurance Policies*

All of the Debtors' Insurance Policies and any agreements, documents or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan. On the Effective Date, the Debtors shall be deemed to have assumed all Insurance Policies and any agreements, documents and instruments related thereto.

D.      *Indemnification Obligations Regarding Prepetition Acts or Omissions*

Any obligation of the Debtors to indemnify, reimburse or limit the liability of any Person, including, but not limited to, any officer or director of the Debtors, or any agent, professional, financial advisor, or underwriter of any securities issued by the Debtors, relating to any acts or omissions occurring before the Petition Date, whether arising pursuant to charter, by-laws, contracts or applicable state law, shall be deemed to be, and shall be treated as, an Executory Contract and (i) shall be and hereby is deemed rejected and terminated as of the Effective Date and (ii) any and all Claims resulting from such obligations shall be, and hereby are, disallowed pursuant to Bankruptcy Code section 502(e). Notwithstanding ~~any of~~ the foregoing ~~contrary provision hereof notwithstanding~~, nothing contained in ~~thethis~~this Plan shall modify the rights of any Person (including any former officer or director of the Debtor) to be indemnified, reimbursed or to obtain contribution or exculpation to the extent of proceeds or coverage available under any D&O Policy.

E.   ~~Modifications,   Amendments,   Supplements,   Restatements   or   Other~~
~~Agreements~~

~~Unless otherwise provided in the Plan, each Executory Contract or Unexpired~~
~~Lease that is assumed shall include all modifications, amendments, supplements, restatements or~~
~~other agreements that in any manner affect such Executory Contract or Unexpired Lease, and~~
~~Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses,~~
~~permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless~~
~~any of the foregoing agreements has been previously rejected or repudiated or is rejected or~~
~~repudiated under the Plan.   Modifications, amendments, supplements and restatements to~~
~~prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors~~
~~during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory~~
~~Contract or Unexpired Lease, or the validity, priority or amount of any Claims that may arise in~~
~~connection therewith.~~

E.      ~~F.~~ Reservation of Rights

Nothing contained in the Plan, or omitted therefrom, shall constitute an admission
by the Debtors that any such contract or lease that is to be assumed or rejected hereunder is in fact
an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder.  If there
is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of
assumption or rejection, pursuant to the Plan, the Debtors shall have thirty (30) days following
entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

G.      ~~Contracts and Leases Entered Into After the Petition Date~~

~~Contracts and leases entered into after the Petition Date by any Debtor in the~~
~~ordinary course of its business or with Bankruptcy Court approval, including any Executory~~
~~Contracts and Unexpired Leases assumed by such Debtor, will be performed by the Debtor liable~~
~~thereunder in the ordinary course of its business.   Accordingly, such contracts and leases~~
~~(including any assumed Executory Contracts and Unexpired Leases) will survive and remain~~
~~unaffected by entry of the Confirmation Order.~~

# ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

A.     *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim is not an
Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or
as soon as reasonably practicable thereafter), each holder of an Allowed Claim, other than a
Convenience Class Claim or General Unsecured Claim, shall receive the full amount of the
distributions that the Plan provides for Allowed Claims in each applicable Class.  In the event that
any payment or act under the Plan is required to be made or performed on a date that is not a
Business Day, then the making of such payment or the performance of such act may be completed
on the next succeeding Business Day, but shall be deemed to have been completed as of the

required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of the Plan. Except as otherwise provided in the Plan, holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date. The Liquidating Supervisor and GUC Trustee shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Voting Deadline.

B.      *Disbursing Agent*

Except with respect to distributions on account of Allowed Convenience Class Claims or Allowed General Unsecured Claims, which distributions will be made by the GUC Trustee from the GUC Trust Assets, the Liquidating Supervisor shall serve as [something missing here]the Disbursing Agent and all distributions under the Plan shall be made by the Disbursing Agent. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. The GUC Trustee shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

C.      *Rights and Powers of Disbursing Agent*

1.      Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; and (c) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.      Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.      Delivery of Distributions

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be made to holders of record as of the Distribution Record Date: (1) to the signatory set forth on any of the Proofs of Claim Filed by such holder or other representative identified therein (or at the last known addresses of such holder if no Proof of Claim is Filed or if the Debtors, Disbursing Agent, GUC Trust, or GUC Disbursing Agent, as applicable, have been notified in writing of a change of address); (2) at the addresses set forth in any written notices of address changes delivered to the Debtors, Disbursing Agent, GUC Trust, or GUC Disbursing Agent, as

01:15144907.2

- 26 -

BOS-3374872 v27

applicable, after the date of any related Proof of Claim; (3) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Debtors, Disbursing Agent, GUC Trust, or GUC Disbursing Agent, as applicable, have not received a written notice of a change of address; or (4) on any counsel that has appeared in the Chapter 11 Cases on the holder's behalf if such counsel instructs the Disbursing Agent or GUC Disbursing Agent, as applicable, in writing to direct such payment to the attention of such counsel. The Debtors, Disbursing Agent, GUC Trust, or GUC Disbursing Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for actual fraud, gross negligence or willful misconduct as determined by Final Order of a Court of Competent Jurisdiction.

