**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | x<br>:<br>: | |
| In re: | : | Chapter 11 |
| | : | |
| LMI LEGACY HOLDINGS INC., *et al.*,[1] | : | Case No. 13-12098 (CSS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | :<br>:<br>: | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | x | |

## NOTICE OF FILING OF PLAN SUPPLEMENT

   **PLEASE TAKE NOTICE** that, on or about March 13, 2014, the above-captioned debtors and debtors in possession (the "Debtors") filed the *Joint Plan of Liquidation of LMI Legacy Holdings Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 650] (as may be amended or modified, the "Plan").

   **PLEASE TAKE FURTHER NOTICE** that, pursuant to the Plan, the Debtors hereby file this Plan Supplement[2] with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). This Plan Supplement is integral to, part of, and incorporated by reference into the Plan. However, this Plan Supplement has not yet been approved by the Bankruptcy Court. If the Plan is approved by the Bankruptcy Court, this Plan Supplement will be approved by the Bankruptcy Court pursuant to the Confirmation Order, as applicable.

   **PLEASE TAKE FURTHER NOTICE** that this Plan Supplement consists of the following documents, as may be amended, modified or supplemented by the Debtors as set forth below:

   **Exhibit 1**  **Identification of Proposed Liquidating Supervisor and Affiliations**

   **Exhibit 2**  **Form of Liquidating Supervisor Agreement**

---

[1] The Debtors in these Chapter 11 Cases along with the last four digits of each Debtor's federal tax identification number, are as follows: LMI Legacy Holdings Inc. (9115); LMI Legacy Holdings II Inc. (9291); LMI Legacy Holdings III Inc. (3261); LMI Legacy Holdings IV Inc. (0336); LMI Legacy Holdings I LLC (7937); LMI Legacy Holdings II LLC (0026); LMI Legacy Holdings III LLC (4588); and LMI Legacy Holdings IV LLC (7361). Following the sale of substantially all of the Debtors' assets, the Debtors assumed these new names and filed a motion seeking to change the case caption as set forth above, which motion was approved by order dated February 27, 2014 [Docket 604].

01:15311997.2

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve all rights to amend, modify, or supplement this Plan Supplement and the documents attached hereto. To the extent material amendments or modifications are made to any of the documents attached hereto, the Debtors will file a blackline version with the Bankruptcy Court prior to the Confirmation Hearing to reflect such amendments or modifications, or present a blackline to the Court at the Confirmation Hearing.

**PLEASE TAKE FURTHER NOTICE** that copies of this Plan Supplement, the Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by the Debtors' court-appointed Balloting Agent, http://dm.epiq11.com/LMI/Project, by contacting the Debtors' court-appointed Notice, Claims and Balloting Agent by mail at LMI Legacy Holdings Inc. et al. Ballot Processing Center, c/o Epiq Bankruptcy Solutions, LLC, 757 Third Avenue, Third Floor, New York, New York 10017, or by calling the Notice, Claims and Balloting Agent at (646) 282-2500. In addition, copies of the Plan and the Disclosure Statement can be accessed (i) during regular business hours at the office of the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801; or (ii) for a fee at the Court's website at http://www.deb.uscourts.gov. A PACER login and password are required to access documents on the Bankruptcy Court's website and these can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov.

---

[2] Capitalized terms not otherwise defined herein or in any document attached hereto shall have the meaning ascribed to them in the Plan unless otherwise noted.

| | |
|---|---|
| Dated: April 8, 2014<br>Wilmington, Delaware | YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>*/s/ Justin H. Rucki*<br>Michael R. Nestor (No. 3526)<br>Matthew B. Lunn (No. 4119)<br>Justin H. Rucki (No. 5304)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br><br>and<br><br>K&L GATES LLP<br>John A. Bicks<br>599 Lexington Avenue<br>New York, New York 10022-6030<br>Telephone: (212) 536-3900<br>Facsimile: (212) 536-3901<br><br>and<br><br>Charles A. Dale III<br>Mackenzie L. Shea<br>One Lincoln Street<br>Boston, Massachusetts 02111<br>Telephone (617) 261-3100<br>Facsimile: (617) 261-3175<br><br>*Counsel to the Debtors and Debtors-in-Possession* |

