IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LMI LEGACY HOLDINGS INC., *et al.*, | ) | Case No. 13-12098 (CSS) |
| | ) | Jointly Administered |
| | ) | Objection Deadline: June 26, 2014 at 4:00 p.m. EST |
| Debtors. | ) | Hearing Date: July 15, 2014 at 1:00 p.m. EST |

## MOTION OF RAYMOND LOFFREDO FOR RELIEF FROM THE AUTOMATIC STAY AND DISCHARGE INJUNCTION

Raymond Loffredo, by and through his undersigned counsel, hereby moves (the "Motion") this Honorable Court, pursuant to Sections 105(a) and 362(d), 524 and 1141 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Federal Rules of Bankruptcy Procedure 3020(d) and 4001, and Local Rule 4001-1, for an order lifting the plan injunction for the purpose of (i) permitting liquidation of Mr. Loffredo's employment discrimination claims against the reorganized debtors formerly known as Landauer, Healthcare Holdings, Inc.) ("LHHI") and Landauer-Metropolitan, Inc. ("LMI", and, together with LMI, "Landauer"), which are asserted in an action pending in the United States District Court for the District of New Jersey (the "District Court Action"), and (ii) to proceed to collect on any judgment in the first instance against any available insurance proceeds under any applicable policy. In support of his Motion, Mr. Loffredo respectfully states the following:

### The Parties

1. Landauer provided home medical equipment and related products and services to customers located in the northeast United States. Upon information and belief, Landauer's principal place of business is located in Mount Vernon, New York. *See Declaration of Alan J. Landauer in Support of First Day Motions*, ¶ 4, filed August 16, 2013 [Docket No. 3].

2. Mr. Loffredo is a United States citizen and New Jersey resident. He is currently a resident of Passaic County.

3. Mr. Loffredo was employed by Landauer from August, 2008 until May, 2011 as general manager of New York and New Jersey Operations. Mr. Loffredo worked at Landauer's corporate headquarters in Mount Vernon, New York, and at their operations facilities located in Metuchen and Runnemede, New Jersey. In May, 2011, Mr. Loffredo was removed from his position as general manager of the New York Operations and placed in a new position as general manager of Operations, New Jersey. Mr. Loffredo remained in this position until his employment was terminated on or about April 9, 2012. At the time of his termination, Mr. Loffredo worked at Landauer's Runnemede, New Jersey office.

4. On August 16, 2013 (the "Petition Date"), the above-captioned debtors (the "Debtors") commenced these cases by filing voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

5. This Court approved the *Debtors' Revised Joint Plan of Liquidation* (the "Plan") on April 28, 2014 (the "Confirmation Order") [D.I. 761]. The Plan Effective Date was May 1, 2014. *See Notice of Effective Date*, filed May 1, 2014 [D.I. 770].

6. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

### Jurisdiction and Venue

7. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This Motion is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

8. Venue for this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The statutory predicates for the relief requested herein are Sections 105(a) and 362(d) of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 4001, and Local Rule 4001-1

## **Background**

10. The following background is provided as a summary only. Attached to this Motion as Exhibit A is a true and correct copy of Mr. Loffredo's Complaint filed on August 14, 2013 commencing the District Court Action (Case No. 13-4906-SRC).

11. Mr. Loffredo began working as area sales and general manager of operations for Air Products Healthcare in 2005. Landauer acquired Air Products in August, 2008, and Mr. Loffredo became Landauer's New York and New Jersey Operations general manager. In May, 2011, Landauer divided Mr. Loffredo's general manager position into two new positions: New York operations general manager (with the title of Corporate Director Customer Service) and New Jersey operations general manager. The New York operations general manager position had significantly greater responsibilities than the New Jersey operations general manager. Despite Mr. Loffredo's 20 years of general management experience, the New York operations general manager position was given to a 35 year old woman who had significantly less business and general management experience. Mr. Loffredo alleges that Landauer reduced his job responsibilities as a result of age, sex and disability discrimination, and with the intent to harass Mr. Loffredo into quitting.

