## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LMI LEGACY HOLDINGS, INC., | ) | Case No. 13-12098 (CSS) |
| | ) | |
| Debtor. | ) | |
| ——————————————————— | ) | |
| EDWARD L. LIPSCOMB, AS SPECIAL | ) | |
| TRUSTEE OF THE LMI GUC TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 15-51069 (CSS) |
| | ) | |
| CLAIRVEST EQUITY PARTNERS | ) | |
| LIMITED PARTNERSHIP, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————————— | ) | |

### OPINION[1]

**LANDIS RATH & COBB LLP**
Kerri K. Mumford (DE Bar No. 4186)
James S. Green Jr. (DE Bar No. 4406)
Joseph D. Wright (DE Bar No. 5669)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Counsel to the Edward L. Lipscomb, as
Special Trustee of the LMI GUC Trust

**POTTER ANDERSON & CORROON LLP**
Jeremy W. Ryan (DE Bar No. 4057)
Etta R. Mayers (DE Bar No. 4164)
T. Brad Davey (DE Bar No. 5094)
1313 North Market Street, Sixth Floor
Wilmington, DE 19899-0951
Telephone: (302) 984-6000
Facsimile: (302) 658-1192

-and-

---

[1]  Fed.R.Bankr.P. 7021 makes Fed.R.Civ.P. 21 applicable to adversary proceedings.  Fed.R.Bankr.P. 7087 provides that, on motion and after a hearing, the court may transfer an adversary proceeding or any part thereof to another district pursuant to 28 U.S.C. § 1412.  "A determination of whether to transfer venue under § 1412 turns on the same issues as a determination under § 1404(a) which permits a court to transfer a *civil action* '[f]or the convenience of the parties and the witnesses [or] in the interest of justice.'"  *In re Centennial Coal, Inc.,* 282 B.R. 140, 144 (Bankr.D.Del. 2002) (*quoting* 28 U.S.C. § 1404(a)) (emphasis in original).

**CADWALADER, WICKERSHAM &
TAFT LLP**
Gregory A. Markel, Esq.
Gillian Groarke Burns, Esq.
Heather E. Murray, Esq.
One World Financial Center
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
Counsel to RBC Capital Markets, LLC

Dated: June 3, 2016

Sontchi, J. _____

## INTRODUCTION

Charles F. Kuoni, as Special Trustee of the LMI GUC Trust (the "*Trustee*" and the "*GUC Trust*"), filed this adversary proceeding on August 14, 2015,[2] asserting eighteen causes of action against seventeen individuals and corporate entities.[3]  The Trustee has asserted two claims against RBC Capital Markets, LLC ("*RBC*")—a claim for breach of contract and a claim that RBC aided and abetted breaches of fiduciary duty by other Defendants.[4]  On January 25, 2016, RBC filed a motion to sever these two claims and transfer them to the Southern District of New York ("*SDNY*").[5]  RBC argues that under 28 U.S.C. § 1404, as interpreted by the Supreme Court in *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*,[6] this Court must give effect to a valid and enforceable forum selection clause in all but the most extraordinary cases.  RBC asserts that its pre-petition Engagement Letter with LMI contains a valid forum selection clause that requires the Trustee's claims to be heard in SDNY; therefore, RBC argues, the Trustee's claims against it should be severed and transferred.[7]

The Court finds that the forum selection clause in RBC's Engagement Letter is valid and enforceable.  The clause was communicated to the Trustee and its language is unmistakably mandatory.  The Trustee has failed to show that the forum selection clause is unreasonable or unjust, or that the clause is invalid as a result of fraud or overreaching.  However, the Court also finds that the forum selection clause only covers the Trustee's claim for breach of contract.  RBC's forum selection clause—when read as broadly as reasonably possible—covers claims concerning the (1) interpretation of the Engagement Letter, (2) enforcement of the transactions contemplated by the Engagement Letter and

---

[2]    D.I. 4 (the "*Trustee's Complaint*" or "*the Complaint*").

[3]    *Id*.

[4]    *Id*. at ¶¶ 265-280.

[5]    D.I. 65.

[6]    134 S. Ct. 568, 187 L. Ed. 2d 487 (2013).

[7]    *RBC Brief in Support*, D.I. 66, pp. 1-2.

(3) defense of the transactions contemplated by the Engagement Letter. The Trustee's claim that RBC aided and abetted breaches of fiduciary duty by other defendants does not, as a matter of law, fall with these categories of claims. Therefore, only the Trustee's claim for breach of contract is subject to the forum selection clause.

The Trustee's claim that RBC aided and abetted breaches of fiduciary duty by other Defendants will not be severed and transferred. Because this claim is not subject to the forum selection clause, the Trustee's choice of venue is entitled to substantial deference. RBC has failed to show that the parties' private interests or the public interest substantially favor transfer. Moreover, the Court finds that severance of this claim is unwarranted because severance would substantially harm judicial economy, prejudice the other Defendants and create a risk of inconsistent rulings.

Finally, the Court must deny the request for severance and transfer of the Trustee's claim for breach of contract, even though this claim is subject to a valid and enforceable forum selection clause. *Atlantic Marine* does instruct courts to give effect to a valid forum selection clause in all but the most unusual of circumstances.[8] *Atlantic Marine*, however, was decided on its facts: one plaintiff, one defendant and all claims were subject to the parties' forum selection clause.[9]

This proceeding presents a far more complex set of facts. First, RBC requests both severance under Fed.R.Civ.P. 21 and transfer under 28 U.S.C. § 1412. Transfer analysis focuses primarily on the interests of the parties and a valid forum selection clause represents an advance agreement by parties on their preferred forum for adjudication. Severance, on the other hand, results in two simultaneous proceedings; Rule 21 analysis, therefore, focuses primarily on judicial economy. Second, this proceeding involves sixteen defendants who were not parties to the Engagement Letter's forum selection clause and whose interests must be considered. Third, severance and transfer of the

---

[8]    134 S. Ct. at 581.

[9]    *Id*. at

Trustee's aiding and abetting claim would clearly be improper.  Thus, RBC will remain a Defendant in this proceeding even if the Court severed and transferred the Trustee's claim for breach of contract.

These distinctions weigh heavily against severance and transfer of the breach of contract claim.  First, severance of the Trustee's breach of contract claim would result in two substantially duplicative proceedings.  Although the Trustee's claim for breach of contract and the Trustee's aiding and abetting claim do not share common questions of law, identical questions of fact are critical to both claims.  Discovery and witness testimony for both claims will focus on RBC's actions between 2011 and 2013: what RBC did to market LMI, how did RBC evaluate potential transactions, with whom did RBC communicate and to whom did RBC report? The answers to these questions will be determinative for both of the Trustee's claims.  Second, the interests of the other Defendants in this proceeding substantially weigh against severance and transfer.  A number of them may be called to testify on these questions of fact.  Requiring these Defendants to testify twice would not only be wasteful of their time and resources, but would expose them to a risk of inadvertent perjury that would not otherwise exist. Furthermore, the Defendants against whom the Trustee has brought claims for breach of fiduciary duty clearly have an interest in any findings of fact related to the aforementioned questions of fact, and would qualify for permissive intervention in SDNY under Rule 24(b).  Severance and transfer of the breach of contract claim would therefore impede their ability to protect their interests or impose additional costs on them in protecting that interest.  For these reasons, the Court will deny severance and transfer of the Trustee's breach of contract claim.