     2.     <u>Minimum Distributions</u>

     Notwithstanding any other provision of the Plan, the Disbursing Agent or GUC Disbursing Agent, as applicable, will not be required to make distributions of Cash less than $50 in value, and each such Claim to which this limitation applies shall be waived, and its holder is forever barred from asserting such Claim against the Debtors, the Estates and their property, the GUC Trust or the GUC Trust Assets, as applicable.

     Notwithstanding any other provision of the Plan, the Disbursing Agent or GUC Disbursing Agent, as applicable, will not be required to make payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment made will reflect a rounding of the fraction in the nearest whole dollar (up or down), with half-dollars rounded down.

     3.     <u>Undeliverable Distributions and Unclaimed Property</u>

     In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Disbursing Agent or GUC Disbursing Agent, as applicable, has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; <u>provided</u>, <u>however</u>, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one-hundred and eighty (180) days from the Distribution Date. After such date, all unclaimed property or interests in property shall revert to the Debtors or the GUC Trust, as applicable, automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned or unclaimed property laws to the contrary), and the Claim of any holder to such property or Interest in property shall be waived and forever barred.

     4.     <u>Means of Cash Payment</u>.

     Cash payments under this Plan shall be in U.S. dollars and shall be made, at the option and in the sole discretion of Disbursing Agent or GUC Disbursing Agent, as the case may be, by (i) checks drawn on or (ii) wire transfers from a domestic bank selected by Disbursing Agent or GUC Disbursing Agent. Cash payments to foreign creditors may be made at the option of Disbursing Agent or the GUC Disbursing Agent, as the case may be, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

Checks issued in respect of distributions under this Plan will be null and void if not negotiated within ninety (90) days after the date of issuance. Requests for re-issuance of any check shall be made directly to the Disbursing Agent or the GUC Disbursing Agent, as the case may be, by the holder of the Allowed Claim with respect to which such check was originally issued and must be made before sixty (60) days from the date of distribution. After such date, all claims in respect of voided checks and the underlying distribution will be forever waived and forever barred and the Disbursing Agent or the GUC Disbursing Agent shall have no obligation to make any future distributions.

E.      *[Reserved]*

F.      *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Debtors and the GUC Trust, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Debtors, the Disbursing Agent, the GUC Trust, or GUC Disbursing Agent, as applicable, shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors and the GUC Trust, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances.

G.      *Allocations*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

H.      *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim.

I.      *No Penalty Claims*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, no holder of any Claim will be entitled to allowance of, or to receive any payment on account of, any penalty arising with respect to or in connection with such Claim and any such penalty shall be deemed disallowed and expunged.

01:15144907.2

BOS-3374872 v27

J.    *Setoffs and Recoupment*

The Debtors, the Disbursing Agent or the GUC Trust may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors may have against the claimant pursuant to section 558 of the Bankruptcy Code or otherwise, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, Disbursing Agent or GUC Trust of any such Claim it may have against the holder of such Claim.

Unless otherwise authorized by a Final Order, any holder of a Claim, other than a holder of a Governmental Claim, must assert any setoff rights against a Claim by a Debtor against such Entity by filing an appropriate motion seeking authority to setoff on or before the Confirmation Date or will be deemed to have waived and be forever barred from asserting any right to setoff against a Claim by a Debtor, Disbursing Agent or GUC Trust, notwithstanding any statement to the contrary in a Proof of Claim or any other pleading or document Filed with the Bankruptcy Court or delivered to the Debtors~~, provided, however, that~~. Passaic Healthcare Services, LLC, D/B/A Allcare Medical ("Allcare")~~is~~, Saverio D. Burdi ("Burdi") and Louis P. Rocco ("Rocco") are deemed to have satisfied the foregoing requirement of filing a motion with the Bankruptcy Court before the Confirmation Date ~~requesting the preservation of any setoff rights Allcare~~. Notwithstanding anything to the contrary in the Plan, solely to the extent provided by applicable law, Allcare, Burdi and Rocco shall retain the right to assert all valid setoff or recoupment rights that they may have against the Debtors, Disbursing Agent or GUC Trust under section 553 of the Bankruptcy Code and applicable non-bankruptcy law, and ~~any such setoff rights shall be preserved post confirmation date of the Plan~~the Debtors, Disbursing Agent or GUC Trust reserve all rights and defenses in connection with any and all assertions of alleged setoff and recoupment rights. Allcare's, Rocco's or Burdi's exercise of any setoff rights they may have are subject to the Plan's injunction provision unless otherwise ordered by the Bankruptcy Court.