# **EXHIBIT 1**

**Identification of Proposed Liquidating Supervisor and Affiliations**

**In accordance with Article IV Sections H and I of the Plan, the Debtors submit the following identification of the proposed Liquidating Supervisor, and the Liquidating Supervisor's affiliations:**

**Proposed Liquidating Supervisor**:

Michael Flynn of Carl Marks Advisory Group LLC

**Affiliations of Proposed Liquidating Supervisor**:

Managing Director at Carl Marks Advisory Group LLC

Co-Chief Restructuring Officer of the Debtors since the Petition Date

# **EXHIBIT 2**

**Form of Liquidating Supervisor Agreement**

# LIQUIDATING SUPERVISOR AGREEMENT

THIS LIQUIDATING SUPERVISOR AGREEMENT (the "Agreement") is entered into as of the _____ day of _____, 2014, by and between LMI Legacy Holdings, Inc., a Delaware corporation; LMI Legacy Holdings II Inc., a New York corporation; LMI Legacy Holdings III Inc., a Pennsylvania corporation; LMI Legacy Holdings IV Inc., a New Jersey corporation; LMI Legacy Holdings I LLC, a Delaware limited liability company; LMI Legacy Holdings II LLC, a Delaware limited liability company; LMI Legacy Holdings III LLC, a Delaware limited liability company; and LMI Legacy Holdings IV LLC, a Delaware limited liability company (collectively, the "Debtors") and Michael Flynn (the "Liquidating Supervisor" and together with the Debtors, the "Parties").

WITNESSETH:

WHEREAS, on March 13, 2014, the Debtors filed the *Joint Plan of Liquidation of LMI Legacy Holdings Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in its lead bankruptcy case: *In re LMI Legacy Holdings Inc., et al.,* Chapter 11 Case No. 013-12098-CSS;

WHEREAS, the Plan provides for the Debtors to appoint a Liquidating Supervisor to oversee the wind-down of their remaining affairs;

WHEREAS, the Debtors, with the consent of the Creditors' Committee, have selected the Liquidating Supervisor to serve in such capacity from and after the Effective Date of the Plan;

WHEREAS, the Liquidating Supervisor is willing to accept the duties of Liquidating Supervisor upon such terms and conditions as are hereinafter set forth.

NOW, THEREFORE, for and in consideration of the promises and mutual covenants herein contained, pursuant to the Plan, the Parties do hereby covenant and agree as follows:

## ARTICLE I

Definition; Interpretive Rules.

1.1    Terms.  For purposes of this Agreement, all capitalized terms shall have the meanings ascribed to them herein, and the following terms shall have the following meanings:

(a)    Capitalized Terms in Plan.  Any capitalized term not defined herein shall have the meaning assigned to it in the Plan.

(b)    Permitted Investments.  Any of the following: (i) marketable direct obligations issued or unconditionally guaranteed by the United States of America or any agency thereof maturing within 180 days from the date of acquisition thereof; (ii) certificates of deposit, maturing no more than 180 days from the date of creation thereof, issued by commercial banks incorporated under the laws of the United States of America or any state thereof or the District of Columbia having membership in the Federal Deposit Insurance Corporation and in amounts not

01:15312072.1

exceeding the maximum amounts insured thereunder, each of which has combined capital, surplus and undivided profits of not less than $750,000,000; (iii) time deposits, maturing no more than 180 days from the date of creation thereof with commercial banks or savings banks each having membership in the Federal Deposit Insurance Corporation and in amounts not exceeding the maximum amounts insured thereunder; (iv) money market funds managed by nationally recognized firms and making only investments qualified under (i), (ii), (iii) or (v) herein; (v) variable rate demand notes with a rating from S&P of "A-1" or better or from Moody's of "P-1" or better; (vi) demand deposits at any bank or savings institution organized under the laws of the United States of America or any state thereof or the District of Columbia having membership in the Federal Deposit Insurance Corporation; provided, however, such demand deposits may be in amounts exceeding the maximum amounts insured by the Federal Deposit Insurance Corporation.

1.2     Interpretive Rules.  For purposes of this Agreement, except as otherwise expressly provided herein or unless the context otherwise requires: (i) references to "Articles," "Sections" and other subdivisions, without reference to a document, are to designated Articles, Sections and other subdivisions of this Agreement; (ii) the use of the term "including" mean "including but not limited to"; and (iii) the words "herein," "hereof," "hereunder," and other words of similar import refer to this Agreement as a whole and not to any particular provision.  The enumeration and headings contained in this Agreement are for convenience of reference only and are not intended to have any substantive significance in interpreting the same.  The singular shall include the plural, and the plural the singular, wherever the context so requires, and the masculine, the feminine, and the neuter genders shall be mutually inclusive.  In the event of any inconsistency between this Agreement and the Plan, the terms of the Plan shall control.