12. On or about March 9, 2012, Mr. Loffredo completed an EEOC Questionnaire and submitted it to the director of the EEOC's New York District Office. He also filed administrative charges with the New York State Human Rights Commission and with the New Jersey Division on Civil Rights on or about April 11, 2012 (the "Charges").

13. The Charges alleged unlawful harassment and retaliation and also age, sex and disability discrimination and unlawful failure to provide reasonable accommodation following necessary surgeries associated with Mr. Loffredo's disability (as more fully described in the Complaint).

14. On April 8, 2012, Landauer informed Mr. Loffredo that his position at Landauer had been eliminated and his employment terminated effective April 9, 2012, four weeks after Mr. Loffredo filed the administrative charges described in paragraph 11 above.

15. Mr. Loffredo subsequently withdrew the Charges with the EEOC, New York State Human Rights Commission and New Jersey Division on Civil Rights in March, 2013. Neither the EEOC, the New York State Human Rights Commission, nor the New Jersey Division on Civil Rights entered findings with respect to Mr. Loffredo's discrimination charges.

16. Mr. Loffredo filed the District Court Action on August 14, 2013, two days before the Petition Date. The Complaint alleges, *inter alia*, discrimination and harassment under the Age Discrimination Employment Act of 1967 (the "ADEA") and New Jersey's Law Against Discrimination ("LAD"); retaliation for engaging in protected activities under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act, ADEA and LAD; and sex discrimination under Title VII and LAD. The Complaint seeks, *inter alia*, Mr. Loffredo's reinstatement, payment of lost wages, restoration of lost seniority, other monetary and non-monetary compensation, damages for distress, pain and suffering, and punitive damages.

17. Upon information and belief, the Debtors may be covered by insurance policies applicable to Mr. Loffredo's claims.

18. By this Motion, Mr. Loffredo seeks relief from the automatic stay imposed by Section 362(a) of the Bankruptcy Code and the discharge injunction imposed by Section 1141 of

the Bankruptcy Code and Landauer's confirmed plan so that he may pursue the District Court Action to judgment or other resolution and satisfy any judgment or other resolution he may obtain against the Debtors in the first instance from the proceeds of any applicable insurance policies.

### Basis for the Relief Requested

19. The Bankruptcy Code provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay ... for cause....

11 U.S.C. § 362(d). The term "cause" is not defined in the Code, but rather, must be determined on a case-by-case basis. *In the Matter of Rexene Products Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citations, internal quotations omitted).

Mr. Loffredo seeks relief from both the automatic stay and the discharge injunction. Under § 105(a), "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the title." 11 U.S.C. § 105(a). Moreover, § 1141, which is incorporated by reference under § 524, generally provides that a confirmed plan binds creditors and allows the discharge of certain debts of a Chapter 11 debtor. Finally, Fed. R. Bankr. P. 3020 gives the Court's retained jurisdiction following confirmation of a plan to "issue any other order necessary to administer the estate." Consequently, courts have determined that these provisions, in combination, provide the necessary authority to impose and interpret injunctive and discharge provisions following confirmation of a plan. *See In re Carematrix Corp.*, 306 B.R. 478, 485 (Bankr. D. Del. 2004); *In re Continental Airlines, Inc.*, 236 B.R. 318, 326-27 n.11 (Bankr. D. Del. 1999), *aff'd, In re Continental Airlines, Inc.*, 279 F.3d 226 (3rd Cir. 2002).

20. Similar to modification of the automatic stay under § 362 of the Bankruptcy Code, a court may modify a plan's permanent injunctive and discharge provision for "good cause." *See*

e.g., *In the Matter of Hendrix*, 986 F.2d 195, 198 (7th Cir. 1993) ("any court that issues an injunction can modify it for good cause on the motion of a person adversely affected by it."). The analysis of "cause" under § 362(a) has been used in determining whether to alter such provisions. *See In the matter of Shondel*, 950 F.2d 1301, 1304 (7th Cir. 1991).