## BACKGROUND

Before filing for bankruptcy in 2013, LMI and its affiliates collectively operated as a regional home medical equipment supplier in the northeastern United States.[10]  Most of LMI's sales and rentals to individuals were paid for by third party payer groups.  Since 2002, certain Medicare & Medicaid contracts have been periodically awarded through a competitive bidding process ("*Competitive Bidding*") run by the Center for Medicare Services ("*CMS*"); bids are evaluated based on the bidder's eligibility, financial stability and the bid price.[11]  Approximately 35% of LMI's historical revenues were derived directly from Medicare and Medicaid programs.[12]

LMI's controlling shareholder pre-petition was Clairvest, a Toronto-based private equity firm;[13] on the petition date, Clairvest owned a 62.5% equity interest in LMI.[14] Clairvest also controlled LMI's Board through its power to nominate five of the nine members of LMI's Board of Directors (the "*Clairvest Board Members*" and the "*Board*," respectively).[15]  Clairvest began investing in LMI in December 2002 through its private equity funds and quickly obtained a controlling position.[16]  Clairvest also holds an unsecured claim against the estate for $5,200,000 as a result of three loans made to LMI between March 2010 and February 2011; Clairvest's claim accounts for approximately 30% of the Debtors' estimated general unsecured creditor pool.[17]  The Trustee seeks to re-characterize these notes as equity.[18]

---

[10]  *Trustee's Complaint* at ¶ 36.

[11]  *Id*. at ¶ 38.

[12]  *Id*. at ¶¶ 37-39.

[13]  *Id*. at ¶ 2.

[14]  *Id*. at ¶ 40.

[15]  *Id*. at ¶ 41.

[16]  *Id*. at ¶ 42.

[17]  *Id*. at ¶ 43.

[18]  *Id*. at ¶ 44.

LMI initiated a sale process and retained RBC as its investment banker in November of 2011.[19]  The Trustee alleges that Clairvest & its Board Members initiated this sale process and signed the Engagement Letter, dated November 4, 2011, with RBC before involving the non-LMI Board Members.[20]  RBC was an investor in a separate Clairvest fund and apparently this preexisting relationship was not disclosed to the Board.[21]  David Sturdee, a Clairvest-appointed Board Member, apparently negotiated RBC's Engagement Letter,[22] and RBC's Engagement Letter was signed by Louis P. Rocco, CEO and Board Member of LMI.[23]

The Trustee alleges that RBC only communicated with and reported to Clairvest and its Board Members.  The Trustee further asserts that RBC never appeared at a Board meeting during 2011 and 2012.[24]  This sale process apparently ended in May of 2012, without a single acceptable bid having been received.[25]  It is unclear what constituted an "acceptable bid," but the Trustee alleges that Clairvest—not LMI—had provided RBC with guidelines for what would be acceptable.[26]  The Trustee believes that Clairvest received offers valuing LMI in excess of $70,000,000.[27]

After a number of years of growth, LMI's revenue peaked in 2011 with reported net revenue of $139,656,000.  LMI's net revenue fell slightly to $137,160,000 in fiscal year 2012 and suffered a steeper fall to $128,500,000 in fiscal year 2013.  LMI's EBITDA those three years was $12,034,000, $18,524,000 and $13,200,000, respectively.[28]  The primary cause of

---

[19]  *Id.* at ¶¶ 68-71.

[20]  *Id.*

[21]  *Id.* at ¶¶ 69-73.

[22]  *Id.*

[23]  *Engagement Letter* at p. 10.

[24]  *Id.* at ¶¶ 73-80.

[25]  *Id.* at ¶ 78.

[26]  *Id.* at ¶¶ 73-80.

[27]  *Id.* at ¶ 87.

[28]  *First Day Declaration of Alan J. Landauer*, Case No. 13-12098 D.I. 3, at ¶ 16.

LMI's bankruptcy filing was not its profitability or cash flow during this period, but its failure to win a single service area in Medicare's 2013 Competitive Bidding.[29]  LMI's bids were rejected, despite their competitive pricing, because CMS determined that LMI might not be financially capable of providing the services for which it had bid.[30]  LMI received notification that it had been disqualified from Competitive Bidding on January 30, 2013.[31]

Clairvest apparently anticipated a negative ruling from CMS and had already renewed its effort to sell LMI.  By the end of January of 2013, Clairvest had negotiated a non-disclosure agreement with a potential suitor.[32]  By March of 2013, Clairvest had begun negotiating with Passaic Healthcare Services, LLC, d/b/a Allcare Medical ("*Allcare*").  LMI's Board met on March 4, 2013—for the first time after CMS disqualified LMI—to begin discussing sale and merger options.  The minutes apparently show that Clairvest and its Board Members did not disclose the negotiations with Allcare, the letter of intent Clairvest had received from Allcare that day, or discuss RBC's involvement in a new sale process.[33]

The Board explored a number of transactions over the following months; it appears that Board Members independently pursued different potential transactions, resulting in growing internal strife between them.[34]  LMI eventually entered into a letter of intent with Allcare on April 29, 2013.[35]  The Trustee alleges that there are no Board minutes indicating that the Board approved this sale or was aware that this LOI had been executed and signed.[36]  This merger eventually fell through; its failure led to a significant portion

---

[29]   *Id*. at ¶¶ 35-40.

[30]   *First Day Hearing Transcript*, Case No. 13-12098, D.I. 100, p. 6, ln. 15-24.

[31]   *Trustee's Complaint* at ¶ 92.

[32]   *Id*. at ¶ 95.

[33]   *Id*. at ¶¶ 95-96.

[34]   *Id*. at ¶¶ 98-139.

[35]   *First Day Declaration of Alan J. Landauer* at ¶ 42.

[36]   *Trustee's Complaint* at ¶¶ 106-108.

of LMI's management, including two Board Members, choosing to leave LMI and join Allcare. This exodus, in turn, led to substantial litigation.[37]

In July 2013, LMI's Senior Secured Lenders asserted that an event of default had occurred and began restricting LMI's access to cash collateral.[38] LMI and its affiliates declared bankruptcy on August 16, 2013 with a pre-negotiated stalking horse, Quadrant Management Inc., and a plan to sell the Debtors' businesses at auction.[39]

On September 25, 2013, the Official Committee of Unsecured Creditors, LMI DME Holdings, LLC, and Quadrant Management Inc. entered into a settlement agreement that provided for the creation of the General Unsecured Trust (the "*GUC Trust*"). This Court approved the Settlement Agreement on October 22, 2013.[40] The Debtors' Plan of Reorganization was filed on March 13, 2014[41] and confirmed on April 28, 2014.[42] The Settlement Agreement, Plan, and Confirmation Order transferred to the GUC Trust the right to prosecute certain claims of the Debtors.[43]

## ANALYSIS

### I. Choice of Law

The Court must first determine which jurisdiction's law governs the Trustee's claims: Delaware or New York.[44] The Engagement Letter provides that "[it] shall be governed by and construed in accordance with the laws of the State of New York, without regard

---

[37]  *Id*. at ¶¶ 42-44.