K.    *Costs of Administering and Distributing the GUC Trust Assets*

Neither the Debtors nor the Disbursing Agent shall bear any costs of administering the GUC Trust or distributing the GUC Trust Assets to holders of Allowed Convenience Claims or Allowed General Unsecured Claims, including, for the avoidance of doubt, the costs of objecting to and/or resolving Convenience Class Claims or General Unsecured Claims, the post-Effective Date fees and expenses, if any, of the Notice, Claims and Balloting Agent related to Convenience Class Claims or General Unsecured Claims or any pleadings Filed by or served by the GUC Trust, and any such costs shall be incurred by the GUC Trust and reimbursed from the GUC Trust Assets.

In addition, the GUC Trust is not liable for any costs allocated herein to the Debtors, including~~,~~ without limitation, ~~Wind Down and Dissolution of the debtors~~any costs related to the wind down and dissolution of the Debtors and payment of any Administrative and Priority ~~claims~~Claims.

L.    *Claims Paid or Payable by Third Parties*

1.    Claims Paid by Third Parties

The Debtors, the Disbursing Agent and the GUC Trust, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, or the GUC Trust.  Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor, or the GUC Trust on account of such Claim, such holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable orLiquidating Supervisor or the GUC Trust, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan, or the GUC Trust if the Debtors are no longer in existence.  The failure of such holder to timely repay or return such distribution shall result in the holder owing the applicable Debtor or the GUC Trust annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is repaid.

2.    Claims Payable by Third PartiesFrom Debtors' Insurance Policies

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Policies until the holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim, then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

3.    Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Policy.

## ARTICLE VII
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

A.    *Allowance of Claims*

After the Effective Date, each Debtor shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately before the Effective Date except only that in connection with the reconciliation and adjudication of any Convenience Class Claims and General Unsecured Claims, the GUC Trust shall retain and be entitled to assert all defenses respecting and to the extent of such Convenience Class Claim or General Unsecured Claim on behalf of the Debtors.

B.    *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Debtors shall have the sole authority: (i) to File, withdraw or litigate to judgment objections to (i)

Claims and Interests other than Convenience Class Claims and General Unsecured Claims; (ii) to settle or compromise any Claim, other than Convenience Class Claims and General Unsecured Claims, that is a Disputed Claim without any further notice to or action, order or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court, provided, however, that the Debtors shall not reclassify any Claim or Interest as a Convenience Class Claim or General Unsecured Claim without the express consent of the GUC Trustee, which shall not be unreasonably withheld, or an order of the Bankruptcy Court.

Except as otherwise specifically provided in the Plan, after the Effective Date, the GUC Trust shall have the sole authority: (i) to File, withdraw or litigate-to judgment objections to Convenience Class Claims and General Unsecured Claims; (ii) to settle or compromise any Convenience Class Claim or General Unsecured Claim that is a Disputed Claim without any further notice to or action, order or approval by the Bankruptcy Court; and (iii) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court; provided, however, that any costs related thereto shall be born solely by the GUC Trust from the GUC Trust Assets.

C.    *Estimation of Claims*

Before or after the Effective Date, the Debtors or GUC Trust, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest. The provisions of this Article VIIC shall apply to the same extent to the GUC Trust with respect to its reconciliation and adjudication of Convenience Class Claims and General Unsecured Claims.

D.    *Adjustment to Claims Without Objection*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, cancelled or otherwise expunged (including pursuant to the Plan), or any Claim or Interest whose treatment has been deemed modified by this Plan, may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Debtors, or in the case of Convenience Class Claims and General Unsecured Claims only, by the GUC Trust, without a Claims objection or any other notice or motion having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

E.    *Time to File Objections to Claims*

Any objections to Claims against any Debtor shall be Filed on or before the Claims Objection Deadline.