## ARTICLE II

Purpose, Administration.

2.1     Purpose of Agreement.

The Parties hereby enter into the Agreement for the purposes of (a) winding up the remaining affairs of the Debtors the extent necessary and in the manner prescribed by the Plan and this Agreement as reasonably quickly as conditions allow, consistent with the objective of maximizing value, (b) resolving Claims asserted against the Estates of the Debtors, (c) making distributions in accordance with the terms of the Plan from the Wind Down Funds, as quickly as conditions allow, and (d) engaging in any and all other activities which shall be incidental thereto or as may be contemplated by the Plan.  All activities of the Liquidating Supervisor shall be reasonably necessary to, and consistent with the accomplishment of, these purposes.

2.2     Administration of the Wind Down Funds.

From and after the Effective Date, the Liquidating Supervisor shall manage, administer, invest, and/or reinvest all of the Wind Down Funds, collect the income therefrom, if any, resolve (and where necessary object to) Claims, and make distributions, all pursuant to the terms and conditions of the Plan and this Agreement.

## ARTICLE III

Estates of the Debtors

3.1     Limited Existence.

Pursuant to the terms of the Plan and this Agreement, from and after the Effective Date, the Debtors shall remain in existence for the sole purpose of permitting the Liquidating Supervisor to wind up their business and affairs and to administer the Plan.  Upon the completion of administration of the Debtors' Estates, the Liquidating Supervisor, on behalf of the Debtors, shall take such actions as are necessary, including filing any required documents with the relevant governmental unit, to effect the dissolution of each Debtor.

3.2     Post-Effective Date Management.

As provided for in the Plan and herein, the Liquidating Supervisor shall have the exclusive right, obligation, and duty to manage the Debtors' Estates and fulfill the duties of the former members of its boards of directors and officers to administer the Plan, subject, however, to certain limitations of liability as set forth herein and in the Plan.

## ARTICLE IV

Duties, Rights and Powers of Liquidating Supervisor.

4.1     Liquidating Supervisor's Duties.

The Liquidating Supervisor shall manage the Debtors, their Estates, and the Wind Down Funds, collect the income and make distributions as provided under the Plan.  Thereupon, the Liquidating Supervisor shall take such steps as necessary and proper to close the Debtors' Bankruptcy Case and dissolve the Debtors in accordance with the Plan.

4.2     Liquidating Supervisor's Rights and Powers.

The Liquidating Supervisor shall have all powers and authority necessary to manage the Estates and effect the disposition, orderly liquidation, and distribution of the Wind Down Funds according to the terms of the Plan.  The Liquidating Supervisor is not authorized in his capacity as such to engage in any trade or business except to the extent required to preserve the value of any Wind Down Funds.  The rights and powers shall include, subject to the limitations set forth in the Plan and this Agreement, the right and power to:

(a)     Obtain and maintain such space, facilities, equipment, supplies and personnel as shall be reasonably necessary for the performance of the Liquidating Supervisor's duties hereunder and under the Plan;

(b)     Subject to the limitations contained in the Plan and herein, pay, compromise, settle, adjust, agree to, investigate, pursue, or contest any and all claims, including Claims described in the Plan and herein, taxes, or other matters;

(c) Pay all expenses and obligations of the Debtors' Estates out of the Wind Down Funds;

(d) Make the distributions in accordance with the terms of the Plan;

(e) Subject to the requirements of the Plan and herein, determine whether to investigate, to pursue, object to, or defend any rights to payments, or claims, that may belong to Debtors or their Estates, which rights to payment, and claims as of the Effective Date are vested in the Debtors for the benefit of their Estates as provided for by the Plan;

(f) Employ and consult with counsel or special counsel and employ other individuals and professionals (any of which may be the Liquidating Supervisor and his or her firm) in connection with the administration of the liquidation, and pay all reasonable and necessary costs of administration, including the costs of any litigation directly or indirectly involving the liquidation and administration of the Plan, all without Bankruptcy Court approval;

(g) File a suit in interpleader or in the nature of interpleader in the court and obtain an order requiring all persons and parties involved to litigate in such court their respective claims arising out of or in connection with this Agreement; and

(h) File any other appropriate action for relief in an appropriate court of competent jurisdiction; and

(i) Take such steps as necessary and proper to close the Debtors' Bankruptcy Cases (subject to the requirements of the Plan relating to a request by the GUC Trust to abstain from doing so), dissolve the Debtors, and make the distributions required by the Plan.