21. The three factors that courts generally consider when balancing the competing interests of a debtor and a movant seeking relief to proceed with litigation in another forum are (1) the prejudice that would be suffered should the stay be lifted, (2) the balance of hardships facing the parties, and (3) the probable success on the merits if the stay is lifted. *In re Continental Airlines*, 152 B.R. 420, 424 (D. Del. 1993).

22. Here, the facts weigh in Mr. Loffredo's favor on each of these three prongs. First, to the extent the Court allows Mr. Loffredo to prosecute the District Court Action, the Debtors would not suffer prejudice because the Plan has been confirmed, the estate is now in liquidation, and Mr. Loffredo's claims will have to be liquidated at some point before Mr. Loffredo can receive any distribution in this bankruptcy proceeding.

23. Moreover, on information and belief, insurance was in place during the relevant time period and available to cover Mr. Loffredo's claims. To the extent that the Debtors' liability to Mr. Loffredo is covered by insurance policies, any recovery by Mr. Loffredo will not affect the Debtors' estates. *In re 15375 Memorial Corp.*, 382 B.R. 652, 687 (Bankr. D. Del. 2008), *on reconsideration,* 386 B.R. 548 (Bankr. D. Del. 2008), *rev'd on other grounds*, 400 B.R. 420 (D. Del. 2009) ("when a payment by an insurer cannot inure to the debtor's pecuniary interest, then that payment should neither enhance nor decrease the bankruptcy estate") (quoting *In re Edgeworth*, 993 F.2d 51); *see also In re Allied Digital Tech. Corp.*, 306 B.R. 505, 510 (Bankr. D. Del 2004) (ownership by a bankruptcy estate of an insurance policy is not necessarily

determinative of the ownership of the proceeds of that policy). To the extent that Mr. Loffredo's claim is not covered by the Debtors' insurance, Mr. Loffredo seeks to liquidate, as opposed to collect, his claims via the District Court Action. *In re Tricare Rehabilitation Systems, Inc.*, 181 B.R. 569, 578 (Bankr. N.D. Ala. 1994) (lifting the stay to liquidate, as opposed to collect); *In re Metzner*, 167 B.R. 414, 416 (E.D. La. 1994) (same).

24. Further, to the extent that Mr. Loffredo's claims are covered by the Debtors' insurance policies, relief from the plan injunction to pursue such coverage is justified: the protection from liability afford to a debtor under the code does not affect the liability of the debtor's insurers. *First Fidelity Bank v. McAteer*, 985 F.2d 114, 118 (3d Cir. 1993).

25. Second, Mr. Loffredo will face substantial hardship if the discharge injunction is not lifted. Mr. Loffredo is disabled and lives in Northern New Jersey. He has waited to prosecute his claims for nearly a year. The conduct that is the subject of the District Court Action also occurred in New Jersey and/or New York and is governed by a combination of federal, New Jersey and New York law. The relevant documents and witnesses, are located outside of Delaware. If Mr. Loffredo is forced to litigate his claims in Delaware, he would incur the increased expense of bringing his attorneys and witnesses to Delaware and retaining Delaware counsel.

26. Moreover, if Mr. Loffredo is not permitted to liquidate his claims in the non-bankruptcy forum of his choice, the litigation in Delaware will be before this Court. The relevant witnesses may not be able to be compelled by subpoena to testify at any trial in Delaware.[1] The trial would necessarily involve determinations of liability under federal discrimination law as well

---

[1] Fed. R. Civ. P. 45(b)(2) and (c)(3)(A)(ii), made applicable in cases under the Bankruptcy Code by Fed. R. Bankr. P. 9016. The Committee Note to Rule 9016 states: "Although Rule 7004(d) authorizes nationwide service of process, Rule 45 F. R. Civ. P. limits the subpoena power to the judicial district and places outside the district which are within 100 miles of the place of the trial or hearing."