[38]  *Id*. at ¶ 47.

[39]  *Id*. at ¶¶ 49-50.

[40]  Case No. 13-12098, D.I. 282.

[41]  Case No. 13-12098, D.I. 650.

[42]  Case No. 13-12098, D.I. 761.

[43]  *Joint Plan of Liquidation*, D.I. 650, p. 7 (Definition of "GUC Trust Causes of Action").

[44]  Neither party argues or implies that another jurisdiction's law would govern these claims. As the Court explains below, the relevant choice of law rules point only to Delaware or New York.

to the conflicts of laws provisions thereof."[45]  The Trustee has not directly challenged this choice of law provision and therefore the Court finds that the Trustee's breach of contract claim is governed by New York law.  However, the Engagement Letter states that "**the Engagement Letter** shall be governed by… [New York law]."[46]  Because the Trustee's claim that RBC aided and abetted breaches of fiduciary duty by the Clairvest Entities and the Board is a claim that does not derive from the Engagement Letter, the choice of law provision is inapplicable to this claim.

The Court believes that New York law would probably govern the aiding and abetting claim at trial, but makes no definitive ruling for two reasons.  First, there is a split of authority on what choice of law principle should be applied here and neither party addressed this question in their briefing.  Second, the Court would deny severance and transfer of this claim even if it is governed by New York law, a finding which would favor severance and transfer.  Because this issue is not outcome determinative, the Court believes it would be ill-advised to confront the split of authority without the benefit of further briefing.

In most tort actions, the courts of Delaware apply the "most significant relationship test" enumerated in the Restatement (Second) of Conflicts.[47]  Section 145 of the Restatement (Second) instructs the court to examine four types of contacts: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered.  LMI's headquarters are in Mount Vernon, New York, its board meetings were held in New York, the plurality of its revenue was derived from activity in New York, the parties'

---

[45] *Engagement Letter* at ¶ 11.

[46] *Id.*

[47] *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991) (*citing* RESTATEMENT (SECOND) OF CONFLICTS § 145 (1971)).

relationship was established and centered in New York[48] and RBC is based in New York. [49]   The only relationship Delaware has to these claims is as LMI's state of incorporation.   Thus, if the most significant relationship test is the applicable choice of law rule, New York law would govern this claim.

However, there is a split of authority on whether the Court should apply the "most significant relationship" test or the "internal affairs doctrine" to a claim for aiding and abetting a breach a breach of fiduciary duty.[50]  "The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs."[51]  Because the internal affairs doctrine in the applicable choice of law doctrine for breach of fiduciary duty claims, some courts have held that claims for aiding and abetting breaches of fiduciary duty are also governed by the internal affairs doctrine. [52]   As LMI is a Delaware corporation application of the internal affairs doctrine would result in a determination that Delaware law governs the Trustee's claim against RBC for aiding and abetting breaches of fiduciary duty.   Because the Court would deny severance and transfer of the Trustee's claim regardless of which choice of law doctrine is applied, resolution of this question is unnecessary.

## II.  Is the Forum Selection Clause Valid and Enforceable?

The Court finds that the forum selection clause is valid and enforceable.   Under New York law, "[a] forum-selection clause is 'presumptively enforceable' if the moving party can demonstrate that: (1) the clause was reasonably communicated to the party challenging enforcement; (2) the clause is mandatory, rather than permissive, in nature;

---

[48]   *See First Day Declaration of Alan J. Landauer.*

[49]   *RBC Brief in Support* at p. 9.

[50]   *See Wultz v. Bank of China Ltd.*, 811 F. Supp. 2d 841, 851 (S.D.N.Y. 2011) (*opinion withdrawn on reconsideration,* 865 F. Supp. 2d 425 (S.D.N.Y. 2012)) (collecting cases).

[51]   *Edgar v. MITE Corp.,* 457 U.S. 624, 645–46, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982).

[52]   *E.g. Lou v. Belzberg,* 728 F.Supp. 1010, 1023 (S.D.N.Y.1990); *Bernstein v. Crazy Eddie, Inc.,* 702 F.Supp. 962, 986 (E.D.N.Y.1988) (*vacated in part on other grounds sub nom. In re Crazy Eddie Securities Litig.,* 714 F.Supp. 1285 (E.D.N.Y.1989)).

and (3) the clause encompasses the plaintiff's claims."[53]  If these three requirements are met, then the party resisting enforcement of the forum selection clause has the burden of showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching."[54]

The Court finds that the forum selection clause is mandatory and was reasonably communicated.  The Court further finds that the Trustee has failed to show reason for the clause to not be enforced.  However, the Court also finds that the forum selection clause only covers the Trustee's claim for breach of contract.   In determining whether to sever and transfer, therefore, the Court must analyze the Trustee's claim for breach of contract differently from the Trustee's claim for aiding and abetting a breach of fiduciary duty.

### a.  The forum selection clause was reasonably communicated.

The Court finds that the forum selection clause was reasonably communicated to the Trustee.  First, the Trustee made plain his awareness of the terms of the Engagement Letter by bringing an action against RBC for breach of that contract.[55]  Second, the Trustee is asserting state law claims inherited from the Debtors; as a result, "the [T]rustee stands in the shoes of the debtor… the [T]rustee is, of course, subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor."[56] Therefore, the forum selection clause binds the Trustee to the extent it would have bound the Debtor had the Debtor brought this action.  The Engagement Letter was negotiated with LMI's Board Members and signed by Lou Rocco, the President and CEO of LMI.[57]

---

[53]  *Bent v. Zounds Hearing Franchising, LLC*, No. 15 CIV. 6555, 2016 WL 153092, at *3 (S.D.N.Y. Jan. 12, 2016) (*citing Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007)).

[54]  *Phillips*, 494 F.3d at 383 (*quoting M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)).

[55]  *See Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542, 558 (S.D.N.Y. 2013).

[56]  *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1154 (3d Cir. 1989) (*quoting Collier on Bankruptcy*, ¶ 323.02[4]).

[57]  *RBC Reply Brief* at p. 8.

As discussed in greater detail below, these actions were sufficient to bind the Debtor. Because the forum selection clause was reasonably communicated to LMI, it was reasonably communicated to the Trustee.

However, if the Trustee were to assert claims that "are not derivative of the bankrupt" but "creditor claims that the Code authorizes the Trustee to assert on their behalf," the Debtor's agreement to a forum selection clause would not bind these claims.[58]  The Trustee has stated that it will bring a fraudulent transfer claim against RBC if discovery reveals any payments were made by LMI to RBC.[59]  The Third Circuit has found that fraudulent transfer claims under 11 U.S.C. § 544(b) and § 548 are creatures of the Bankruptcy Code, are asserted by the Trustee on behalf of the creditors of the estate and, therefore, the Debtor's pre-petition agreements would not bind these claims.[60]  The Trustee's current claims are state law claims inherited from the Debtor, however, and the Court finds that the forum selection clause was reasonably communicated to and binding upon the Trustee.