F.    *Disallowance of Claims*

Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed after the Claims Bar Date or Administrative Claims Bar Dates, as applicable, shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.

G.    *Amendments to Claims*

On or after the Effective Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Debtors or, solely in the case of Convenience Class Claims or General Unsecured Claims, the GUC Trust.  Absent such authorization, any new or amended Claim Filed shall be deemed disallowed in full and expunged without any further action.

H.    *Alternative Claim Resolution Procedures*

The Debtors, with the consent of the Committee, may file as part of the Plan Supplement, alternative dispute resolution-based claim resolution procedures applicable to certain contingent, unliquidated or disputed claims, which shall become part of the Plan and effective on the Effective Date.

I.    *Tax Implications for Recipients of Distributions*

Notwithstanding any other provision of the Plan, each Entity receiving a distribution of Cash or other consideration pursuant to the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any Governmental Unit on account of the distribution, including income, withholding and other tax obligations.

J.    *No Levy*

Except as otherwise provided herein, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment or like legal process, so that each holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.

K.    *Offer of Judgment*

The Debtors or the GUC Trust, as applicable, are both authorized to serve upon a holder of a Claim an offer to allow judgment to be taken on account of such Claim, and pursuant to

Bankruptcy Rule 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment. To the extent the holder of a Claim must pay the costs of the Debtors or GUC Trust, as applicable, after making of such offer, the Debtors or GUC Trust, as applicable, is entitled to setoff such amounts against the amount of any distribution to be paid to such holder without any further notice or action, order or approval of the Bankruptcy Court.

L.     *No Distributions Pending Allowance*

        If an objection to a Claim or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

M.     *Distributions After Allowance*

        To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent or GUC Trust, as applicable, shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim unless required under applicable bankruptcy law.

## ARTICLE VIII
## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

A.     *Compromise and Settlement of Claims, Interests and Controversies*

        Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a holder of a Claim against or Interest in any Debtor may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and holders, and is fair, equitable and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the GUC Trust may compromise and settle the GUC Causes of Action.

B.     *Sole Recourse for Claims and Termination of Interests*

        Except as otherwise specifically provided in the Plan or in any contract, instrument or other agreement or document created pursuant to the Plan, the distributions, rights and treatment that are provided in the Plan shall be in complete satisfaction, discharge and release, effective as of the Effective Date, of Claims against, Interests in, and Causes of Action held against any Debtor of any nature whatsoever, including any interest accrued on Claims or Interests from and after the

Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including (a) demands, liabilities and Causes of Action that arose before the Effective Date, (b) any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, (c) any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and (d) all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt, right or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has accepted the Plan. Any default by the Debtors with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.

C.       *Release of Liens*

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released, and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Debtor and its successors and assigns.

D.       *Releases by the Debtors*

ON THE EFFECTIVE DATE OF THE PLAN AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, THE RELEASED PARTIES WILL BE EXPRESSLY, UNCONDITIONALLY, GENERALLY AND INDIVIDUALLY AND COLLECTIVELY RELEASED, ACQUITTED AND DISCHARGED BY THE DEBTORS AND THEIR ESTATES FROM ANY AND ALL ACTIONS, CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR THAT COULD BE ASSERTED ON BEHALF OF THE DEBTORS OR THEIR ESTATES, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT OR OTHERWISE, BY STATUTE OR OTHERWISE, THAT THE DEBTORS, THE LIQUIDATING SUPERVISOR OR THE DEBTORS' ESTATES, WHETHER INDIVIDUALLY OR COLLECTIVELY, OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER ENTITY, EVER HAD, NOW HAS OR HEREAFTER CAN, SHALL OR MAY HAVE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND ANY RELEASED PARTY, THE TREATMENT OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION OR PREPARATION OF THE PLAN, THE PLAN SUPPLEMENT, ANY

DISCLOSURE STATEMENT OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE RELATING TO THE DEBTORS TAKING PLACE ON OR BEFORE THE CONFIRMATION DATE OF THE PLAN, EXCEPT FOR (1) ANY CLAIMS AND CAUSES OF ACTION FOR ACTUAL FRAUD, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT AS DETERMINED BY FINAL ORDER OF A COURT OF COMPETENT JURISDICTION AND (2) ANY CLAIMS ARISING UNDER THE CONTROLLING DOCUMENTS.