4.3  <u>Discretion to Obtain Court Approval of Settlements</u>.  The Liquidating Supervisor shall not be required to obtain Bankruptcy Court approval of any settlement or compromise of an action of the type specified in Section 4.2 above.  The Liquidating Supervisor may seek such approval in his sole and absolute discretion upon a motion to the Bankruptcy Court pursuant to Bankruptcy Rule 9019.

4.4  <u>Limitations on Liquidating Supervisor's Liabilities as to Losses</u>.

The Liquidating Supervisor shall not be responsible, and shall have no liability whatsoever to any person for any loss to the Debtors or the amount of interest thereon resulting from the investment thereof in any Permitted Investments, or the decision not to make any particular Permitted Investment.  The Liquidating Supervisor shall not invest or reinvest any Wind Down Funds in a security or instrument that does not constitute a Permitted Investment. The Liquidating Supervisor shall not have any liability to any retirement, employee benefit, or pension plan of the Debtors in excess of the amounts available to be distributed from such Plans.

4.5   Selection of Agents.

The Liquidating Supervisor may select, determine compensation for, and employ brokers, consultants, custodians, investment advisors, asset services, expert witnesses, auditors, accountants, and other agents. The Liquidating Supervisor may avail himself of the services of counsel or special counsel. The Liquidating Supervisor may retain his or her firm or company to provide professional services under this Agreement. Subject to provisions of the Plan, the Liquidating Supervisor may pay the salaries, fees, and expenses of such agents or consultants out of the Wind Down Funds. The Liquidating Supervisor shall not be liable for any loss to the Debtors' Estates or any person interested therein by reason of any mistake or default of any such agent or consultant unless such mistake or default breaches the standard of care set forth in Section 4.7(a).

4.6   Signature.

As of the Effective Date of the Plan, the Liquidating Supervisor or his designee shall have the sole signature power and authority to, among other things, (a) open and close accounts with any banking, financial or investment institution; (b) make deposits and withdrawals of cash and other property into or from any such account; (c) make or endorse checks with respect to any such account; (d) effectuate purchases and sales of securities and give security purchase and sale orders to brokers or any other third parties; (e) complete and file federal and state tax returns on behalf of the Estates; (f) cause the Debtors to take any corporate action not expressly prohibited by the Plan or this Agreement (without any necessity for any approval by the board of directors, members, or any other entity) and (g) to the extent permitted by law, execute any and all leases in connection with any real estate, and the exercise of such power and authority shall be deemed to be authorized by and to represent the decision of the Liquidating Supervisor then entitled to make such decision.

4.7   Liability of Liquidating Supervisor.

(a)   Standard of Care. The Liquidating Supervisor shall not be liable for the consequences of any act or failure to act, except for bad faith acts, gross negligence or willful misconduct. The Liquidating Supervisor shall not have any fiduciary relationship with any party by virtue of this Agreement except as specifically set forth in this Agreement:

   (1)   The Liquidating Supervisor shall not, solely by virtue of his position as Liquidating Supervisor, be liable or in any way responsible for the acts or omissions of any of the Debtors, their boards of directors or managers, officers, employees, or agents, prior to the Effective Date.

   (2)   The Liquidating Supervisor shall not be compelled to do any act or to take any action toward the execution or enforcement of the powers created under the Plan or this Agreement or to prosecute or defend any suit in respect hereof. If the Liquidating Supervisor requests approval from the Bankruptcy Court with respect to any act or action in connection with the Plan or this Agreement, the Liquidating Supervisor shall be entitled (but shall not be required) to refrain (without incurring any liability to any

- 5 -

person by so refraining) from such act or action unless and until it has received such instructions or approval. In no event, however, shall the Liquidating Supervisor or any of his representatives be required to take any action which he reasonably determines could lead to criminal or civil liability.