7

as New Jersey's employment discrimination statute, a law with which a New Jersey district court could be expected to have greater familiarity. *See In re_The Conference of African Union First Colored Methodist Protestant Church*, 184 B.R. 207, 218 (Bankr. D. Del. 1995) ("[T]he existence of a more appropriate forum than the bankruptcy court is "cause" for relief under Code § 362(d)(1)."); *In the Matter of Baker*, 75 B.R. 120, 121 (Bankr. D. Del. 1987) (granting relief from stay to permit Family Court to determine issues with which it had expertise).

27.   Further, the District Court Action has named several John Doe defendants who are believed to be non-debtor parties as well as residents of states other than Delaware. The District Court Action may eventually name these John Doe defendants specifically as necessary parties. Failure to lift the injunction will be prejudicial to Mr. Loffredo, who will be forced to litigate the matter twice -- once against the Debtors in Delaware, and again against the nonresident, non-debtor John Doe defendants -- which could lead to conflicting judgments and would be wasteful of judicial resources.

28.   By contrast, the Debtors will not suffer any meaningful hardship if the District Court Action is allowed to proceed. A primary purpose of the automatic stay is to give debtors a breathing spell in which to focus on their reorganization without the distraction of having to defend litigation at the same time. As stated above, the Debtors have confirmed a plan of reorganization, so there is no further reorganization to focus upon.

29.   Third, the final prong of the analysis is satisfied by "even a slight probability of success on the merits ... in an appropriate case." *In re Continental Airlines*, 152 B.R. at 425. This prong also weighs in Mr. Loffredo's favor because he alleges that his damages were a result of the Debtors' wrongful and discriminatory conduct. "Only strong defenses to [non-bankruptcy] court proceedings can prevent a bankruptcy court from granting relief from the stay in cases where ...

the decision-making process should be relegated to bodies other than [the bankruptcy] court." *In re Fonseca v. Philadelphia Housing Authority*, 110 B.R. 191, 196 (Bankr. E.D. Pa. 1990). No strong defenses would appear to exist here. At the very least, there can be no question that the District Court Action would present triable factual issues. *In re Fernstrom Storage and Van Co.*, 938 F.2d 731, 736 (7th Cir. 1991) (the court lifted the automatic stay where underlying action was not frivolous).

30.     On these facts, cause exists to lift the plan injunction. *Cf. In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830, 838 n.8 (Bankr. S.D.N.Y. 1990) ("cause" utilized to permit litigation in another forum to liquidate personal injury claim); *In the Matter of Rexene Products, Inc.*, 141 B.R. at 576 (legislative history indicates "cause" may be established by single factor including to permit action to proceed in another tribunal).

### **Conclusion**

WHEREFORE, Mr. Loffredo respectfully requests the entry of an Order, substantially similar to the proposed form of order attached hereto as Exhibit B, modifying the automatic stay and the discharge injunction to allow him to (i) prosecute the District Court Action to judgment or other resolution, (ii) liquidate his claims against Landauer, (iii) seek satisfaction of any judgment obtained against the Debtors in the first instance from the proceeds of any insurance coverage available to the Debtors that may be applicable to Mr. Loffredo's claims; and (iv) granting to Mr. Loffredo such other and further relief as is just and proper.

Dated: May 29, 2014
      Wilmington, Delaware               SULLIVAN • HAZELTINE • ALLINSON LLC

*/s/ William A. Hazeltine*
_____
William A. Hazeltine (No. 3294)
Seth S. Brostoff (No. 5312)
901 N. Market Street, Suite 1300
Wilmington, DE 19801
Tel: (302) 428-8191
Fax: (302) 428-8195

*Attorneys for Raymond Loffredo*