### b.  The forum selection clause is mandatory.

"Mandatory forum selection clauses… require that disputes *must* be brought in the designated forum, to the exclusion of all other fora where jurisdiction may also lie."[61] The Court holds that the forum selection clause is mandatory because the plain text of the Engagement Letter is mandatory:

> "Each party agrees that any action, claim, suit, or proceeding (each a "*Proceeding*") concerning the interpretations, enforcement and defense of the transactions

---

[58]  *See Hays & Co.*, 885 F.2d at 1155.  *See also Allegaert v. Perot*, 548 F.2d 432, 436 (2d Cir. 1977) ("if there had been no federal bankruptcy proceeding and if a creditor had independently asserted a claim… the creditor would not have been subject to any arbitration agreement. Since the trustee stands in the creditor's shoes for this purpose, he too should not be compelled to arbitrate these claims").

[59]  *Trustee's Reply Brief* at p. 6.

[60]  *See In re AstroPower Liquidating Trust*, 335 B.R. 309, 328 (Bankr. D. Del. 2005).  *See also Hays & Co.*, 885 F.2d at 1155.

[61]  *Kasper Glob. Collection*, 952 F. Supp. 2d at 559 (*quoting Global Seafood Inc. v. Bantry Bay Mussels Ltd.*, 659 F.3d 221, 225 (2d Cir.2011)).

contemplated by this Engagement Letter (whether brought against a party hereto or its respective affiliates, employees or agents) **will be exclusively commenced** in the state and federal courts sitting in the City of New York, Borough of Manhattan (the "*New York Courts*"). Each party hereto hereby irrevocably submits **to the exclusive jurisdiction** of the New York Courts for the adjudication of any dispute hereunder or in connection herewith…"[62]

### c. The forum selection clause covers only the Trustee's claim for breach of contract.

RBC's forum selection clause only covers claims "concerning the interpretations, enforcement and defense of the transactions contemplated by this Engagement Letter." When interpreted as broadly as is reasonably possible, the forum selection clause can be read as encompassing three categories of claims: (1) claims concerning interpretation of the Engagement Letter; (2) enforcement of the transactions contemplated by the Engagement Letter; and (3) defense of the transactions contemplated by the Engagement Letter. The Trustee's claim for breach of contract plainly falls within the first category. To adjudicate the Trustee's aiding and abetting claim, however, the Court need not interpret the Engagement Letter, nor make any determination involving the enforcement or defense of transactions contemplated by the Engagement Letter. Therefore, the forum selection does not cover the Trustee's claim that RBC aided and abetted breaches of fiduciary duty by the other Defendants.

In New York, a claim for aiding and abetting a breach of fiduciary duty has three elements: "(1) breach of fiduciary obligations to another of which the aider and abettor had actual knowledge; (2) the defendant knowingly induced or participated in the breach; and (3) plaintiff suffered actual damages as a result of the breach." [63]

---

[62]  *Engagement Letter* at ¶ 11 (emphasis added).

[63]  *In re MF Glob. Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 182 (S.D.N.Y. 2014) (*reconsideration denied*, No. 11 CIV. 7866 VM, 2014 WL 8184606 (S.D.N.Y. Mar. 11, 2014), and *aff'd sub nom. In re MF Glob. Holdings Ltd. Inv. Litig. (DeAngelis v. Corzine)*, 611 F. App'x 34 (2d Cir. 2015), *cert. denied sub nom. Bearing Fund LP v. PricewaterhouseCoopers LLP*, 136 S. Ct. 497, 193 L. Ed. 2d 352 (2015)) (*quoting Kottler v. Deutsche Bank AG*, 607 F.Supp.2d 447, 466 (S.D.N.Y.2009)). As discussed *supra*, the Court is assuming, arguendo, that New York law controls this claim but is not making a definitive ruling.

Furthermore, "a person knowingly participates in a breach of fiduciary duty only when he or she provides 'substantial assistance' to the primary violator."[64]

RBC advances three arguments for finding this claim within the scope of the forum selection clause. First, RBC argues that the Trustee's aiding and abetting claim is one that "grow out of the contractual relationship" or is a claim based on "a breach of that relationship."[65] Next, RBC argues that RBC's contractual duties are the basis for the Trustee's claim.[66] RBC asserts this must be true because the Trustee noted in his complaint that RBC had an advisory obligation to LMI.[67] Finally, RBC asserts that "there is no basis for Plaintiffs position that the aiding and abetting claim involves extra-contractual duties."[68]

RBC's arguments are wrong as a matter of law; an aiding and abetting claim does not "*just involve*" extra-contractual duties, an aiding and abetting claim **only involves** extra-contractual duties. It is a common law tort claim whose duties arise solely by law, not by contract. If RBC knowingly aided Clairvest and the Board in breaches of their fiduciary duties, RBC could be found liable for aiding and abetting if it: (1) contracted with LMI, (2) contracted with Clairvest directly or (3) contracted with no one at all. RBC's contractual relationship with LMI is only relevant to this claim as an evidentiary matter, because its failure to perform its contractual duties makes stronger an inference that (1) RBC actually aided and abetted Clairvest and the Board in their breaches of fiduciary duty and (2) did so knowingly.[69]

---

[64] *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006) (*quoting Kaufman v. Cohen*, 307 A.D.2d 113, 126, 760 N.Y.S.2d 157, 170 (2003)).

[65] *RBC's Replay Brief* at p. 5 (*citing Cfirstclass Corp. v. Silverjet PLC,* 560 F. Supp. 2d 324, 329 (S.D.N.Y. 2008)).

[66] *RBC's Replay Brief* at p. 5.

[67] *Id.* (*quoting Trustee's Complaint* at ¶ 269).

[68] *RBC's Reply Brief* at p. 5 (*citing RBC Cap. Mkts. LLC v. Jervis*, 2015 WL 7721882, at *35 n.191 (Del. Nov. 30, 2015)).

[69] For example, if RBC did fail to perform its contractual duties, this would constitute a breach of contract. But it would also be evidence of *scienter*—if RBC knew it had a duty to advise the Board and attend

Moreover, were this Court to find in favor of the Trustee at trial on both claims, it would award compensation for two entirely separate and distinct sources of harm. If RBC is found to have breached its contract with LMI, RBC will be liable, at most, for expectation damages—the value to LMI of the performance that RBC was contractually obligated to give. In contrast, "[a]ny one who knowingly participates with a fiduciary in a breach of trust is liable for the full amount of the damage caused thereby to the *cestuis que trust*."[70] Under New York law, the aider and abettor is jointly and severally liable with the fiduciary for the harm caused by the fiduciary's breach;[71] RBC's potential liability on this claim is wholly unconnected to the Engagement Letter.

### d. The Trustee has not shown that the forum selection clause was procured by fraud or undue influence, or that its enforcement would be unreasonable.

Even if a forum selection clause has been established as presumptively enforceable, the party resisting enforcement can defeat a forum selection clause if that party shows that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching."[72] These exceptions, however, are quite narrow. First, enforcement of a forum selection clause is unjust only if "trial in the contractual forum will be so gravely difficult and inconvenient that [the party resisting enforcement] will for all practical purposes be deprived of his day in court."[73] Second, "to invalidate a

---

Board Meetings, but never did so at the behest of the Clairvest Entities or Clairvest Board Members, this fact would make stronger an inference that RBC knew Clairvest was attempting to mislead the Board or manipulate the sale process.