E.    ~~D.~~ *Exculpation*

EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN OR PLAN SUPPLEMENT, NO EXCULPATED PARTY SHALL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM ANY EXCULPATED CLAIM, OBLIGATION, CAUSE OF ACTION OR LIABILITY FOR ANY EXCULPATED CLAIM, EXCEPT FOR ACTUAL FRAUD, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT AS DETERMINED BY FINAL ORDER OF A COURT OF COMPETENT JURISDICTION, BUT IN ALL RESPECTS SUCH ENTITIES SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.    THE DEBTORS, THE CREDITORS' COMMITTEE AND THE GUC TRUST (AND EACH OF THEIR RESPECTIVE AFFILIATES, AGENTS, ADVISORS, DIRECTORS, OFFICERS, EMPLOYEES AND ATTORNEYS) HAVE PARTICIPATED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF VOTES AND DISTRIBUTION OF CASH OR SECURITIES PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.

F.    ~~E.~~ *Injunction*

FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

FROM AND AFTER THE EFFECTIVE DATE, THE DEBTORS AND HOLDERS OF CLAIMS OR INTERESTS SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED, OR FOR WHICH EXCULPATION IS PROVIDED, PURSUANT TO ARTICLE VIII HEREOF.

FROM AND AFTER THE EFFECTIVE DATE, HOLDERS OF CLAIMS OR INTERESTS SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE DEBTORS, GUC TRUST AND THEIR RESPECTIVE ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY ARISING UNDER OR RELATED TO ANY THEORY OF SUCCESSOR LIABILITY, DE FACTO MERGER, SUBSTANTIAL CONTINUITY OR SIMILAR THEORIES, WHETHER BASED IN LAW OR EQUITY.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR IN OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED, OR ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE ~~VIIID~~VIIIE ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (4) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN.

THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST OR PENALTIES ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS OR ANY OF THEIR ASSETS, PROPERTY OR ESTATES.  ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED, AND THE INTERESTS SHALL BE CANCELLED.

G.      ~~F.~~ Term of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## ARTICLE IX
## CONDITIONS PRECEDENT TO CONFIRMATION AND
## CONSUMMATION OF THE PLAN

A.    *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation that all provisions, terms and conditions hereof are approved in the Confirmation Order.

1.    Prior to the Confirmation Hearing, the Debtor shall have on hand Cash sufficient to satisfy the reasonably estimated, (i) Allowed Administrative Expense Claims, (ii) Allowed Fee Claims, (iii) Allowed Priority Tax Claims; and (iv) Allowed Priority Non-Tax Claims in an aggregate amount determined by the Debtors or set forth in the Confirmation Order.

B.    *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived by the Debtors:

1.    The Confirmation Order shall have been duly entered and be a Final Order and shall be in form and substance otherwise acceptable to the Debtors.

2.    All actions, documents, certificates and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

C.    *Waiver of Conditions*

The conditions to Confirmation and to the Effective Date set forth above may be waived by the Debtors, with the consent of the Creditors Committee, without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

D.    *Effect of Failure of Conditions*

If the consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtors, any holders or any other Entity; (2) prejudice in any manner the rights of the Debtors, any holders or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any holder of any Claim or any other Entity in any respect.

## ARTICLE X
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments*

Except as otherwise specifically provided in the Plan, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), each of the Debtors expressly reserves its respective rights to revoke or withdraw, to alter, amend or modify the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.      *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file one or more subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor, any holder or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by such Debtor, any holder or any other Entity.

**ARTICLE XI**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals (including Fee Claims) authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to: (a) the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Debtors amending, modifying or supplementing, after the Effective Date, the Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; (d) any dispute regarding whether a contract or lease is or was executory, expired or terminated; and (e) any dispute regarding whether a Cause of Action is a Retained Cause of Action or a GUC Trust Cause of Action;

4.      ensure that distributions to holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.      enter and implement such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Plan Supplement or the Disclosure Statement;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123 or 1146(a) of the Bankruptcy Code;

9.      resolve any cases, controversies, suits, disputes or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.     resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions, and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

12.     resolve any cases, controversies, suits, disputes or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim for amounts not timely repaid;

13.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

14.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement or the Confirmation Order;

15.     enter an order or Final Decree concluding or closing any of the Chapter 11 Cases;

16.     adjudicate any and all disputes arising from or relating to distributions under the Plan;

17.     consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.     determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

20.     hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

21.     hear and determine all disputes involving the existence, nature, scope or enforcement of any exculpations, discharges, injunctions and releases granted in connection with and under the Plan; and

22.     enforce all orders previously entered by the Bankruptcy Court.