(3)  The Liquidating Supervisor shall not be responsible in any manner to the Debtors, their Estates, any holder of a Claim or Equity Interest, or any party-in-interest for:

   (i)   the creditworthiness of any party and the risks involved to the Debtors or such holder or party-in-interest;

   (ii)  the effectiveness, enforceability, genuineness, validity, or any due execution of the Plan or this Agreement as to any person other than the Liquidating Supervisor;

   (iii) any representation, warranty, document, certificate, report, or statement made herein or furnished hereunder or in connection with the Plan or this Agreement not constituting bad faith acts, gross negligence or willful misconduct on the part of the Liquidating Supervisor,

   (iv)  the existence, priority or perfection of any existing Lien; or

   (v)   the observation or compliance with any of the terms, covenants, or conditions of the Plan or this Agreement on the part of any party thereto other than the Liquidating Supervisor.

(4)  The Debtors, holders of Claims or Equity Interests and parties-in-interest, by voting for the Plan and/or accepting the benefits thereof, have agreed not to sue or otherwise pursue or seek damages from the Liquidating Supervisor pursuant to the Plan or this Agreement except for bad faith acts, gross negligence or willful misconduct on the part of the Liquidating Supervisor.

(b)  <u>No Liability for Acts of Predecessor</u>.  No successor Liquidating Supervisor shall be in any way responsible for the acts or omissions of any Liquidating Supervisor in office prior to the date on which such person becomes a Liquidating Supervisor, nor shall he be obligated to inquire into the validity or propriety of any such act or omission unless such successor Liquidating Supervisor expressly assumes such responsibility.  Any successor Liquidating Supervisor shall be entitled to accept as conclusive any final accounting and statement of Wind Down Funds famished to such successor Liquidating Supervisor by such predecessor Liquidating Supervisor and shall further be responsible only for those Wind Down Funds included in such statement.

(c)  <u>No Implied Obligations</u>.  The Liquidating Supervisor shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and

- 6 -

in the Plan, and no other or further covenants or obligations shall be implied into this Agreement. The Liquidating Supervisor shall not be responsible in any manner whatsoever for the correctness of any recitals, statements, representations, or warranties herein or in any documents or instrument evidencing or otherwise constituting a part of the Wind Down Funds.  The Liquidating Supervisor makes no representations as to the value of the Wind Down Funds or any part thereof, nor as to the validity, execution, enforceability, legality, or sufficiency of this Agreement; and the Liquidating Supervisor shall incur no liability or responsibility with respect to any such matters.

(d) <u>Reliance by Liquidating Supervisor on Documents or Advice of Counsel or Other Persons</u>.  Except as otherwise provided herein, the Liquidating Supervisor may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report notice, request, consent, order, and other paper or document reasonably believed to be genuine and to have been signed or presented by the party or parties reasonably believed to be a proper party or parties, and shall have no liability or responsibility with respect to the form, execution, or validity thereof; nor shall the Liquidating Supervisor be liable for any act which he may do or omit to do hereunder, except for bad faith acts, gross negligence or willful misconduct on the part of the Liquidating Supervisor.  None of the provisions hereof shall require the Liquidating Supervisor to expend or risk his own funds or otherwise incur financial liability or expense in the performance of any duties hereunder. The Liquidating Supervisor may consult with legal counsel and shall not be liable for any action taken, abstained from or otherwise suffered in reliance upon the advice of such counsel.

(e) <u>No Personal Obligation for the Debtors' Liabilities</u>.  Holders of Claims and other persons transacting business with the Liquidating Supervisor in his capacity as Liquidating Supervisor within the scope of this Agreement, shall look only to the Wind Down Funds to satisfy any liability incurred by the Liquidating Supervisor to such person in carrying out the terms of this Agreement, and the Liquidating Supervisor shall have no personal or individual obligation to satisfy any such liability.

4.8 <u>Reports</u>.

The Liquidating Supervisor shall prepare and submit all reports required under the Plan, if any, and as may be further ordered by the Bankruptcy Court.

4.9 <u>Tax Returns</u>.

In accordance with the Plan, from and after the Effective Date, the Liquidating Supervisor shall be responsible for the filing of any and all federal and state tax returns as required by law to be filed on behalf of the Estates, including the final tax returns, and shall pay all tax liabilities arising from such tax returns out of the Wind Down Funds.