70  *S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843, 848 (2d Cir. 1987) (*citing Wechsler v. Bowman,* 285 N.Y. 284, 291, 34 N.E.2d 322, 326 (1941); *Rosen v. Rosen,* 78 A.D.2d 911, 912, 432 N.Y.S.2d 921, 923 (3d Dep't 1980)). *See also Talansky v. Schulman,* 2 A.D.3d 355, 360, 770 N.Y.S.2d 48, 53 (2003) ("This includes an officer of a corporation who knowingly participates in a breach of the corporation's fiduciary duties").

71  Perhaps as a result of imposing joint and several liability, New York courts will only find a defendant liable for aiding and abetting a breach of fiduciary duty if "he or she provides 'substantial assistance' to the primary violator." *Lerner*, 459 F.3d at 294 (*quoting Kaufman*, 307 A.D.2d at 126).

72  *Phillips*, 494 F.3d at 383 (*quoting M/S Bremen,* 407 U.S. at 15).

73  *M/S Bremen*, 407 U.S. at 18 (1972); *See also British W. Indies Guar. Trust Co. v. Banque Internationale a Luxembourg*, 172 A.D.2d 234, 234, 567 N.Y.S.2d 731, 732 (1991); *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190, 202 (3d Cir.1983).

16

forum selection clause [for fraud] the Trustee has to show that the fraud alleged relates to the clause specifically and not simply to the contract as a whole."[74]  Finally, "[u]nder New York law, a party claiming that it was unduly influenced to enter a contractual relationship must prove that it contracted under circumstances indicating that a 'relationship of control' existed and that the 'stronger' of the two parties had exerted influence over the other to 'destroy the weaker party's free will and substitute for it the will of the [other].'"[75]

The Court finds no basis for denying enforcement of the Engagement Letter's forum selection.  First, the Southern District of New York is not so seriously inconvenient a forum that the Trustee would be deprived of his day in court—and the Trustee has not raised any reasonable argument on this question.[76]  Second, the Trustee has not alleged that the forum selection clause, specifically, was procured by fraud.[77]  Finally, the Trustee has not alleged facts from which the Court could conclude that the forum selection clause was the result of undue influence.

The Trustee's argument on undue influence is straightforward but insufficient as a matter of law.  First, the Trustee asserts that RBC and Clairvest had an existing relationship which meant that Clairvest was "obligated" to hire RBC.[78]  Second, the Trustee claims that Clairvest dominated LMI's Board and therefore controlled RBC's hiring process.  Thus, the Trustee argues that the Engagement Letter was procured by

---

[74]  *In re Bennett Funding Grp., Inc.*, 259 B.R. 243, 252 (N.D.N.Y. 2001).

[75]  *Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367, 393 (S.D.N.Y. 2001) (*quoting Hoffmann v. Sprinchorn*, No. 95–CV–05793E (Sc), 1997 WL 128352, at *3 (W.D.N.Y. Mar.13, 1997).  *Also see TufAmerica, Inc. v. Codigo Music LLC*, No. 11 CIV. 1434 (ER), 2016 WL 626557, at *21 (S.D.N.Y. Feb. 16, 2016).

[76]  *See Trustee's Response Brief* at p. 8, stating "it is unreasonable to sever the contract claim against RBC and enforce the forum selection clause in light of the extreme difficulty and inconveniences dual litigation would cause."  The reasonableness of transfer is a question for the Court's analysis under § 1404; to invalidate the forum selection clause, the cost and difficulty to a party in litigating in the chosen forum must be far more than "unreasonable;" it must effectively deny the litigant its day in court.

[77]  *Id.* at p. 6-7.

[78]  *Id.* at p. 7.

RBC's undue influence over LMI in a multistep process—RBC held undue influence over Clairvest, who held undue influence over LMI.[79]  The Trustee, however, has not alleged facts that would allow the Court could conclude that RBC had a relationship of "control" over Clairvest.  Although Clairvest was somewhat conflicted when it hired RBC, this is not the level of undue influence that renders a forum selection clause invalid.  In fact, the factual allegations in the Complaint indicate that to the extent one of the two exerted control over the other, it was Clairvest that dominated RBC.[80]

The Court also finds RBC's arguments persuasive.  RBC negotiated with David Sturdee, a Board Member,[81] and the Engagement Letter was signed by Lou Rocco, the President and CEO of LMI.[82]  Actions taken by an officer within the scope of her office "are binding on the corporation against one who does not know of any limitation or the president's true authority."[83]  A third party has no duty to inquire into an officer's actions unless "the transaction [was] extraordinary or so novel that it should [have] alert[ed] the third party to the danger of fraud."[84]  The Trustee has not alleged facts that would allow the Court to hold that RBC had a duty to inquire about Mr. Rocco's authority *at any time before the agreement was made*.  As a result, even if this Court were to find that Mr. Rocco violated his fiduciary duties or behaved improperly when he engaged RBC, LMI would still be bound by the Engagement Letter.

---

[79]   *Id.* (stating, "[t]he Engagement Letter is the result of undue influence over LMI and overwhelming bargaining power by RBC via Clairvest, who exercised complete control over the Company").

[80]   *Trustee's Response Brief* at p. 7 (stating "RBC acted only at Clairvest's direction, and the Clairvest Board Members strategically kept material information from RBC that compromised RBC's ability to bring in viable bids…").

[81]   *Trustee's Complaint* at ¶¶ 69-71.

[82]   *RBC Reply Brief* at p. 8.

[83]   *RBC Reply Brief* at p. 8 (*quoting Odell v. 704 Broadway Condo.,* 728 N. Y.S.2d 464, 469 (App. Div. 1st Dep't 2001)).

[84]   *RBC Reply Brief* at p. 9 (*quoting C.E. Towers Co. v. Trin. & Tobago (BWIA Int'l) Airways Corp.,* 903 F. Supp. 515, 524 (S.D.N.Y. 1995)).

## III.  Severance and Transfer Must Be Denied

The Court will deny RBC's motion to sever and transfer the Trustee's claims.  As the Court explains below, a motion to sever and transfer several claims from a much larger proceeding presents substantial issues not present in *Atlantic Marine*, which dealt with the transfer of an entire proceeding from one jurisdiction to another.  The Court does not reach this outcome lightly; in *Atlantic Marine*, the Supreme Court directly told lower courts to give great deference to a valid forum selection clause.  Nevertheless, the Court cannot ignore the fact that *Atlantic Marine* presented a far simpler question—how much deference must courts give to a valid forum selection clause when analyzing a motion to transfer under § 1404.

### a.  Legal standard upon a motion to transfer venue

In *Jumara v. State Farm Ins. Co.*,[85] the Third Circuit instructed courts to analyze "all relevant factors" in determining whether "litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."[86]  To assist lower courts in making this determination, the Third Circuit identified a set of private and public interest factors (the "*Jumara Factors*") that are relevant to most § 1404 motions to transfer venue.[87]  The *Jumara* private interest factors are:

> (1) the plaintiff's forum preference;
> (2) the defendant's preference;
> (3) whether the claim arose elsewhere;
> (4) the convenience of the parties;
> (5) whether witness may be unavailable for trial in one of the fora; and
> (6) the location of books and records to the extent they would be unavailable in one of the fora.[88]

---

[85]  55 F.3d 873 (3d Cir. 1995).