23.     The Bankruptcy Court shall retain non-exclusive jurisdiction to hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the GUC Trust and any and all holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.    *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors, Liquidating Supervisor or GUC Trustee, as applicable, and all holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Statutory Committee and Cessation of Fee and Expense Payment*

On the Effective Date, the Creditors' Committee shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases. Except with respect to the unpaid portion of any Allowed Fee Claim, the Debtors shall not be responsible for paying any fees or expenses incurred by the Creditors' Committee after the Effective Date.

D.    *Cooperation with the GUC Trust- Access to Documents.*

After the Effective Date, Debtors shall provide the GUC Trust and its representatives with access, at reasonable times and in a manner as to not unreasonably interfere with their normal business, to the books and records of the Debtors to the extent they relate to the GUC Assets. With respect to any GUC Assets, Debtors shall allow the GUC Trust reasonable access to personnel in connection with the GUC Trust's investigation and pursuit of the GUC Trust Causes of Action, and its analysis and reconciliation of Convenience Class Claims and General Unsecured Claims. Nothing herein shall require the Debtors to incur any out of pocket expense that is not reimbursed by the GUC Trust. The Debtors shall not dispose of any such records relating to the GUC Trust Assets until the dissolution of the GUC Trust or Order of the Bankruptcy Court. Nothing contained herein shall constitute a waiver, modification or compromise of the Debtors' rights, if any, to assert any claim of privilege, including without limitation the attorney-client, work product or common interest privilege.

E.    *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims and Interests before the Effective Date.

F.    *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, if any, of such Entity.

G.     *Notices*

        To be effective, all notices, requests and demands to or upon the Debtors or the GUC Trust shall be in writing (including by facsimile transmission). Unless otherwise expressly provided herein, notice shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed to the following:

**If to the Debtors:**

K&L GATES LLP
John A. Bicks
599 Lexington Avenue
New York, New York  10022-6030
Telephone:  (212) 536-3900
Facsimile:  (212) 536-3901

-and-

Charles A. Dale III
Mackenzie L. Shea
One Lincoln Street
Boston, Massachusetts 02111
Telephone:  (617) 261-3100
Facsimile:  (617) 261-3175

-and

Michael R. Nestor
Matthew B. Lunn
Justin H. Rucki
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware  19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253


        After the Effective Date, the Debtors may, in their sole discretion, notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

01:15144907.2

BOS-3374872 v27

H.    *Entire Agreement*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

I.    *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above, from the Notice, Claims and Balloting Agent's website at http://dm.epiq11.com/LMI/Documents or by downloading such exhibits and documents from the Bankruptcy Court's website at http://www.deb.uscourts.gov. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

J.    *Severability of Plan Provisions*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (3) non-severable and mutually dependent.

K.    *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale and purchase of Securities offered and sold under the Plan and any previous plan and, therefore, no such parties, individuals or the Debtors will have any liability for the violation of any applicable law, rule or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale or purchase of the Securities offered and sold under the Plan or any previous plan.

L.    *Closing of Chapter 11 Cases*

The Liquidating Supervisor or GUC Trustee, as applicable, shall promptly after the full administration of the Chapter 11 Cases or any of them, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order necessary to close the Chapter 11 Cases that have been fully administered.

M.    *Conflicts*

Except as set forth in the Plan, to the extent that any provisions of the Disclosure Statement, the Plan Supplement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Confirmation Order shall govern and control.  Notwithstanding the foregoing or anything else contained in this Plan, nothing in the Plan or Confirmation Order shall modify, alter or affect the Controlling Documents and in any conflict between the Plan, the or Confirmation Order on one hand and the Controlling Documents on the other, the Controlling Documents shall govern and control.

Dated: ~~February 28,~~March 12, 2014

                    Respectfully Submitted,

                    LMI LEGACY HOLDINGS INC., *et al.*

                    By:

                    _____

                    Michael Flynn
                    Co-Chief Restructuring Officer

01:15144907.2

BOS-3374872 v27

Document comparison by Workshare Compare on Wednesday, March 12, 2014
3:08:38 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://WORKSITE02/YCST01/15095691/1 |
| Description | #15095691v1<YCST01> - Landauer -- Plan of Liquidation (As Filed on 2/28) |
| Document 2 ID | interwovenSite://WORKSITE02/YCST01/15144907/2 |
| Description | #15144907v2<YCST01> - Landauer - Joint_Plan_of_Liquidation (As FIled on March 12) |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 180 |
| Deletions | 229 |
| Moved from | 3 |
| Moved to | 3 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 415 |