4.10 <u>Compensation for Liquidating Supervisor and Professionals</u>.

Following the Effective Date of the Plan, the Liquidating Supervisor and any and all professionals retained pursuant to this Agreement will be paid reasonable compensation for their services and reimbursed for their expenses in the ordinary course of business without approval of the Bankruptcy Court.  It is not anticipated that the Liquidating Supervisor will need to devote

his full business time to his duties as such, but rather it is anticipated that the Liquidating Supervisor can fulfill his duties on a part-time basis. The initial hourly rate of the Liquidating Supervisor shall be $525 per hour, which rate is subject to periodic adjustment.

    4.11    Reimbursement of Liquidating Supervisor's and Professionals' Expenses.

The Liquidating Supervisor and any professionals, agents, and consultants employed pursuant to this Agreement shall be reimbursed from the Wind Down Funds for all reasonable out-of-pocket expenses incurred in the performance of their duties hereunder in addition to any compensation received.

    4.12    Liquidating Supervisor's Indemnification.

Pursuant to this Agreement and the Plan, the Liquidating Supervisor shall be indemnified by, held harmless, and receive reimbursement from the Wind Down Funds for any and all claims, actions, demands, losses, damages, expenses, and liabilities, including without limitation court costs, attorneys' fees and accountants' fees incurred. Notwithstanding the above, the Liquidating Supervisor shall not be entitled to indemnification in the event that a court of competent jurisdiction determines that such person has incurred losses or claims as a result of bad faith acts, gross negligence or willful misconduct on the part of the Liquidating Supervisor.

    4.13    Limitation on Powers of Liquidating Supervisor.

Notwithstanding any provision of this Agreement to the contrary, the Liquidating Supervisor shall not, transfer or dispose of any of the Wind Down Funds except in accordance with the Plan.

## ARTICLE V

Distributions.

The Liquidating Supervisor shall make all distributions to holders of Allowed Administrative Expense Claims, Allowed Fee Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims as provided in the Plan.

## ARTICLE VI

Appointment, Removal, and Resignation
of Liquidating Supervisor.

    6.1    Appointment of Liquidating Supervisor; Acceptance of Appointment.

The Liquidating Supervisor is hereby appointed to serve as the initial Liquidating Supervisor hereunder, and pursuant to the Plan. The Liquidating Supervisor is willing, and does hereby accept the appointment, to serve as the initial Liquidating Supervisor, and to hold and administer the Wind Down Funds pursuant to the terms of the Plan and this Agreement.

6.2 <u>Removal of Liquidating Supervisor</u>.

Pursuant to the Plan and this Agreement, the Liquidating Supervisor may be removed only for cause as determined by final order upon motion to the Bankruptcy Court by a party-in-interest. If the Liquidating Supervisor is removed for cause, such Liquidating Supervisor shall not be entitled to any accrued but unpaid fees, reimbursements or other compensation under this Plan, Liquidating Supervisor Agreement or otherwise. Under the Plan and the Liquidating Supervisor Agreement, the term "cause" shall mean: (a) the Liquidating Supervisor's gross negligence or willful failure to perform his or her duties under this Plan or the Liquidating Supervisor Agreement; (b) the Liquidating Supervisor's misappropriation or embezzlement of any assets belonging to the Debtors or their Estates or the proceeds thereof; or (c) the Liquidating Supervisor's continued or repeated negligence or failure to perform his duties under the Plan or the Liquidating Supervisor Agreement. If a Liquidating Supervisor is unwilling or unable to serve by virtue of his inability to perform his duties under the Liquidating Supervisor Agreement, due to death, illness, or other physical or mental disability, subject to a final accounting, such Liquidating Supervisor shall be entitled to all accrued and unpaid fees, reimbursements, and other compensation, to the extent incurred or arising or relating to events occurring before such removal, and to any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties and all rights to any successor Liquidating Supervisor.

6.3 <u>Resignation of Liquidating Supervisor</u>.

A Liquidating Supervisor may resign upon motion to the Bankruptcy Court, which resignation shall become effective at the time specified by the Bankruptcy Court, contemporaneous with the appointment of a successor Liquidating Supervisor. If a Liquidating Supervisor resigns from his position hereunder, subject to a final accounting, such Liquidating Supervisor shall be entitled to all accrued unpaid fees, reimbursement, and other compensation to the extent incurred or arising or relating to events occurring before such resignation, and any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties to the successor Liquidating Supervisor.