[86]  *Id*. at 879.

[87]  *Kraft Foods Grp. Brands LLC v. TC Heartland, LLC*, No. CV 14-28-LPS, 2015 WL 4778828, at *11 (D. Del. Aug. 13, 2015) (*report and recommendation adopted,* No. CV 14-28-LPS, 2015 WL 5613160 (D. Del. Sept. 24, 2015)) (*citing Jumara*, 55 F.3d at 879-80).

[88]  *Jumara*, 55 F.3d at 879.

The *Jumara* public interest factors are:

(1) the enforceability of the judgment;
(2) practical considerations that could make the trial easy, expeditious or inexpensive;
(3) the congestion in the courts of the potential fora;
(4) the local interest in the controversy;
(5) the public policies of the fora; and
(5) the familiarity of the trial judge with the applicable state law.[89]

In *Atlantic Marine*, the Supreme Court held that "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases."[90]  To properly give effect to a forum selection clause, the Supreme Court instructed district courts to "alter their usual § 1404(a) analysis in three ways."[91]  Two of those analytical differences are applicable here.  First, "the plaintiff's choice of forum merits no weight."[92]  Second, "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests."[93]  The Court went on to conclude that because public interest factors "will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."[94]

**b.  Legal standard for a motion to sever claims.**

Under Fed.R.Civ.P. 21, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."  The purpose of severance is to "prevent a plaintiff from manipulating the system by joining a peripherally connected defendant to the main action for the sole purpose of accentuating the burdens of trial upon a defendant who otherwise would have been

---

[89]  *Id*. at 879-80.

[90]  *Atl. Marine*, 134 S. Ct. at 581.

[91]  *Id*.

[92]  *Id*. at 581-82.

[93]  *Id*. at 582.

[94]  *Id*. at 582.

entitled to a § 1404(a) transfer."[95] "Whether severance is warranted requires balancing of several considerations, including 'the convenience of the parties, avoidance of prejudice to either party, and promotion of the expeditious resolution of the litigation.'"[96]

Courts have often looked to three factors when determining whether to sever a claim: whether "(1) the claim to be preserved is peripheral to the remaining claims; (2) the adjudication of the remaining claims is potentially dispositive of the severed claim; and (3) the transfer of the remaining claims is warranted under 28 U.S.C. § 1404(a)."[97] Before granting severance, "a judge should weigh the convenience to the parties requesting transfer against the potential inefficiency of litigating the same facts in two separate forums."[98]

*Atlantic Marine* did not address the issue of severance[99] and "in the Third Circuit, a severance motion is distinct from, and precedes, a transfer motion."[100] Neither the Third Circuit nor the District Court of Delaware has addressed how *Atlantic Marine* should be applied in a situation involving multiple defendants and claims of which only a portion are subject to a valid and enforceable forum selection clause. This Court finds persuasive and adopts the reasoning of the Fifth Circuit in *In re Rolls Royce Corp.*,[101] which held that

---

[95]  *LG Elecs., Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 584 (D.N.J. 2001) (*quoting Mobil Oil Corp. v. W.R. Grace & Co.*, 334 F.Supp. 117 (S.D.Tex.1971)). *See also Wyndham Associates v. Bintliff*, 398 F.2d 614, 618-19 (2d Cir. 1968).

[96]  *Official Comm. of Unsecured Creditors v. Shapiro*, 190 F.R.D. 352, 355 (E.D. Pa. 2000) (*quoting German v. Federal Home Loan Mortgage Corp.*, 896 F.Supp. 1385, 1400 n. 6 (2d Cir.1995)).

[97]  *Rothschild Mobile Imaging Innovations, LLC v. Mitek Sys., Inc.*, No. CV 14-1142-GMS, 2015 WL 4624164, at *2 (D. Del. July 31, 2015) (*citing MGT Gaming, Inc. v. WMS Gaming, Inc.*, 978 F.Supp.2d 647, 664 (S.D.Miss.2013); *LG Elecs., Inc. v. First Int'l Computer, Inc.*, 138 F.Supp.2d 574, 584–85 (D.N.J.2001)). *See also Sunbelt Corp. v. Noble, Denton & Associates, Inc.*, 5 F.3d 28, 34 (3d Cir. 1993).

[98]  *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 144 (3d Cir. 1999) (*citing Sunbelt*, 5 F.3d at 33-34).

[99]  *See In re Rolls Royce Corp.*, 775 F.3d 671, 681 (5th Cir. 2014) (*cert. denied sub nom. PHI Inc. v. Rolls Royce Corp.*, 136 S. Ct. 45, 193 L. Ed. 2d 27 (2015)).

[100]  *In re Rolls Royce Corp.*, 775 F.3d at 681 (*cert. denied sub nom. PHI Inc. v. Rolls Royce Corp.*, 136 S. Ct. 45) (*citing ABCO Engineering*, 199 F.3d at 144-45).

[101]  775 F.3d at 681.

"the severance-and-transfer inquiry in situations where some but not all parties have entered into a forum selection clause ought go as follows: First, pursuant to *Atlantic Marine,* the private factors of the parties who have signed a forum agreement must, as matter of law, cut in favor of severance and transfer to the contracted for forum. Second, the district court must consider the private factors of the parties who have *not* signed a forum selection agreement as it would under a Rule 21 severance and section 1404 transfer analysis. Finally, it must ask whether this preliminary weighing is outweighed by the judicial economy considerations of having all claims determined in a single lawsuit. In so determining, the district court should consider whether there are procedural mechanisms that can reduce the costs of severance…"[102]

Precedent makes clear that in adjudicating a motion to sever, judicial economy and prejudice to the parties are the Court's primary focus. In contrast, § 1404 analysis focuses on the private interests of the parties, with a secondary focus on public interests. This distinction is logical and necessary — § 1404 simply moves an entire proceeding from one jurisdiction to another. Severance under Rule 21 results in two separate proceedings and therefore involves a risk of harm to judicial economy that § 1404 transfer does not. Severance and transfer creates an even greater risk to judicial economy and the possibility of inconsistent adjudication by the two courts.

RBC has not cited any precedent that holds that § 1404's emphasis on the private interests of the parties outweighs Rule 21's emphasis on judicial economy. The Court has not found any controlling precedent that makes such a definitive statement. As a result, the Court gives equal weight to both in determining whether to sever and transfer the Trustee's claims against RBC.

### c. The Trustee's claim that RBC aided and abetted breaches of fiduciary duty by other defendants should not be severed and transferred.

The Court will deny severance and transfer of this claim. First, severance of this claim is clearly not warranted. Second, because this claim is not covered by RBC's forum selection clause, the Third Circuit's holding in *Jumara* guides the Court's § 1404 analysis. The Court finds that the *Jumara* private and public interest factors favor retention of this

---

[102] *Id.*

claim.  Finally, the private interests of the other Defendants clearly support retention of this claim.

Severance of this claim would be inappropriate for several reasons.  First, the Trustee's aiding and abetting claim was *not* brought in order to "[join] a peripherally connected defendant to the main action for the sole purpose of accentuating the burdens of trial upon [that] defendant."  A claim brought against "B" for aiding and abetting a breach of fiduciary duty by "A" is inextricably intertwined with the claim brought against "A" for breach of fiduciary duty—*a priori*, both claims should be adjudicated at the same time by the same court since the claims arise from a common factual nexus.