6.4 <u>Successor Liquidating Supervisor</u>.

In the event that a Liquidating Supervisor is removed, resigns, or otherwise ceases to serve as Liquidating Supervisor, a successor Liquidating Supervisor may be appointed by motion of a party-in-interest, subject to approval by the Bankruptcy Court, or *sua sponte* by order of the Bankruptcy Court.

**ARTICLE VII**

Effect of Agreement on Third Parties.

There is no obligation on the part of any purchaser or purchasers from the Estates, the Debtors or the Liquidating Supervisor, or any agent of the Liquidating Supervisor, or on the part of any Person transacting business with the Estates, the Debtors or the Liquidating Supervisor, or any agent of the Liquidating Supervisor, to monitor the application of the purchase money or

other consideration paid or delivered to the Liquidating Supervisor, or any agent of the Liquidating Supervisor. Similarly, there is no obligation on the part of any purchaser or purchasers from the Estates, the Debtors or the Liquidating Supervisor, or any agent of the Liquidating Supervisor, or on the part of any Person transacting business with the Estates to inquire into the validity, expediency, or propriety of any such transaction, or the authority of the Liquidating Supervisor, or any agent of the Liquidating Supervisor, to enter into or consummate the same upon such terms as the Liquidating Supervisor may deem advisable.

## ARTICLE VIII

Termination of the Agreement and Amendment.

8.1   Termination of the Agreement.

The Agreement will terminate, and the Liquidation Supervisor be discharged from his duties hereunder, upon order of the Bankruptcy Court.

8.2   Amendment of Agreement.

Except as otherwise set forth herein, any provisions of the Agreement may be amended, modified, terminated, revoked, or altered only upon Bankruptcy Court approval.

## ARTICLE IX

Miscellaneous.

9.1   Severability.

If any one or more of the provisions herein, or the application thereof in any circumstances, is held invalid, illegal or unenforceable in any respect for any reason, the validity, legality and enforceability of any such provision in every other respect, and of the remaining provisions, shall not be in any way impaired or affected. In such event, there shall be added as part of this Agreement a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.

9.2   Entire Agreement.

This Agreement (including the recitals hereto), the Plan, and the Confirmation Order constitute the entire agreement of the parties and there are no representations, warranties, covenants, or obligations except as set forth herein or therein. This Agreement, the Plan, and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. In the event of any inconsistency between this Agreement and the Plan, the Plan shall govern. Except as otherwise specifically provided herein, nothing in this Agreement is intended or shall be construed to confer upon or to give any person other than the parties hereto and their respective heirs, administrators, executors, successors, and assigns any rights or remedies under or by reason of this Agreement.

9.3 <u>Jurisdiction; Venue, Etc.</u>

Each party hereto irrevocably agrees that any suit, action or proceeding with respect to this Agreement may be brought in the Bankruptcy Court, and if for any reason such submission to jurisdiction is invalid, then such action, suit or proceeding may be brought in the Courts of the State of Delaware or of the United States of America for the District of Delaware, and by execution and delivery of this Agreement, each party (i) irrevocably submits, to the fullest extent permitted by law, to each such jurisdiction and venue, (ii) waives, to the fullest extent permitted by law, any objection which it may have to the laying of the venue of any such suit, action or proceeding brought in such court has been brought in an inconvenient forum, and (iii) agrees that final judgment in any such suit, action or proceeding brought in such a court shall be conclusive and binding upon it and may be enforced in any court to the jurisdiction of which such party is subject by a suit upon such judgment, provided that service of process is effected as otherwise permitted by law.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the undersigned have caused this instrument to be executed as, of the day and year first above written to evidence their consent and agreement with the terms and provisions of this Agreement.

          LIQUIDATING SUPERVISOR


          By:_____
            _Michael Flynn_____


          The Debtors:

          LMI LEGACY HOLDINGS INC.
          LMI LEGACY HOLDINGS II INC.
          LMI LEGACY HOLDINGS III INC.
          LMI LEGACY HOLDINGS IV INC.
          LMI LEGACY HOLDINGS I LLC
          LMI LEGACY HOLDINGS II LLC
          LMI LEGACY HOLDINGS III LLC
          LMI LEGACY HOLDINGS IV LLC


          By:_____
            _____