As previously noted, if a Court finds that "B" aided and abetted a breach of fiduciary duty by "A", "B" would be jointly and severally liable for the harm caused by "A."  RBC proposes that, if this Court severs and transfers the Trustee's claim to SDNY, "the Courts can sequence the trials such that the breach of fiduciary duty claim would be tried first in this Court."[103]  Sequencing trial would inherently advantage RBC and prejudice the breach of fiduciary duty Defendants.  If found liable, RBC would be jointly and severally liable with the other Defendants—but why would the Trustee wait to collect any of his judgment from RBC if he could already collect from the other Defendants?  On the other hand, if the trials are severed but not sequenced, there would be a risk of inconsistent rulings as to both liability and damages.

Finally, the Court finds that severance would harm judicial economy substantially by requiring duplicative discovery, witness testimony and evidentiary development.  RBC argues that "there would be very little overlap in evidence if the two cases are severed here," because the elements of proof for an aiding and abetting claim are different from the elements of proof for a fiduciary breach claim.[104]  RBC argues that the overlap between these claims is "superficial" because the "parties to the breach of fiduciary duty

---

[103] *RBC Reply Brief* at p. 19.

[104] *RBC Reply Brief* at p. 13.

claims… [will be focused on] Clairvest's alleged dominance of LMI and whether LMI's Board and management acted in the best interest of the Company."[105]

RBC's arguments are superficial.[106]  In determining whether severance would harm judicial economy by causing duplicative discovery and witness testimony, the Court cannot begin and end its analysis by looking at the elements of proof of the claims involved.[107]  The Court must grasp the nettle by looking at the factual nexus of the claims and the questions of fact that will be critical to adjudication of the claims.

The Trustee's claims for breach of fiduciary duty are (1) based on alleged inadequacies of the sale process run by the Board or (2) based on the allegation that the sale process was designed with Clairvest's interests in mind and without regard to the interests of LMI, the party that had actually hired RBC.  RBC, as Clairvest's hand-picked financial advisor, is an indispensable party to these claims.  The design of RBC's marketing process, RBC's communications with Clairvest and the Board Members, RBC's instructions from Clairvest and the Board Members—and so on—are questions of fact that will determine whether the Trustee's claims for breach of fiduciary duty succeed. These questions of fact will also determine whether RBC is found liable for aiding and abetting the other Defendants' breaches of fiduciary duty.  Severance of the Trustee's claim would inevitably lead to substantially overlapping discovery, witness testimony and evidentiary development at trial.

The Court also finds that the private interests of the other Defendants strongly weigh in favor of retention of this claim.  If this claim is transferred, a number of the other Defendants will be subject to discovery and deposition, and may be called to testify, in SDNY.  These Defendants may also need to hire local counsel to represent their interests.

---

[105] *Id.*

[106] The Court notes that "Clairvest's dominance of LMI" is not "alleged"—it is uncontroverted that Clairvest owned the majority of LMI's equity and nominated a majority of the Board.

[107] Under RBC's theory, it would be appropriate to sever a breach of contract claim and a promissory estoppel claim arising out of the same factual nexus—a wholly illogical proposition.

Because transfer would impose additional costs on up to a dozen of the other Defendants, their private interests clearly and substantially weigh against transfer.

The Court finds that the *Jumara* public interest factors slightly favor retention.  First, a judgment in either forum will be enforceable, but enforcement for either party would be easier in New York, where LMI and RBC are based and have physical assets.  Second, although this Court is often called upon to interpret New York law, the District Courts of New York are more familiar with the law to be applied.[108]  One factor is a nullity—no evidence of congestion in either fora has been introduced.  One factor is ambiguous.  The New York courts clearly have an interest in resolving a dispute between two corporate entities headquartered in New York.  On the other hand, public policy broadly favors "centralizing related proceedings in the district where the bankruptcy is pending,"[109] and this Court has a clear interest in adjudicating claims of the estate, especially when those claims are held by a trust for the benefit of unsecured creditors.  Because LMI was incorporated in Delaware, Delaware also has an interest in adjudicating claims related to the fiduciary duties of its directors and managers.  Finally, this claim would be adjudicated more slowly in SDNY, since RBC has proposed to sequence trial so that the Trustee's claim for breach of fiduciary duty will first be decided by this Court.  On balance, the Court finds that the *Jumara* public interest factors slightly favor retention.

Finally, the Court finds that the *Jumara* private interest factors weigh in favor of retention.  First, Plaintiffs "are ordinarily allowed to select whatever forum they consider most advantageous."  The Supreme Court has called this the "plaintiff's venue privilege."[110]  The Trustee's forum preference is clear and is entitled to substantial weight.  Although the Court believes that this claim probably arose in New York, there is no *situs*

---

[108]  If the internal affairs doctrine is the correct choice of law rule for this claim, Delaware law would govern and therefore this interest factor would disfavor transfer.

[109]  *Trustee's Response Brief* at p. 18 (*quoting Credit Suisse,* 2015 U.S. Dist. LEXIS 120020, at *26 (S.D.N.Y. Sept. 9, 2015)).

[110]  *Atl. Marine,* 134 S. Ct. at 581-82 (*citing Van Dusen v. Barrack,* 376 U.S. 612, 635, 84 S. Ct. 805, 819, 11 L. Ed. 2d 945 (1964)).

that needs to be inspected nor physical evidence that would require transportation to this court. It appears that each party would be equally inconvenienced if forced to litigate in the other party's preferred forum. There is no indication that any witnesses or records would be unavailable in either forum. Therefore, the Court concludes that the private factors weigh in favor of the Trustee, whose choice of forum is entitled to substantial deference in the absence of a forum selection clause.

### d. The Trustee's claim for breach of contract should be severed and transferred to SDNY.

The Court will deny severance of this claim. The Court freely admits that this is a close call. Because this claim is subject to the forum selection clause, the Court must find that the private interests of both RBC and the Trustee fully favor transfer.[111] The *Jumara* public interest factors, at most, marginally favor transfer. On the other hand, the private interests of the other Defendants clearly favor retention of this claim. Finally, severance of this claim would cause substantial harm to judicial economy.

Although the Supreme Court gave lower courts a clear directive in *Atlantic Marine* to give effect to a valid forum selection in all but the most unusual of circumstances—a directive that weighs heavily in the Court's decision—*Atlantic Marine* involved the transfer of an entire case in which all claims were against a single defendant and all claims were covered by a valid forum selection clause. The Supreme Court did not need to consider the interests of other Defendants. The Supreme Court did not need to consider the effects on judicial economy that will result from having two court proceedings instead of one.[112] Finally, *Atlantic Marine* did not involve the bankruptcy specific concerns present here. Ultimately, the Court believes that the interests of the other Defendants

---

[111] *See Atl. Marine*, 134 S. Ct. at 582.

[112] A distinction made even more concerning by the fact that the Court finds that severance and transfer of the Trustee's aiding and abetting claim is clearly not warranted. If severance and transfer of this claim is granted, the Trustee and RBC would be plaintiff and defendant in two separate actions in federal courts in two different states. *A priori*, this appears to be extremely wasteful of judicial resources.

and judicial economy are so better served by retention of this claim that they outweigh the deference due to a valid forum selection clause.

First, as mandated by *Atlantic Marine*, the Court finds that the private interests of both the Trustee and RBC fully favor transfer. The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system."[113]

Second, the *Jumara* public interest factors slightly favor transfer. As before, two factors clearly favor transfer. First, enforcement of a judgment would be easier in New York, where RBC is based and has physical assets. Second, the District Courts of New York are more familiar with the law to be applied to this claim. Again, no evidence of congestion in either fora has been introduced. The comparative interest of each state in adjudicating this dispute is ambiguous. The New York courts clearly have an interest in resolving a dispute growing out of a contract made in New York between corporate entities headquartered in New York. On the other hand, public policy broadly favors "centralizing related proceedings in the district where the bankruptcy is pending,"[114] and this Court has a clear interest in adjudicating claims of the estate when those claims are held by a trust for the benefit of unsecured creditors.

The Trustee's breach of contract claim, if severed and tried separately, might be adjudicated more quickly in New York; the Trustee's other claims are more complex and fact intensive. However, as described in greater detail below, the questions of fact central to the Trustee's breach of contract claim will likely overlap with the questions of fact central to the Trustee's aiding and abetting claim. As a result, severance and transfer may not lead to quicker adjudication of the breach of contract claim. On balance, therefore, the *Jumara* public interest factors, at most, weigh marginally in favor of transfer.

---

[113] *Atl. Marine*, 134 S. Ct. at 581.

[114] *Trustee's Response Brief* at p. 18 (*quoting Credit Suisse,* 2015 U.S. Dist. LEXIS 120020, at *26 (S.D.N.Y. Sept. 9, 2015)).

Finally, the Court believes that the questions of fact central to the Trustee's claim for breach of contract so substantially overlap with the questions of fact central to the Trustee's claim for aiding and abetting breaches of fiduciary duty that severance and transfer of the breach of contract claim would be extremely wasteful of judicial resources. The primary questions in the Trustee's breach of contract claim will not be ones of contractual interpretation, but of whether RBC's actions, between its retention in 2011 and LMI's bankruptcy declaration on August 16, 2013, actually fulfilled RBC's contractual obligation to assist LMI in finding and completing a "Sale Transaction" favorable to LMI.[115]  The Engagement Letter lists six services that RBC was obligated to provide to LMI: (a) formulation of a strategy for consummating a Transaction, (b) customary assistance in preparation of marketing materials, (c) approaching parties approved by LMI, (d) assisting LMI in evaluating proposals, (e) formulation of negotiation strategy and participation in negotiations and (f) presentation of analyses of potential transaction to the Board Members.[116]

Evidence tending to prove that RBC aided and abetted breaches of fiduciary duty by LMI and its Board Members would also tend to prove that RBC breached one of these contractual duties.  If, as the Trustee alleges, Clairvest pursued only "Sale Transactions" that would serve its interest and RBC assisted Clairvest in the creation and implementation of such a strategy, that fact would tend to prove both of the Trustee's claims.  If, as the Trustee alleges, RBC presented analyses of potential transactions to Clairvest and its agents, but never to LMI's Board, that fact would tend to prove both of the Trustee's claims.  If, as the Trustee alleges, RBC approached parties approved by Clairvest, without seeking approval from LMI, that fact would tend to prove both of the Trustee's claims.  The Court could offer numerous examples, but the point is clear—

---

[115]  *Engagement Letter* at ¶ 10.

[116]  *Id* at ¶ 1(a)-(f).

discovery, evidentiary development and witness testimony in the SDNY proceeding would be substantially duplicative of the adversary proceeding here.

For this same reason, the Court finds that the private interests of the other Defendants weigh substantially in favor of retention of this claim. Clairvest and the Board Members may be subject to identical discovery requests in two separate jurisdictions. The Board Members that negotiated with and supervised RBC will likely be called to give identical testimony in two trials. In whichever trial occurs first, they will have to consider the impact their testimony will have in the latter trial and the possibility of inadvertent perjury will loom large. A number of the other Defendants would likely be qualified for permissive intervention under Rule 24(b).[117] In short, severance and transfer would impose a number of costs on the other Defendants that would not exist if this claim is retained.

The Court finds the adage *primum non nocere*—first, do no harm—appropriate here. Coordination between courts may reduce some of these harms—but coordination is itself a cost and it cannot alleviate all of the issues that severance and transfer would cause. The Trustee's claim for aiding and abetting is not subject to the Engagement Letter's forum selection clause and neither § 1404 nor Rule 21 support its severance and transfer. As a result, RBC will remain in this proceeding regardless of whether the Court severs and transfers the Trustee's claim for breach of contract. The Trustee's claims against RBC arise from the same nexus of facts and so substantially intertwined that severance and transfer of one will result in two substantially identical proceedings and waste judicial resources.[118] Severance and transfer will clearly impose additional—and potentially

---

[117] Fed.R.Civ.P. 24(b)(1)(B) permits intervention of anyone who "has a claim or defense that shares with the main action a common question of law **or fact**."

[118] In short, the only difference between the two proceedings would be the courts' application of law to those facts. This Court would determine whether RBC's actions between 2011 and 2013 aided and abetted breaches of fiduciary duty by the other Defendants, while the Court in SDNY would determine whether those same actions were a breach of RBC's duties under the Engagement Letter.

substantial—costs on a number of the other Defendants.  *Atlantic Marine* involved none of these countervailing factors and, therefore, does not control here.

## IV. Conclusion

The Court will deny severance and transfer of both of the Trustee's claims.  First, the Court finds that severance of the Trustee's aiding and abetting claim from the primary breach of fiduciary duty claim would be an inefficient use of judicial resources, prejudicial to the other Defendants and create a risk of inconsistent and conflicting adjudications.  As a result, severance of this claim is disfavored.  Furthermore, the Trustee's claim that RBC aided and abetted breaches of fiduciary duty by the other Defendants is a common law tort claim outside the scope of the Engagement Letter's forum selection clause.  Although the *Jumara* public interest factors weigh slightly in favor of transfer, the Trustee's choice of venue is entitled to substantial deference in the absence of a forum selection clause.  Because severance of this claim is disfavored and the *Jumara* interest factors weigh against transfer, the Court will deny RBC's motion to sever and transfer this claim.

The Trustee's claim for breach of contract is subject to the Engagement Letter's forum selection clause.  As explained in *Atlantic Marine*, a valid forum selection clause represents an advance agreement by the parties as to their preferred forum for adjudication and, therefore, the Court must find that parties' private interests fully favor transfer.  The public interest factors laid out by the Third Circuit in *Jumara* slightly favor transfer of this claim.  Severance and transfer of this claim, however, would result in duplicative proceedings and waste judicial resources.  Moreover, severance and transfer would clearly impose additional costs on a number of the other Defendants in these proceedings.  Ultimately, the Court finds that the harm to judicial economy and the interests of the other Defendants outweighs the deference due to the Engagement Letter's valid forum selection clause.  As a result, the Court will deny RBC's motion to sever and transfer in its entirety.